# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

FEDERAL TRADE COMMISSION

       Plaintiff,

  v.

ECOLOGICAL FOX, LLC, a Maryland limited liability company,[1]

LUKE CHADWICK, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize, Sittee River Wildlife Reserve, Buy Belize, Buy International, and Buy Paradise), Sittee River Wildlife Reserve (also doing business as Sanctuary Bay, Sanctuary Belize, and The Reserve), Buy Belize, LLC (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, and Bamboo Springs), Buy International, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, and Bamboo Springs), Foundation Development Management Inc., Eco Futures-Development (also doing business as Sanctuary Bay, Sanctuary Belize, and The Reserve), Eco-Futures Belize Limited (also doing business as Sanctuary Bay, Sanctuary Belize, and The Reserve), Power Haus Marketing, Prodigy Management Group, LLC, Belize Real Estate Affiliates, LLC (also doing business as Coldwell Banker Belize and Coldwell Banker Southern Belize), Exotic Investor, LLC (also doing business as Coldwell Banker Belize and Coldwell Banker Southern Belize), and Southern Belize Realty LLC (also doing business as Coldwell Banker Belize and Coldwell Banker Southern Belize),

ANDRIS PUKKE, also known as Marc Romeo and Andy Storm, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna

Civil Action No:

**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

---

[1]     *See* Ex. A for all parties' addresses.

Palms, Bamboo Springs, Eco Futures, Eco Futures
Development, Eco Futures Belize, Sittee River Wildlife
Reserve, Buy Belize, Buy International, and Buy
Paradise), Sittee River Wildlife Reserve (also doing
business as Sanctuary Bay, Sanctuary Belize, and The
Reserve), Buy Belize, LLC (also doing business as
Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik,
Laguna Palms, and Bamboo Springs), Buy International,
Inc. (also doing business as Sanctuary Bay, Sanctuary
Belize, The Reserve, Kanantik, Laguna Palms, and
Bamboo Springs), Foundation Development Management
Inc., Eco Futures-Development (also doing business as
Sanctuary Bay, Sanctuary Belize, and The Reserve), Eco-
Futures Belize Limited (also doing business as Sanctuary
Bay, Sanctuary Belize, and The Reserve), Power Haus
Marketing, Prodigy Management Group, LLC, Belize
Real Estate Affiliates, LLC (also doing business as
Coldwell Banker Belize and Coldwell Banker Southern
Belize), Exotic Investor, LLC (also doing business as
Coldwell Banker Belize and Coldwell Banker Southern
Belize), and Southern Belize Realty LLC (also doing
business as Coldwell Banker Belize and Coldwell Banker
Southern Belize),

PETER BAKER, individually and as an officer or owner
of Global Property Alliance, Inc. (also doing business as
Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik,
Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures
Development, Eco Futures Belize, Sittee River Wildlife
Reserve, Buy Belize, Buy International, and Buy
Paradise), Sittee River Wildlife Reserve (also doing
business as Sanctuary Bay, Sanctuary Belize, and The
Reserve), Buy Belize, LLC (also doing business as
Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik,
Laguna Palms, and Bamboo Springs), Buy International,
Inc. (also doing business as Sanctuary Bay, Sanctuary
Belize, The Reserve, Kanantik, Laguna Palms, and
Bamboo Springs), Foundation Development Management
Inc., Eco Futures-Development (also doing business as
Sanctuary Bay, Sanctuary Belize, and The Reserve), Eco-
Futures Belize Limited (also doing business as Sanctuary
Bay, Sanctuary Belize, and The Reserve), and Power Haus
Marketing,

GLOBAL PROPERTY ALLIANCE, INC., a California
corporation, also doing business as Sanctuary Bay,

Sanctuary Belize, The Reserve, Kanantik, Laguna Palms,
Bamboo Springs, Eco Futures, Eco Futures Development,
Eco Futures Belize, Sittee River Wildlife Reserve, Buy
Belize, Buy International, and Buy Paradise,

SITTEE RIVER WILDLIFE RESERVE, an entity
organized under the laws of Belize, also doing business as
Sanctuary Bay, Sanctuary Belize, and The Reserve,

BUY BELIZE, LLC, a California limited liability
company, also doing business as Sanctuary Bay,
Sanctuary Belize, The Reserve, Kanantik, Laguna Palms,
and Bamboo Springs,

BUY INTERNATIONAL, INC., a California corporation,
also doing business as Sanctuary Bay, Sanctuary Belize,
The Reserve, Kanantik, Laguna Palms, and Bamboo
Springs,

FOUNDATION DEVELOPMENT MANAGEMENT
INC., a California corporation,

ECO-FUTURES DEVELOPMENT, a California
corporation, also doing business as Sanctuary Bay,
Sanctuary Belize, and The Reserve,

ECO-FUTURES BELIZE LIMITED, a company
organized under the laws of Belize, also doing business as
Sanctuary Bay, Sanctuary Belize, and The Reserve,

POWER HAUS MARKETING, a California corporation,

BRANDI GREENFIELD, individually and as an officer
or owner of Global Property Alliance, Inc. (also doing
business as Sanctuary Bay, Sanctuary Belize, The
Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco
Futures, Eco Futures Development, Eco Futures Belize,
Sittee River Wildlife Reserve, Buy Belize, Buy
International, and Buy Paradise), Sittee River Wildlife
Reserve (also doing business as Sanctuary Bay, Sanctuary
Belize, and The Reserve), Buy Belize, LLC (also doing
business as Sanctuary Bay, Sanctuary Belize, The
Reserve, Kanantik, Laguna Palms, and Bamboo Springs),
Buy International, Inc. (also doing business as Sanctuary
Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna
Palms, and Bamboo Springs), Foundation Development

Management Inc., Eco Futures-Development (also doing
business as Sanctuary Bay, Sanctuary Belize, and The
Reserve), Eco-Futures Belize Limited (also doing business
as Sanctuary Bay, Sanctuary Belize, and The Reserve),
Power Haus Marketing, and BG Marketing, LLC,

BG MARKETING, LLC, an Oklahoma limited liability
company,

PRODIGY MANAGEMENT GROUP, LLC, a Wyoming
limited liability company,

JOHN USHER, individually and as an officer or owner of
Sittee River Wildlife Reserve (also doing business as
Sanctuary Bay, Sanctuary Belize, and The Reserve) and
Eco-Futures Belize Limited (also doing business as
Sanctuary Bay, Sanctuary Belize, and The Reserve),

ROD KAZAZI, individually and as an officer or owner of
Global Global Property Alliance, Inc. (also doing business
as Sanctuary Bay, Sanctuary Belize, The Reserve,
Kanantik, Laguna Palms, Bamboo Springs, Eco Futures,
Eco Futures Development, Eco Futures Belize, Sittee
River Wildlife Reserve, Buy Belize, Buy International,
and Buy Paradise), Buy Belize, LLC (also doing business
as Sanctuary Bay, Sanctuary Belize, The Reserve,
Kanantik, Laguna Palms, and Bamboo Springs), Buy
International, Inc. (also doing business as Sanctuary Bay,
Sanctuary Belize, The Reserve, Kanantik, Laguna Palms,
and Bamboo Springs), Eco Futures-Development (also
doing business as Sanctuary Bay, Sanctuary Belize, and
The Reserve), and Foundation Partners (formerly known
as Red Crane Advisors, Inc.),

FOUNDATION PARTNERS, a California corporation
formerly known as Red Crane Advisors, Inc.,

FRANK COSTANZO, also known as Frank Green, Frank
Peerless Green, Frank Connelly, and Frank Connelly-
Costanzo, individually and as officer or owner of
Ecological Fox, LLC, Buy International, Inc. (also doing
business as Sanctuary Bay, Sanctuary Belize, The
Reserve, Kanantik, Laguna Palms, and Bamboo Springs),
and Foundation Development Management, Inc.,

BELIZE REAL ESTATE AFFILIATES, LLC, a limited
liability company organized under the laws of St. Kitts
and Nevis, also doing business as Coldwell Banker Belize
and Coldwell Banker Southern Belize,

EXOTIC INVESTOR, LLC, a limited liability company
organized under the laws of St. Kitts and Nevis, also
doing business as Coldwell Banker Belize and Coldwell
Banker Southern Belize,

SOUTHERN BELIZE REALTY, LLC, a limited liability
company organized under the laws of Belize, also doing
business as Coldwell Banker Belize and Coldwell Banker
Southern Belize,

SANCTUARY BELIZE PROPERTY OWNERS'
ASSOCIATION, a Texas non-profit corporation, also
doing business as The Reserve Property Owners'
Association, and

ATLANTIC INTERNATIONAL BANK, LTD., a
company organized under the laws of Belize,

Defendants, and

ANGELA CHITTENDEN,

BEACH BUNNY HOLDINGS, LLC, a California limited
liability company,

THE ESTATE OF JOHN PUKKE, also known as the
Estate of Janis Pukke and the Estate of John Andris
Pukke,

JOHN VIPULIS, and

DEBORAH CONNELLY,

Relief Defendants.

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1. The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten gains, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, in connection with the marketing and sale of real estate investments and related services.

2. Since 2005, Andris Pukke and his co-defendants have sold lots in a Southern Belize real estate development. The development has had several names, including Sanctuary Bay, Sanctuary Belize, and The Reserve (for ease, "Sanctuary Belize"). The Defendants sell these lots primarily to Americans looking to retire abroad or seeking investment opportunities. They target small business owners and couples nearing retirement. Among other things, they claim the lots are low-risk investments that consumers can resell easily and enjoy 200%-300% appreciation. They further claim that every dollar from lot sales goes into the development, which will have all the amenities of an American luxury resort community, including a hospital, hotels, a golf course, a spa, a casino, high-end boutiques, cafes, restaurants, and an "American-style" supermarket. At all times relevant to the Complaint, the Defendants have promised consumers that Sanctuary Belize would be finished quickly—often within two, and always within five, years.

3. In fact, the lots are not low-risk investments. After twelve years of promises, the development is nowhere close to finished and it is unlikely it will ever be finished. Many consumers attempt to sell their lots on the open market and fail because there is no market for

them. Others sell their lots back to the Defendants years later at a loss, despite claims that the lots would rapidly appreciate. Still other owners simply stop making payments on their lots. Defendants then resell these lots to new victims without extinguishing or remunerating the prior owner's interest—creating a situation in which two, three or even four victims may have an interest in the same lot. There are more than 1,000 victims.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 6102(c), and 6105(b).

5.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2), (b)(3), (c)(2), (c)(3), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

6.      The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108, and TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

7.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and TSR, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 6102(c), and 6105(b).

**DEFENDANTS**

8.      Andris Pukke, who uses the aliases Marc Romeo and Andy Storm, resides in Newport Beach, California.  Although Pukke hides his role and does not legally own any of the corporate defendants, he controls and participates in the conduct of the Sanctuary Belize Enterprise ("SBE"), which is at the heart of the deceptive, unlawful real estate investment scheme alleged in this Complaint.  SBE includes Defendants Global Property Alliance, Inc., Sittee River Wildlife Reserve, Buy Belize, LLC, Buy International, Inc., Foundation Development Management, Inc., Eco-Futures Development, Eco-Futures Belize Limited, Power Haus Marketing, and Sanctuary Belize Property Owners' Association ("Core SBE Corporate Defendants"), as well as the following individuals and companies that they own or control:  Luke Chadwick, John Usher, Rod Kazazi, Brandi Greenfield, Frank Costanzo (collectively, with Pukke, "SBE Individual Defendants"), Prodigy Management Group LLC, Foundation Partners, BG Marketing, LLC, Ecological Fox, LLC, Belize Real Estate Affiliates LLC, Exotic Investor LLC, Southern Belize Realty LLC (collectively with the Core SBE Corporate Defendants, "SBE Corporate Defendants").  Collectively, this Complaint refers to SBE Corporate Defendants and SBE Individual Defendants as "SBE Defendants."

9.      In 2003, Pukke purchased the parcel of land that ultimately became Sanctuary Belize through defendant SRWR (BZ).  He has since that time retained control over SBE. Currently, all of the Core SBE Corporate Defendants operate from 3333 Michelson Drive in Irvine California ("3333 Michelson").  From his corner office in 3333 Michelson, Pukke controls SBE and participates in its activities by deciding salaries for SBE employees, hiring and firing SBE employees, developing and designing SBE marketing and products, determining SBE marketing strategy, specifying contract terms for sales within Sanctuary Belize, authorizing

payments to third parties, using SBE funds for his personal matters, and transferring SBE funds to numerous family members.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Pukke, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

10.     Peter Baker resides in Newport Beach, California.  Baker legally owns certain Core SBE Corporate Defendants, including Global Property Alliance Inc., Eco-Futures Development, and Eco-Futures Belize Limited.  Baker is a bank signatory for two Core SBE Corporate Defendants:  Global Property Alliance, Inc. and Sittee River Wildlife Reserve.  Baker holds two of three board positions for two Core SBE Corporate Defendants:  Foundation Development Management, Inc. and Buy International Inc.  As of the end of 2016, Baker was the Chairman of the Board for Sittee River Wildlife Reserve.  Baker is also the CEO of Buy Belize, LLC.  Additionally, he maintains the Fictitious Business Name ("FBN") "Eco Futures."  Global Property Alliance (which Baker owns) has registered three additional FBNs:  "Eco-Futures Belize," "Eco-Futures Development," and "Sittee River Wildlife Reserve HOA."  In these roles, Baker controls and participates in the conduct alleged in the Complaint.  Baker was also an undisclosed party to the 2008 transaction approved by this Court through which Pukke was ordered to turn over interests in Sanctuary Belize to a Court-appointed receiver.  The Commission used proceeds from those interests to repay Pukke's debt-relief scam victims. Baker purchased Pukke's shares of Sanctuary Belize from the Court-appointed receiver so that Pukke could maintain control over SBE, unbeknownst to the Court, the Receiver, and the FTC at that time.  At all times material to this Complaint, acting alone or in concert with others, he has

formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Baker, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

11.     Global Property Alliance, Inc. ("GPA") is a California corporation with its principal place of business at 3333 Michelson.  GPA is a Core SBE Defendant whose owners and officers include Baker, Greenfield, and Kazazi.  Pukke is the *de facto* head of GPA, with Greenfield as his "right hand."  Among other things, GPA controls the other SBE sales arms, including Buy Belize and Buy International.  Furthermore, GPA has the following registered Fictitious Business Names ("FBN"):  "Eco-Futures Development," "Eco-Futures Belize," and "Sittee River Wildlife Reserve HOA."  GPA also operates United States domestic bank accounts under the following DBAs:  "Eco Futures Belize" and "Sittee River Wildlife Reserve."  Currently and at times material to this Complaint, acting alone or in concert with others, GPA has advertised, marketed, distributed, or sold SBE's real estate investments and related services to consumers in this District and throughout the United States.

12.     Sittee River Wildlife Reserve ("SRWR (BZ)") is a Belizean entity organized as a nonprofit under the laws of Belize.  SRWR (BZ) operates for its own profit or that of its members or control people, including, at various times, Pukke, Baker, John Usher, and Luke Chadwick.  SRWR (BZ)'s *de facto* principal place of business is 3333 Michelson.  As noted above, SRWR (BZ) operates in the United States through fellow SBE member GPA, which controls a United States domestic bank account in its name.  Pukke originally created SRWR (BZ) to hold the land for himself and SBE.  Indeed, this Court has already recognized in the *AmeriDebt* proceeding that land held in the name of SRWR (BZ) was actually land held by and for the benefit of Pukke, rather than land held by a genuine nonprofit.  Furthermore, SRWR (BZ)

markets Sanctuary Belize lots solely for the profit of those who control it.  SBE represents that

SRWR (BZ) holds title to the Sanctuary Belize land.  It shares officers and owners with the for-

profit SBE Corporate Defendants, is operated by the SBE Individual Defendants to further the

deceptive scheme, and comingles funds with the rest of the SBE.  At all times material to this

Complaint, acting alone or in concert with others, SRWR (BZ) has advertised, marketed,

distributed, or sold SBE's real estate investments and related services to consumers in this

District and throughout the United States.

13.    Buy Belize, LLC ("Buy Belize") is a California limited liability company with its

principal place of business at 3333 Michelson.  Baker is the managing member.  Buy Belize

performs marketing functions for SBE, such as housing a telemarketing "boiler room," operating

a website, and running infomercials in its name.  Currently and at times material to this

Complaint, acting alone or in concert with others, Buy Belize has advertised, marketed,

distributed, or sold SBE's real estate investments and related services to consumers in this

District and throughout the United States.

14.    Buy International, Inc. ("Buy International") is a California entity with its

principal place of business at 3333 Michelson.  Buy International performs marketing functions

for SBE, such as housing a telemarketing "boiler room," operating a website, and running

commercials in its name.  Currently and at times material to this Complaint, acting alone or in

concert with others, Buy International has advertised, marketed, distributed, or sold SBE's real

estate investments and related services to consumers in this District and throughout the United

States.

15.    Foundation Development Management Inc. ("FDM") is a California corporation

with its principal place of business at 3333 Michelson.  FDM pays SBE telemarketers and funds

and performs real estate development functions.  Currently and at times material to this Complaint, acting alone or in concert with others, FDM has advertised, marketed, distributed, or sold SBE's real estate investments and related services to consumers in this District and throughout the United States.

16.     Eco Futures Development ("Eco-Futures (US)") is a California corporation with its principal place of business at 3333 Michelson.  Defendant Rod Kazazi incorporated Eco-Futures (US), which, among other things, receives consumers' lot payments and Belizean taxes on behalf of SBE's Belizean members.  Currently and at times material to this Complaint, acting alone or in concert with others, Eco-Futures (US) has advertised, marketed, distributed, or sold SBE's real estate investments and related services to consumers in this District and throughout the United States.

17.     Eco-Futures Belize Limited ("Eco-Futures (BZ)") is a Belizean entity Baker owns and Usher manages.  Eco-Futures (BZ) has a *de facto* principal place of business at 3333 Michelson, where communications purportedly from "Eco-Futures" entities are sent and received.  As noted above, Eco-Futures (BZ) operates in the United States through fellow SBE member GPA, which registered a FBN allowing it to do business as "Eco-Futures Belize," and operates a United States domestic bank account in the name of "Eco Futures Belize."  SBE represents that Eco-Futures (BZ) is the "developer" for Sanctuary Belize.  In this role, Eco-Futures (BZ) is a party to the lot sale agreement.  Nonetheless, Eco-Futures (BZ) directs American consumers to pay it at a California address, most recently 3333 Michelson.  Currently and at times material to this Complaint, acting alone or in concert with others, Eco-Futures (BZ) has advertised, marketed, distributed, or sold SBE's real estate investments and related services to consumers in this District and throughout the United States.

18.     Power Haus Marketing ("Power Haus") is a California corporation with its principal place of business at 3333 Michelson.  SBE uses Power Haus to purchase advertising.  Currently and at times material to this Complaint, acting alone or in concert with others, Power Haus has advertised, marketed, distributed, or sold SBE's real estate investments and related services to consumers in this District and throughout the United States.

19.     Luke Chadwick resides in Costa Mesa, California.  He is SBE's public face in many marketing materials, including infomercials.  Chadwick describes himself as a Sanctuary Belize "principal."  As a principal, he signs contracts on behalf of Eco-Futures (BZ).  Chadwick physically interacts with consumers on SBE's behalf, including taking part in sales tours of Sanctuary Belize and conducting webinars for consumers.  Chadwick served as a SRWR (BZ) director and owns the entities that control Coldwell Banker Belize:  Southern Belize Realty, LLC, Belize Realty Associates, LLC, and Exotic Investor LLC.  Currently and at times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Chadwick, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

20.     Prodigy Management Group, LLC ("Prodigy") is a Wyoming limited liability company with its principal place of business at 3333 Michelson.  Nominally an "independent contractor," internal SBE documents treat Prodigy as the means through which SBE compensates Chadwick.  Currently and at times material to this Complaint, acting alone or in concert with others, Prodigy has advertised, marketed, distributed, or sold SBE's real estate investments and related services to consumers in this District and throughout the United States.

21.     Brandi Greenfield resides in Irvine, California.  Greenfield began as SBE's "Director of Sales" in 2007 and serves as Pukke's "right hand."  Among other things, she is a GPA officer, signs contracts on behalf of Eco Futures (BZ), and directly participates in marketing to consumers, personally making misrepresentations directly to consumers.  Currently and at times material to this Complaint, acting alone or in concert with others, she has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Greenfield, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

22.     BG Marketing, LLC ("BG Marketing") is an Oklahoma limited liability company with its principal place of business at 3333 Michelson.  Nominally an "independent contractor," BG Marketing is on SBE's payroll.  It has no known operations other than receiving part of Greenfield's compensation for SBE activities.  Currently and at times material to this Complaint, acting alone or in concert with others, BG Marketing has advertised, marketed, distributed, or sold SBE's real estate investments and related services to consumers in this District and throughout the United States.

23.     John Usher resides in Belize.  Usher became the Director of SRWR (BZ) in 2008 before buying the Sanctuary Belize parcel of land from the Receiver appointed by this Court in *FTC v. AmeriDebt Inc.*, No. PJM 03-3317 (D. Md.).  Usher continued as a SRWR (BZ) board member until at least late 2013.  He is a bank signatory on Eco Futures (BZ)'s U.S. bank account and is Sanctuary Belize Property Owners' Association's Director.  Various SBE marketing materials identify Usher as the "Chairman," "developer," or "principal."  In his role as a SBE principal, Usher has visited Broward County, Florida, and Orange County, California, to meet

Pukke and transact SBE business.  Additionally, Usher has met with numerous American consumers during the SBE sales process, repeating many of the misrepresentations detailed below.  Currently and at times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Usher, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

24.     Rod Kazazi resides in Newport Beach, California.  Kazazi is GPA's CFO and, at times, he has identified himself as GPA's COO (including in testimony to this Court).  He has negotiated contracts with consumers and third parties (including Sanctuary Belize lot buyback agreements), responded to consumer complaints, directed financial transfers, incorporated SBE entities, and was a bank signatory for SBE entity accounts—including GPA, SRWR (BZ), Eco Futures (BZ), Eco Futures (US), and FDM.  In November 2015, this Court held a hearing regarding Pukke's supervised release from incarceration.  At that hearing, this Court heard testimony from Kazazi regarding the SBE.  At that time, Kazazi testified that he had the following roles:  (i) as an SBE control person, he had authority over how funds are used to develop Sanctuary Belize; (ii) as COO of GPA, he worked with SRWR (BZ); (iii) as a control person for GPA, he did business as Eco Futures; and (iv) as a control person for GPA, he had hiring and firing authority within GPA.  Separately, Kazazi also represented to SBE's current payroll provider that he is the "owner" of Buy Belize and GPA.  Currently and at times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.

Defendant Kazazi, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

25.     Foundation Partners ("FP") is a California business entity with its principal place of business at 3333 Michelson.  Kazazi owns FP.  Nominally an "independent contractor," FP is on SBE's payroll.  FP has a website that lists various development projects including Sanctuary Belize and two others to which SBE has transferred millions.  Currently and at times material to this Complaint, acting alone or in concert with others, FP has advertised, marketed, distributed, or sold SBE's real estate investments and related services to consumers in this District and throughout the United States.

26.     Frank Costanzo, who uses aliases Frank Green, Frank Peerless Green, Frank Connelly, and Frank Connelly-Costanzo, resides in Los Angeles, California.  Frank Costanzo is married to proposed relief defendant Deborah Connelly.  Costanzo was an attorney until both the Maryland Court of Appeals and the Florida Supreme Court disbarred him for misappropriating client funds and related misconduct.  Costanzo is an officer for two SBE entities:  Buy International and FDM.  In sales presentations, Costanzo presents himself as an environmental expert and makes misrepresentations directly to consumers, including leading deceptive presentations and accompanying potential buyers on property tours.  As noted in SBE marketing materials, Costanzo is "deeply involved" with Sanctuary Belize.  Currently and at times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Costanzo, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

27.     Ecological Fox, LLC ("EF") is a Maryland limited liability company with an address in Annapolis, Maryland, and with a *de facto* principal place of business at 3333 Michelson.  Costanzo's wife legally owns this entity.  EF has no known operations other than receiving part of Costanzo's SBE compensation.  Currently and at times material to this Complaint, acting alone or in concert with others, EF has advertised, marketed, distributed, or sold SBE's real estate investments and related services to consumers in this District and throughout the United States.

28.     Belize Real Estate Affiliates LLC ("BREA (NV)") is a limited liability company organized under the laws of St. Kitts and Nevis with places of business at 3333 Michelson and in Placencia, Belize.  BREA (NV) was the Coldwell Banker franchisee that, in turn, owns Southern Belize Realty, LLC.  Along with Exotic Investor, LLC and Southern Belize Realty, LLC, BREA (NV) operated a Coldwell Banker franchise used to market Sanctuary Belize and thwart consumers' attempts to sell lots to third parties.  Chadwick owns BREA (NV).  BREA (NV) used 3333 Michelson for elements of its operations, it used U.S. addresses in communications with Coldwell Banker, and it used a U.S. address for its domestic bank account.  BREA (NV)'s franchise agreement with Coldwell Banker is governed by U.S. law and subjects BREA (NV) to U.S. jurisdiction for disputes arising out of its agreement.  Coldwell Banker terminated the franchise in December 2017, but Coldwell Banker Belize nonetheless continued operating under the "Coldwell Banker" name for at least a period of time.  At times material to this Complaint, acting alone or in concert with others, BREA (NV) has advertised, marketed, distributed, or sold SBE's real estate investments and related services to consumers in this District and throughout the United States.

29.     Exotic Investor, LLC ("Exotic (NV)") is a limited liability company organized under the laws of St. Kitts and Nevis with places of business in both Placencia, Belize and at 3333 Michelson.  Exotic (NV) is the member of BREA (NV).  Chadwick, in turn, owns Exotic (NV).  In addition, as Exotic (NV), Chadwick produced and appeared in videos made to seem like a reality TV show marketing Sanctuary Belize.  At times material to this Complaint, acting alone or in concert with others, Exotic (NV) has advertised, marketed, distributed, or sold SBE's real estate investments and related services to consumers in this District and throughout the United States.

30.     Southern Belize Realty LLC ("SBR") is a limited liability company organized under the laws of Belize that also does business as "Coldwell Banker Belize" and "Coldwell Banker Southern Belize" with places of business at 3333 Michelson and in Placencia, Belize.  Chadwick owns SBR, which was a Coldwell Banker sub-franchisee until December 2017, although SBR continued to use the "Coldwell Banker" name for at least some period of time.  Charmain Voss is a manager reporting to Chadwick.  Chadwick and Voss use both "@ColdwellBankerBelize.com" and "@SanctuaryBelize.com" email addresses, employees at 3333 Michelson coordinate travel arrangements for "Coldwell Banker Belize" employees, and Voss has referred to "Coldwell Banker Belize" and "Sanctuary Belize" as "ONE TEAM."  At times material to this Complaint, acting alone or in concert with others, SBR has advertised, marketed, distributed, or sold SBE's real estate investments and related services to consumers in this District and throughout the United States.

31.     Sanctuary Belize Property Owners' Association ("SBPOA"), also known as The Reserve Property Owners' Association ("RPOA"), is a Texas non-profit corporation with its principal place of business at 3333 Michelson.  Although registered as a nonprofit, it is in fact

operated for the profit of its owners.  Usher is its Director, and when SBE changed the development's name from "Sanctuary Belize" to "the Reserve," SBPOA registered "The Reserve Property Owners Association" as a trade name.  SBE uses SBPOA to collect monthly homeowners' association dues.  In theory, these dues should support only owners' common amenities; in reality, SBE commingles SBPOA funds with other SBE money by depositing consumers' HOA payments into general GPA bank accounts.  Both SBPOA and RPOA invoices direct consumers to make checks payable to SRWR, and instruct consumers to mail checks to "SRWR c/o Eco-Futures" at 3333 Michelson.  Therefore, it comingles funds with for-profit entities, and performs few services other than funneling money to these for-profit entities.  Currently and at times material to this Complaint, acting alone or in concert with others, SBPOA has advertised, marketed, distributed, or sold SBE's real estate investments and related services to consumers in this District and throughout the United States.

32.     Atlantic International Bank Ltd. ("Atlantic International") is an entity organized under the laws of Belize and based in Belize City, Belize.  No American financial authority regulates Atlantic International and it has no U.S. branches.  Atlantic International is a so-called "international" bank within Belize, meaning it markets its services to foreign consumers, including Americans, instead of Belizeans or other individuals residing in Belize.  Atlantic International jointly markets with SBE and shares its physical address in Belize City with Southern Belize Realty (d/b/a Coldwell Banker Southern Belize).  Atlantic International visited SBE's California offices and presented to SBE telemarketers regarding the services Atlantic International could provide consumers, including lower interest rates and relaxed underwriting for buyers wishing to finance Sanctuary Belize home construction.  Atlantic International urged the telemarketers to sell its banking services to American consumers as part of the Sanctuary

Belize sales pitch.  As Atlantic International's CEO explained, the purpose of the marketing is to create ongoing banking relationships with consumers residing in the United States.  SBE principal Chadwick filmed a marketing video endorsing Atlantic International at Atlantic International's request, and Atlantic International provides financial services to SBE.  Similarly, Atlantic International's logo appears on SBE marketing materials provided to consumers in the United States.  Atlantic International also presents to consumers directly during Sanctuary Belize tours, lending support and legitimacy to the sales process, while offering ongoing services to individuals it knows are and will be based in the United States.  Atlantic International further assists SBE by providing Belizean banking facilities, both for the SBE itself and for the consumers targeted by SBE, all while knowing that its clients are and will be based in the United States.  Furthermore, to provide its offshore banking services to Americans, such as SBE and SBE's consumers, Atlantic International accepts wires from the SBE and American consumers through American correspondent banks, including, for at least a significant period, the Bank of New York Mellon.  Currently and at times material to this Complaint, acting alone or in concert with others, Atlantic International has assisted and facilitated in the TSR violations this Complaint sets forth.  Defendant Atlantic International, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.  At all times material to this Complaint, Atlantic International knew, or reasonably should have known, that its acts in furtherance of its unlawful coordination with SBE in violation of the TSR substantially affect the United States.

**RELIEF DEFENDANTS**

33.     Angela Chittenden is an individual who has received funds from the SBE

Defendants' deceptive and otherwise unlawful acts or practices alleged below to which she has

no legitimate claim.  Chittenden resides in Newport Beach, California.

34.     Beach Bunny Holdings, LLC ("Beach Bunny Holdings") is an entity that has

received funds from the SBE Defendants' deceptive and otherwise unlawful acts or practices

alleged below to which it has no legitimate claim.  Beach Bunny Holdings is a California limited

liability company with its principal place of business at 3333 Michelson.

35.     The Estate of John Pukke, also known as the Estate of Janis Pukke and the Estate

of John Andris Pukke, is a New York entity that has received funds from the SBE Defendants'

deceptive and otherwise unlawful acts or practices alleged below to which it has no legitimate

claim.  This is the estate for Andris Pukke's late father, who died in 2010.  Andris Pukke is the

co-executor of the estate and has signatory authority on Estate of John Pukke bank accounts

receiving money from the SBE Defendants.

36.     John Vipulis is an individual who has received funds from the SBE Defendants'

deceptive and otherwise unlawful acts or practices alleged below to which he has no legitimate

claim.  After this Court civilly incarcerated Pukke in the *AmeriDebt* matter, Vipulis paid $4.5

million to end Pukke's civil incarceration.  The order releasing Pukke prohibited Pukke from

repaying this loan before fully satisfying his monetary debt to the FTC.  Nonetheless, through

payments from SBE to Vipulis, Pukke has repaid Vipulis more than $3 million before satisfying

his monetary debt to the FTC.  Vipulis resides in Las Vegas, Nevada.

37.     Deborah Connelly is an individual who has received funds from SBE Defendants'

deceptive and otherwise unlawful acts or practices alleged below to which she has no legitimate

claim.  She is a Maryland attorney married to Defendant Frank Costanzo.  Connelly resides in Los Angeles, California.

## COMMON ENTERPRISE

38.     The SBE Corporate Defendants have operated as a common enterprise while engaging in the deceptive acts and practices and other violations of law alleged below.  The SBE Corporate Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, and office locations, and with commingled funds.  Because the SBE Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.  The SBE Individual Defendants have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the SBE Corporate Defendants that constitute the common enterprise.

## ASSISTING & FACILITATING

39.     Defendant Atlantic International has assisted and facilitated the acts and practices alleged herein.  Therefore, Atlantic International is jointly and severally liable for the acts and practices that violate the TSR.

## COMMERCE

40.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 14 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

### The Sanctuary Parcel and the *AmeriDebt* Litigation

41.     In 2003, the FTC sued Pukke and companies he controlled (AmeriDebt and Debtworks) under Section 5 of the FTC Act and the Gramm-Leach-Bliley Act.  Specifically, the FTC alleged that Pukke lured financially-strapped consumers into expensive debt management plans ("DMPs") meant to consolidate debt.  The FTC alleged that AmeriDebt took consumers' entire first payment as a "contribution" without their authorization (*i.e.*, the entire first payment went to Pukke, and none to the consumer's creditors).  The FTC further alleged that Pukke took portions of subsequent payments as "contributions" without authorization.  Pukke pleaded the Fifth Amendment rather than testify.  The parties resolved the litigation through a stipulated 2006 Final Order.

42.     The 2006 Final Order imposed monetary obligations on Pukke and appointed a Receiver to collect funds and assets from Pukke.  Among other things, the 2006 Final Order required Pukke to turn over to the Receiver rights to an enormous parcel of land in Southern Belize (the "Sanctuary Parcel").  At that time, the Sanctuary Parcel covered more than 12,000 acres (approximately nineteen square miles, or the size of a small city).  SBE markets Sanctuary Belize, which includes the Sanctuary Parcel, as even larger—14,000 acres—(approximately twenty-two square miles, approximately the size of Manhattan).

43.     In 2007, on the Receiver's motion, the Court found Pukke and his childhood friend, a co-defendant here, Baker, in contempt for refusing to turn over assets to the Receiver, including the Sanctuary Parcel.  The Court ordered Pukke and Baker to comply, banned Pukke from leaving the United States, and threatened to incarcerate both if they failed to cooperate (the "Turnover Order").

44.     Specifically, the Turnover Order obligated Pukke and Baker "individually and collectively" to turn over Pukke's interests in the Sanctuary Parcel, including whatever interests he had in 2005, "and/or that were acquired or arose thereafter . . . whether or not all or any portion of [the rights] have been transferred to and/or initially acquired by one or more persons or entities[.]"

45.     Both Pukke and Baker defied the Turnover Order.

46.     Following a contempt hearing, the Court characterized their conduct as "mendacious" and emphasized that both Pukke and Baker "lied on the record numerous times," including some claims the Court found "ludicrous."  Accordingly, the Court ordered their coercive incarceration.

47.     The FTC and Receiver subsequently consented to Baker's conditional release pursuant to an order requiring him to cooperate in collecting Pukke's assets.  The FTC and the Receiver later consented to Pukke's conditional release pursuant to a similar Conditional Release Order and two payments totaling $4.5 million on Pukke's behalf from relief defendant Vipulis. To secure Pukke's release, Vipulis agreed to pay the Receiver $1.25 million for Latvian property and $3.25 million as a loan to Pukke.  Notably, the Court's Conditional Release Order required Vipulis "to subordinate repayment of [his] loan to satisfaction in full of the FTC judgment."  The Order also prohibited Pukke from "repay[ing] all or any portion of the Vipulis Loan" before satisfying the 2006 FTC judgment as "agreed to by the FTC" or found by the Court.

48.     In 2008, the Court approved the Receiver's sale of the Sanctuary Parcel to SBE Corporate Defendant SRWR (BZ) for $2 million.  The Receiver accepted only $2 million largely because SRWR (BZ) aggressively resisted the Receiver's efforts to control the property notwithstanding the Turnover Order.

49.     Significantly, five years earlier, Pukke helped create SRWR (BZ), although he purportedly ceded control to a Belizean shrimp farmer, SBE Individual Defendant Usher, prior to the 2008 sale.

50.     Unbeknownst to the FTC, the Receiver, and the Court, the sale was in fact the result of Baker having "surfaced [an] investor who agreed to invest $2 million," which SRWR (BZ) used to purchase Pukke's rights from the Receiver.  SBE explained that, "[w]ith the settlement payment made [to the Receiver], Andris' equity shares were conveyed to Peter Baker and the original core development investors."

51.     As a result, Pukke maintained control over the Sanctuary Parcel through Baker despite the Receivership and the Turnover Order.

**The Current Deceptive Scheme: Using False Promises to Sell Sanctuary Belize Lots**

**Phase One:  Telemarketing**

52.     SBE encourages consumers to contact it through commercials on Fox News and Bloomberg, infomercials, and other national advertising.

53.     These advertisements target American consumers on behalf of the Belizean entities Eco-Futures (BZ) and SRWR (BZ), the ultimate developer and vendor for the lot purchases.

54.     The national advertising drives consumers to websites, such as buybelize.com. The websites make few claims, instead encouraging consumers to submit their contact information to learn more.

55.     Typically, consumers who express interest then receive a call from California-based telemarketers.  The telemarketers identify themselves as "property consultants" or "investment consultants."

56.     These calls, from United States-based telemarketers, are at least ostensibly on behalf of Belizean SBE entities Eco-Futures (BZ) and SRWR (BZ), who are listed as the developer and vendor on lot sale agreements.

57.     During these calls, the telemarketers screen anyone unable to make a substantial down payment.

58.     The telemarketers make various claims about the development including:

   a.   SBE uses a "no debt" business model.  The "no debt" model makes Sanctuary Belize a less risky investment than one in which the developer has to make payments to creditors.

   b.   In part because of the "no debt" model, every dollar SBE collects from lot sales goes back into the development.

   c.   This funding stream means SBE will finish the development quickly—within two to three years, or within five years.

   d.   The finished development will feature numerous amenities including a hospital staffed with American physicians and nurses near the development, an emergency medical center near the downtown "Marina Village," a championship-caliber golf course, an airstrip within the development, and a new international airport nearby with direct flights to and from the United States.  The Marina Village, which is the heart of the community, will include high-end boutiques, restaurants, cafes, an American-style grocery store, an elegant casino, a hotel, and a 250-slip world-class marina.

   e.   These impressive amenities mean the lots will appreciate from 200% to 300% within two to three years.

      f.    Consumers can realize the rapid appreciation without difficulty because there is already a robust resale market, making it easy to resell the lots should they choose to do so.

59.     In addition to developing rapport, learning about the consumer, and making these six claims, typically, SBE encourages the consumer to participate in a longer webinar about the development.

60.     During the webinar, another telemarketer speaks to the consumer over the phone while showing photos and graphics regarding the development on the consumer's computer.  The telemarketer repeats the six claims above, makes additional claims, and answers questions.

61.     The telemarketer also sells the consumer on visiting Belize to tour the property. SBE offers an all-inclusive package, usually $999 per couple, that covers lodging at a nearby resort, local transportation, and meals.

62.     In numerous instances, SBE persuades consumers to sign a "non-binding lot reservation agreement."  Pursuant to this agreement, consumers pay $2,000 to $10,000 to obtain a right of first refusal on a particular lot.  After they view the development, SBE will apply the payment to their purchase of the reserved lot, or another lot, or return it if they decide not to buy.

63.     Although most consumers place down payments on lots and then travel to Sanctuary Belize before purchasing, many consumers purchase lots without ever going to Belize to see the property or meeting with a sales person.

64.     The telemarketing also frequently includes marketing for Atlantic International's banking services.  Notably, Atlantic International visited SBE's California offices and presented to SBE telemarketers regarding the services Atlantic International could provide consumers, including lower interest rates and relaxed underwriting for buyers wishing to finance Sanctuary

Belize home construction.  Atlantic International urged the telemarketers to sell its banking

services to American consumers as part of the Sanctuary Belize sales pitch.  As Atlantic

International's CEO explained, the purpose of the marketing is to create ongoing banking

relationships with consumers residing in the United States.

### Phase Two:  Tour of the Development in Belize

65.     Most purchasers take part in a tour of Sanctuary Belize as part of the sales

process.  The tour is a multi-day trip to Belize during which consumers receive a steady stream

of claims like those received during the initial telemarketing.

66.     Typically, consumers make their own arrangements to reach Belize City on a

Thursday.  From there, they fly to an airstrip in remote southern Belize, where SBE employees

greet them.  SBE then brings the consumers to a resort in Southern Belize, typically about twenty

miles from Sanctuary Belize.

67.     On Friday and Saturday, consumers then tour Sanctuary Belize, visit lots, and

attend sales presentations.  The tour group sometimes includes SBE "plants," purported

consumers who are actually being paid by SBE to attend the tours, who express enthusiasm for

the development.

68.     Although most consumers visit the lot they have reserved or are otherwise

interested in purchasing, many do not visit their specific lot.  These consumers are shown the

development in general and perhaps shown a portion of part of the development where the lot

they are interested in is located.

69.     SBE guides remove any consumers who ask skeptical questions.

70.     The sales presentations reiterate the representations made by the telemarketers,

typically providing even more detail.  For instance, some presentations provided additional

details on the promised hospital, including specific information about when it will open

(typically within two years), what staff it will have (typically American doctors and nurses), and

what procedures it will offer (usually advanced treatments ranging from organ transplants to

chemotherapy).

71.     In numerous instances, Chadwick, Costanzo, and other SBE principals attend or

present at these sales presentations.  The sales presentations reiterate six core claims about

Sanctuary Belize:  (i) that SBE uses a "no debt" business model that reduces risk to consumers;

(ii) that every dollar from lot sales goes back into the development; (iii) the funding stream

means SBE will finish the development quickly—within two to three years, or within five years;

(iv) the finished development will have specific amenities one would expect in an American

luxury resort community; (v) the lots will appreciate from 200% to 300% within two to three

years; and (vi) consumers can realize this appreciation through a robust resale market.

72.     Consumers often meet Usher when visiting Sanctuary Belize.

73.     Usher knows that these consumers reside in the United States and are touring

Sanctuary Belize in response to U.S. telemarketing.  Usher also knows that lot sales will create

long-term financial relationships with American consumers who will make lot payments from

the United States.

74.     In the early days of the scam, some consumers met Pukke, then using the alias

"Marc Romeo."  Pukke used an alias because, as he has previously testified, he knew that at least

some people were concerned that consumers would not buy lots from someone with two federal

convictions related to consumer fraud.

75.     In fact, if consumers ask about Pukke, SBE, including other SBE principals like

Chadwick and Costanzo, falsely assure them that Pukke is no longer involved with Sanctuary

Belize.  If pressed, they sometimes assert that Pukke's involvement is limited to marketing activities.

76.     In numerous instances, consumers attend presentations from Atlantic International, builders controlled by SBE insiders, and sometimes Coldwell Banker Belize.

77.     Atlantic International in fact created ongoing banking relationships with American consumers who reside in the United States as a result of the telemarketing and in person presentations.

78.     Atlantic International is frequently present during in-person sales presentations to consumers and, therefore, has heard over several years sales people promise consumers amenities and features that have not been completed within the promised time periods. Similarly, as a sophisticated lender, it should know that SBE's claim that its "no debt" model reduces risks to consumers is false.

79.     Typically, on Saturday or Sunday, SBE takes consumers by boat to a small private island that is part of Sanctuary Belize.  The ride takes approximately forty minutes, and the SBE boat is the only way to leave the island.  SBE invites each couple to a private meeting. To get to the meeting, they wade offshore to a small thatch-roofed gazebo suspended over the water.  Inside, consumers and SBE negotiate over the lots.

80.     The negotiations vary, but SBE seeks the maximum immediate cash down payment even to the detriment of other deal terms.  Atlantic International representatives sometimes help facilitate cash payments, but only "developer financing" is available— consumers are strongly discouraged from involving traditional lenders.

81.     Consumers typically purchase the property outright, or make a down payment and then make additional payments over time to SBE directly.  In most cases, SBE collects the

12.5% Belizean General Sales Tax ("GST") on full purchases, down payments, and monthly payments.

82.     Additionally, consumers typically agree to make $100 monthly payments to the property owners' association.  SBE also collects 12.5% GST on homeowner's association payments, meaning these payments are typically $112.50 per month per lot.

83.     The lots typically cost $150,000 to $500,000.  The "Memorandum of Sale" for lots typically directs payments for the lot and Belizean taxes to Eco-Futures (BZ) at a California address, most recently at 3333 Michelson.

84.     Some consumers purchase multiple lots.  In many instances, they do so because SBE claims that the lots' value will so rapidly increase they will be able to sell one for a profit and use the proceeds to build a house on the other.

85.     Consumers report that nearly everybody who attends a tour purchases at least one lot.  Typically, after SBE finishes the one-on-one meetings, it returns the consumers to the hotel where there is a celebration for the "new owners."

86.     Throughout, the intrinsic characteristics of specific Sanctuary Belize lots do not substantially affect consumers' decisions.  SBE does not include information about soil composition, mineral rights, vegetation, or other features of the specific lots in the sales pitch.

87.     Internally, SBE discusses the idea of selling a "dream"—that is, the dream of becoming an owner in Sanctuary Belize in general.  As a result, owners put substantial deposits on lots before visiting Sanctuary Belize, and many buy their lots during the tour without seeing the lot they are buying.

88.     Internal SBE communications reveal instances in which SBE tour guides are told to "switch" a consumer from one lot to another during the tour, typically because SBE has taken two deposits on the same lot.

89.     SBE can switch consumers from lot to lot during the tour because the specific lot itself is not the primary motivation to buy; rather, consumers want the amenities and investment value that SBE promises.

### Phase Three:  Continuing Payments

90.     After consumers return to the United States, they make any additional down payments or monthly payments.

91.     Typically, consumers make these payments to SBE entities at 3333 Michelson. For the property owners' association payments, consumers typically send their checks to 3333 Michelson or to a separate address maintained by the SBPOA in Texas.

92.     SBE continues to send marketing to consumers, referring to them as "new owners" and attempting to keep them happy so that they will keep making payments.

### Phase Four:  Unwinding Transactions and Buybacks

93.     Although sales began thirteen years ago, in a development roughly the size of Manhattan, SBE has only completed portions of the electrical infrastructure, a two-pump gas station, a bodega or general store, a pool, an open-air restaurant and bar, and part of the promised marina.  Approximately a dozen homes are complete, many occupied by persons associated with SBE.

94.     Many consumers become dissatisfied once they realize that SBE is not completing the development as promised and that their investments are not appreciating as SBE claimed.

95.     Many of these consumers attempt to force SBE to buy back their lots or provide refunds.  SBE initially tells consumers that they do not provide refunds or buy back lots. Nonetheless, some consumers convince SBE to repurchase the lots, but they typically receive less than they paid, and never receive the promised appreciation as part of the buy back agreement.

96.     The March 15, 2013 buy back agreement for Sapodilla Ridge Lot No. 156 is representative.  The agreement recites that the lot was originally purchased on July 11, 2012 and that the purchaser had so far paid $56,414.60 towards the lot purchase, $50,276.60 to SBE and $6,138.00 collected by SBE for Belize's General Sales Tax.  The agreement then specifies that in return for giving up the lot, the buyer will receive $50,276.60 over six monthly payments.  Thus, even if SBE made the promised payments, this consumer incurred a substantial loss.

97.     Some consumers attempt to resell their lots on the open market.  These consumers discover there is no such market, that Coldwell Banker Southern Belize will not attempt in good faith to sell their lots, and that many local realtors will not list or show Sanctuary Belize lots.  If they do, SBE limits their access to the development to one day a week, and removes the "for sale" sign, or otherwise obstructs the resale.

98.     Some consumers simply stop making payments.  In these cases, SBE threatens and then proceeds with "foreclosure," although the process it calls "foreclosure" consists solely of notices or letters from SBE or its Belizean counsel.  After a period of time from sending the letter, which varies from owner to owner, SBE treats the owner's rights to the lot as extinguished and resells the lot to a new consumer.  SBE does not tell new consumers about the lot's history, or that another consumer may have rights to the lot.

99.     Consumers believe they own the lots, and SBE tells them—repeatedly—that they do.  However, during the so-called "foreclosure" process, SBE no longer treats them as owners. SBE does not refund or credit consumers the amount they have paid (*i.e.*, return the consumers' payments and cancel the contract), nor does it credit consumers for the lots' value (*i.e.*, pay the consumers the difference between the lot's value upon resale and the amounts the consumer owes SBE).  Instead, SBE simply keeps the consumer's money and resells the lot to a new victim.

### SBE's Sales Claims Are False

100.     Although SBE claims its "no debt" model reduces risk for consumers, the opposite is true.  Reasonable debt would have significant risk-reducing features that benefit consumers, including that:  (i) creditors provide consistent cashflow to complete the development; (ii) creditors perform underwriting to ensure the developer is trustworthy and capable, and that the project is feasible; and (iii) creditors monitor the developer's progress to ensure the development is completed.  The absence of these features actually increases the risk to consumers.

101.     SBE's claim that "every dollar" from the lot sales goes into Sanctuary Belize is false because significant funds are used for personal expenses or otherwise funneled to people, companies, and projects unrelated to Sanctuary Belize.

102.     SBE's claim that it will finish the development within two, three, or five years is also false.  SBE has made this claim for at least 12 years and the development is still largely unfinished.  Furthermore, SBE will not be able to generate the income necessary to complete the project within the next five years.

103.     As a result, the development also will not contain the promised amenities.

104.     Additionally, the Sanctuary Belize lots are not experiencing the promised "rapid appreciation," nor will they.  This is apparent from the fact that many consumers cannot sell their lots for any price or convince SBE to repurchase them other than at a loss.

105.     Similarly, the promised resale market does not exist.  Consumers cannot resell their lots at all, let alone for amounts in excess of what they paid.

106.     Contrary to SBE's sales representations, Pukke in fact is significantly involved with Sanctuary Belize.  He is, and always has been, SBE's primary control person.

## VIOLATIONS OF THE FTC ACT

107.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

108.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### Count I – Deception
### (SBE Defendants)

109.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of real estate investments and related services, SBE Defendants have represented, directly or indirectly, expressly or by implication that:

a.     the SBE Defendants use a "no debt" business model to develop Sanctuary Belize, which makes lots in Sanctuary Belize a less risky investment than one in which the developer makes payments to creditors;

b.     every dollar the SBE Defendants collect from Sanctuary Belize lot sales goes back into the development;

c.     the SBE Defendants will finish Sanctuary Belize quickly, including within two to three years, or within five years;

    d.     the finished Sanctuary Belize will have all of the amenities expected of an American luxury resort community, such as:  (i) a hospital staffed with American physicians and nurses near the development; (ii) an emergency medical center near the downtown "Marina Village;" (iii) a championship-caliber golf course; (iv) a local airport within the development; (v) a new international airport nearby with direct flights to and from the United States; (vi) a "Marina Village" containing high-end boutiques, restaurants, cafes, an American-style grocery store, an elegant casino, and a hotel; and (vii) a 250-slip world-class marina;

    e.     Sanctuary Belize lots will appreciate rapidly, such as 200% to 300% within two to three years;

    f.     consumers can realize the rapid appreciation of their lots within Sanctuary Belize because there is a robust resale market through which consumers could easily resell their lots should they choose to do so; and

    g.     Andris Pukke has had no meaningful involvement with the SBE Defendants.

110.    In truth and in fact, in numerous instances in which the SBE Defendants have made the representations set forth in Paragraph 109 of this Complaint:

    a.     the SBE Defendants' use of a "no debt" model, if true, would make consumers' investments more risky;

    b.     the SBE Defendants do not put every dollar collected on Sanctuary Belize lot sales back into Sanctuary Belize;

c.       the SBE Defendants have not yet completed Sanctuary Belize and will not

complete Sanctuary Belize within the next five years;

d.       Sanctuary Belize does not contain, and will not contain within the next

five years, all of the amenities expected of an American luxury resort

community, such as:  (i) a hospital staffed with American physicians and

nurses near the development; (ii) an emergency medical center near the

downtown "Marina Village;" (iii) a championship-caliber golf course; (iv)

a local airport within the development; (v) a new international airport

nearby with direct flights to and from the United States; (vi) a "Marina

Village" containing high-end boutiques, restaurants, cafes, an American-

style grocery store, an elegant casino, and a hotel; and (vii) a 250-slip

world-class marina;

e.       Sanctuary Belize lots are not rapidly appreciating, including not

appreciating by 200% to 300% over the course of two or three years;

f.       consumers cannot realize any appreciation of their lots within Sanctuary

Belize because there is not a robust resale market;

g.       Andris Pukke has, and continues to have, a meaningful role with the SBE

Defendants.

111.     Therefore, the SBE Defendants' representations as set forth in Paragraph 109 of

this Complaint are false or misleading and constitute deceptive acts or practices in violation of

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**<u>VIOLATIONS OF THE TSR</u>**

112.     Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108, in 1994.  The FTC adopted the original Telemarketing Sales Rule ("TSR") in 1995, extensively amended it in 2003, and amended certain sections thereafter.  16 C.F.R. Part 310.

113.     The SBE Defendants are "seller[s]" or "telemarketer[s]" engaged in "telemarketing" as defined by the TSR, 16 C.F.R. § 310.2(dd), (ff), and (gg).

114.     Atlantic International is a "person" within the meaning of the TSR, which defines "person" to mean "any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity."  16 C.F.R. § 310.2(y).

115.     The SBE Defendants are offering, offering for sale, or selling an "investment opportunity" within the meaning of the TSR when offering, offering for sale, or selling the Sanctuary Belize lots.  The TSR defines "investment opportunity" to mean "anything tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation."  16 C.F.R. § 310.2(s).

116.     The TSR prohibits sellers and telemarketers from misrepresenting directly or by implication, in the sale of goods or services, any of the following material information:

> a.     Any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer.  16 C.F.R. § 310.3(a)(2)(iii).

  b.  Any material aspect of an investment opportunity including, but not limited to, risk, liquidity, earnings potential, or profitability.  16 C.F.R. § 310.3(a)(2)(vi).

117. The TSR prohibits any person from providing substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates 16 C.F.R. §§ 310.3(a), 310.3(c), 310.3(d), or 310.4. *Id.* § 310.3(b).

118. Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count II – TSR Misrepresentations
### (SBE Defendants)

119. In numerous instances, in connection with the telemarketing of its goods and services, the SBE Defendants have misrepresented, directly or indirectly, expressly or by implication, material aspects of the performance, efficacy, nature, or central characteristics of such goods and services, including, but not limited to:

  a.  the SBE Defendants use a "no debt" business model to develop Sanctuary Belize, which makes lots in Sanctuary Belize a less risky investment than one in which the developer makes payments to creditors;

  b.  every dollar the SBE Defendants collect from Sanctuary Belize lot sales goes back into the development;

  c.  the SBE Defendants will finish Sanctuary Belize quickly, including within two to three years, or within five years;

     d.     the finished Sanctuary Belize will have all of the amenities expected of an American luxury resort community, such as:  (i) a hospital staffed with American physicians and nurses near the development; (ii) an emergency medical center near the downtown "Marina Village;" (iii) a championship-caliber golf course; (iv) a local airport within the development; (v) a new international airport nearby with direct flights to and from the United States; (vi) a "Marina Village" containing high-end boutiques, restaurants, cafes, an American-style grocery store, an elegant casino, and a hotel; and (vii) a 250-slip world-class marina;

     e.     Sanctuary Belize lots will appreciate rapidly, such as 200% to 300% within two to three years;

     f.     consumers can realize the rapid appreciation of their lots within Sanctuary Belize because there is a robust resale market through which consumers could easily resell their lots should they choose to do so; and

     g.     Andris Pukke has had no meaningful involvement with the SBE Defendants.

120.     In truth and in fact, in numerous instances in which the SBE Defendants have made the representations set forth in Paragraph 119 of this Complaint:

     a.     the SBE Defendants' use of a "no debt" model, if true, would make consumers' investments more risky;

     b.     the SBE Defendants do not put every dollar collected on Sanctuary Belize lot sales back into Sanctuary Belize;

      c.      the SBE Defendants have not yet completed Sanctuary Belize and will not complete Sanctuary Belize within the next five years;

      d.      Sanctuary Belize does not contain, and will not contain within the next five years, all of the amenities expected of an American luxury resort community, such as:  (i) a hospital staffed with American physicians and nurses near the development; (ii) an emergency medical center near the downtown "Marina Village;" (iii) a championship-caliber golf course; (iv) a local airport within the development; (v) a new international airport nearby with direct flights to and from the United States; (vi) a "Marina Village" containing high-end boutiques, restaurants, cafes, an American-style grocery store, an elegant casino, and a hotel; and (vii) a 250-slip world-class marina;

      e.      Sanctuary Belize lots are not rapidly appreciating, including not appreciating by 200% to 300% over the course of two or three years;

      f.      consumers cannot realize any appreciation of their lots within Sanctuary Belize because there is not a robust resale market;

      g.      Andris Pukke has, and continues to have, a meaningful role with the SBE Defendants.

121.    Therefore, the SBE Defendants' acts or practices, as described in Paragraphs 119 and 120, violate the TSR, 16 C.F.R. § 310.3(a)(2)(iii).

## Count III – Investment Opportunities
### (SBE Defendants)

122.    In numerous instances, in connection with the telemarketing of investment opportunities, the SBE Defendants have misrepresented, directly or indirectly, expressly or by

implication, the risk, liquidity, earnings potential, profitability, or any other material aspect of the investment opportunities, including, but not limited to:

a.   the SBE Defendants use a "no debt" business model to develop Sanctuary Belize, which makes lots in Sanctuary Belize a less risky investment than one in which the developer makes payments to creditors;

b.   every dollar the SBE Defendants collect from Sanctuary Belize lot sales goes back into the development;

c.   the SBE Defendants will finish Sanctuary Belize quickly, including within two to three years, or within five years;

d.   the finished Sanctuary Belize will have all of the amenities expected of an American luxury resort community, such as:  (i) a hospital staffed with American physicians and nurses near the development; (ii) an emergency medical center near the downtown "Marina Village;" (iii) a championship-caliber golf course; (iv) a local airport within the development; (v) a new international airport nearby with direct flights to and from the United States; (vi) a "Marina Village" containing high-end boutiques, restaurants, cafes, an American-style grocery store, an elegant casino, and a hotel; and (vii) a 250-slip world-class marina;

e.   Sanctuary Belize lots will appreciate rapidly, such as 200% to 300% within two to three years;

f.   consumers can realize the rapid appreciation of their lots within Sanctuary Belize because there is a robust resale market through which consumers could easily resell their lots should they choose to do so; and

g.      Andris Pukke has had no meaningful involvement with the SBE

Defendants.

123.    In truth and in fact, in numerous instances in which the SBE Defendants have

made the representations set forth in Paragraph 122 of this Complaint:

a.      the SBE Defendants' use of a "no debt" model, if true, would make

consumers' investments more risky;

b.      the SBE Defendants do not put every dollar collected on Sanctuary Belize

lot sales back into Sanctuary Belize;

c.      the SBE Defendants have not yet completed Sanctuary Belize and will not

complete Sanctuary Belize within the next five years;

d.      Sanctuary Belize does not contain, and will not contain within the next

five years, all of the amenities expected of an American luxury resort

community, such as:  (i) a hospital staffed with American physicians and

nurses near the development; (ii) an emergency medical center near the

downtown "Marina Village;" (iii) a championship-caliber golf course; (iv)

a local airport within the development; (v) a new international airport

nearby with direct flights to and from the United States; (vi) a "Marina

Village" containing high-end boutiques, restaurants, cafes, an American-

style grocery store, an elegant casino, and a hotel; and (vii) a 250-slip

world-class marina;

e.      Sanctuary Belize lots are not rapidly appreciating, including not

appreciating by 200% to 300% over the course of two or three years;

      f.      consumers cannot realize any appreciation of their lots within Sanctuary Belize because there is not a robust resale market;

      g.      Andris Pukke has, and continues to have, a meaningful role with the SBE Defendants.

124.    Therefore, the SBE Defendants' acts or practices, as described in Paragraphs 122 and 123, violate the TSR, 16 C.F.R. § 310.3(a)(2)(vi).

## Count IV – Assisting and Facilitating
## (Atlantic International)

125.    In numerous instances in connection with the SBE Defendants' violations of the TSR as set forth in Counts II and III above, Atlantic International provided substantial assistance or support to the SBE Defendants, who are sellers and telemarketers.

126.    Atlantic International knew or consciously avoided knowing that the SBE Defendants were engaged in acts or practices that violated the TSR as set forth in Counts II and III above.

127.    Atlantic International's acts and practices, as described in Paragraphs 125 and 126 of this Complaint, are deceptive telemarketing acts or practices that violate Section 310.3(b) of the TSR.

## Count V – Relief Defendants
## (Chittenden, Beach Bunny Holdings, The Estate of John Pukke, Vipulis,  and Deborah Connelly)

128.    Relief Defendants Chittenden, Beach Bunny Holdings, The Estate of John Pukke, Vipulis, and Deborah Connelly have received, directly or indirectly, funds and other assets obtained from SBE Defendants' customers through the deceptive and otherwise unlawful acts or practices described herein.

129.     Relief Defendants Chittenden, Beach Bunny Holdings, The Estate of John Pukke, Vipulis, and  Deborah Connelly are not bona fide purchasers with legal and equitable title to SBE Defendants' customers' funds or other assets, and will be unjustly enriched if they are not required to return the funds or the value of the benefits they received as a result of Defendants' deceptive and otherwise unlawful acts or practices.

130.     By reason of the foregoing, Relief Defendants Chittenden, Beach Bunny Holdings, The Estate of John Pukke, Vipulis, and Deborah Connelly hold funds and assets in constructive trust for the benefit of the SBE Defendants' customers.

## CONSUMER INJURY

131.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and TSR.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

132.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and the Court's own equitable powers, requests that the Court:

A.      Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access, appointment of a receiver, and an accounting;

B.      Enter a permanent injunction to prevent future violations of the FTC Act and TSR by Defendants;

C.      Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and TSR, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

D.      Enter an order requiring the Relief Defendants to disgorge all funds and assets, or the value of the benefits they received from the funds and assets, which are traceable to Defendants' deceptive and otherwise unlawful acts or practices; and

E.      Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

Alden F. Abbott
General Counsel

Dated: 10/31/18

_____
JONATHAN COHEN, D. Md. Bar No. 16776
jcohen2@ftc.gov
BENJAMIN J. THEISMAN, *pro hac vice*
btheisman@ftc.gov
AMANDA B. KOSTNER, *pro hac vice*
akostner@ftc.gov
KHOURYANNA DiPRIMA, *pro hac vice*
kdiprima@ftc.gov
600 Pennsylvania Ave. NW, CC 9528
Washington, DC 20580
Phone:  (202) 326-2551 (Cohen), -2223 (Theisman),
-2029 (DiPrima)
Facsimile:  (202) 326-3197

ATTORNEYS FOR PLAINTIFF
FEDERAL TRADE COMMISSION