**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>ECOLOGICAL FOX, LLC, et al.<br><br>Defendants/Relief Defendants. | Civil Action No. 1:18-cv-03309-PJM |

**MEMORANDUM IN SUPPORT OF DEFENDANT ATLANTIC INTERNATIONAL BANK, LTD'S MOTION TO STRIKE**

Atlantic International Bank, Ltd. ("AIBL") hereby files this Memorandum in Support of its Motion to Strike Portions of Luke Chadwick's Declaration submitted in support of the Federal Trade Commission's ("FTC") Opposition to AIBL's Motion to Dismiss. AIBL moves to strike the portions of Chadwick's Declaration that are not based on Chadwick's personal knowledge and contain hearsay. Declarations or affidavits[1] submitted in support of or in opposition to a motion can only be considered when they are admissible. Accordingly, those portions of Chadwick's Declaration that constitute conjecture as to AIBL's motivations and beliefs are not admissible evidence, and therefore should not be considered in connection with AIBL's Motion to Dismiss.

---

[1] The terms declaration and affidavit are used interchangeably. *Soutter v. Equifax Info. Servs. LLC*, 299 F.R.D. 126, 128, n.4 (E.D. Va. 2014) (explaining that the terms declaration and affidavit are used interchangeably "in common parlance and in case law as well").

## **ARGUMENT**

### A.   Personal Knowledge Is Necessary For Testimony Submitted To The Court.

Federal Rule of Civil Procedure 43 permits courts to take testimony or consider declarations in connection with ruling on a motion. *See* Fed. R. Civ. P. 43(c). The Federal Rules of Evidence govern admissibility of this testimony. Fed. R. Evid. 602 "teache[s] that personal knowledge is the predicate of reliability." *Soutter v. Equifax Info. Servs. LLC*, 299 F.R.D. 126, 131 (E.D. Va. 2014). "Thus, Fed. R. Evid. 602 applies to testimony, whether *ore tenus* or by affidavit or declaration[.]" *Id*. Although Rule 43 is silent regarding the criteria for declarations used in support or opposition to a motion, courts have applied the criteria for declarations set forth in Federal Rule of Civil Procedure 56 for motions for summary judgment to motions to dismiss for lack of jurisdiction and other threshold motions. *See, e.g.*, *Lujan v. Cabana Management, Inc.*, 284 F.R.D. 50 (E.D.N.Y. 2012); *Soutter*, 299 F.R.D. at 132. In *Lujan v. Cabana Management, Inc.*, in considering whether to apply admissibility requirements of a Rule 56 affidavit to one used in support or opposition to a motion for class certification, the court noted that "in determining a threshold issue, such as jurisdiction, courts may not rely on inadmissible hearsay." *Id*. at 64. The *Lujan* court reasoned that the same principles of inadmissibility should apply to declarations submitted in support of a motion for class certification. *See id.* at 65.

In *Soutter*, the court held that an affidavit submitted in opposition to a motion for class certification must be based on personal knowledge. *Soutter*, 299 F.R.D. at 132. The court remarked that it would not "exempt" the affidavit submitted in opposition to the motion for class certification "from the personal knowledge requirement that is so widely recognized as imbuing testimony with sufficient reliability to allow courts to credit it." *Id*. The *Soutter* court further acknowledged that "'courts may not rely on inadmissible hearsay' in deciding a challenge to

jurisdiction.'" *Id*. at 131 (quoting *Lujan v. Cabana Management, Inc.*, 284 F.R.D. at 64). In sum, the declarations the FTC submitted in opposition to AIBL's threshold motion to dismiss for lack of jurisdiction require the same level of admissibly as a declaration submitted in support of a motion for summary judgment.

> B. **Chadwick's Declaration Contains Inadmissibly Hearsay And Lacks Personal Knowledge.**

Chadwick's Declaration does not meet the Rule 56 standard of admissibility. Specifically:

**Paragraph 3, Second Sentence** ("We agreed to cooperate because we both understood that, as I explain herein, working together would further both parties' interests."). Chadwick has no basis for testifying as to Pelayo's thoughts and motivations; consequently this sentence should be stricken. *See It's My Party, Inc. v. Live Nation, Inc.,* No. JFM-09-547, 2012 U.S. Dist. LEXIS 119625, at *30 (D. Md. Aug. 23, 2012) (affidavits must be based on personal knowledge; those portions that are not should be stricken); *Williams v. Evangelical Retirement Homes*, 594 F.2d 701, 703 (8th Cir. 1979) (affidavits must be based on personal knowledge).

**Paragraph 4, Fourth Sentence** ("Thus, AIB and SBE agreed to coordinate because it furthered our mutual interests."). Chadwick has no basis for testifying as to the reasons for AIBL's actions.

**Paragraph 7** (regarding allegedly "interrelated companies known as Atlantic Group"). Chadwick has no basis for putting his name to this FTC-generated paragraph alleging that various Belizean companies are "interrelated." They are not, as testified to by Ricardo Pelayo, AIBL's Chief Executive Officer, who actually *is* familiar with the entities' ownership. It is clear that Chadwick has no basis for the conjecture in this paragraph, which should therefore be stricken.

**Paragraph 8, Second Sentence** ("Among other reasons, because AIB was present when SBE was selling lots, AIB knew what SBE was selling and to whom."). This is pure speculation.

Merely because AIBL was physically present for certain aspects of Sanctuary Bay's tours does not mean that it was eavesdropping on SBE's conversations with potential customers. This speculative assertion must be stricken.

**Paragraph 8, Ninth Sentence** ("AIB was privy to how assisting SBE meant assisting a sales process directed at the United States and to U.S. residents who would remain U.S. residents either indefinitely, or for years before, moving to Belize.") Again, this is pure speculation made without personal knowledge. Even if Chadwick were correct that AIBL was "present" when it was explained that consumers could not move to Sanctuary Bay until they had built a home – which seems obvious, unless Chadwick expected a village of pup tents – he has no basis for asserting that "assisting SBE meant assisting a sales process directed at the United States and to U.S. residents who would remain U.S. residents." In addition to not being within Chadwick's personal knowledge this assertion is impermissibly conclusory. *See Carey v. Beans*, 500 F. Supp. 580, 583 (E.D. Pa. 1980) (affidavits must be "devoid of hearsay, conclusory language and statements which purport to examine thoughts as well as actions").

**Paragraph 9, Second Sentence** ("By virtue of attending these tours, and for other reasons, including other reasons in this declaration, AIB understood how the SBE sales and marketing process worked including: (a) SBE ran complex, multi-faceted advertising using television, the internet, and other media intended to cause consumers to become interested in purchasing lots in Belize, and then to provide their contact information to SBE; (b) SBE's marketers targeted primarily U.S. residents; (c) consumers submitted their contact information to SBE; and (d) SBE sales representatives contacted the consumers from a California call center."). This statement is impermissibly conclusory and not based on personal knowledge. Chadwick (or the drafters at the FTC) fail to explain how Chadwick could know what "AIB understood" generally and, more

specifically, how being present for part of the Sanctuary Bay tours would necessarily lead AIBL to conclude that "SBE ran complex, multi-faceted advertising using television, the internet, and other media intended to cause consumers to become interested in purchasing lots in Belize, and then to provide their contact information to SBE;" that "SBE's marketers targeted primarily U.S. residents;" that "consumers submitted their contact information to SBE;" or that "SBE sales representatives contacted the consumers from a California call center." The sentence must be stricken.

**Paragraph 10, First Sentence** ("Because, among other reasons, AIB representatives attended the tours, AIB understood the claims SBE made to consumers to persuade them to attend Sanctuary Belize sales tours during which AIB representatives met and interacted with them."). This statement is inadmissible as it consists entirely of "conclusory language and statements which purport to examine thoughts as well as actions." *Carey*, 500 F. Supp. at 583. Chadwick also has no basis for his speculation that, by being "present" at certain tours to offer information on its banking services, AIBL necessarily "understood the claims SBE made to consumers to persuade them to attend Sanctuary Belize sales tours." This sentence must be stricken.

**Paragraph 10, Third Sentence** ("No later than 2012, when AIB began sending representatives on Sanctuary Belize property tours, AIB understood that SBE was making these points to consumers as part of the sales process."). Chadwick has no personal knowledge of what AIBL understood. Further, this sentence is an impermissible "statement[] which purport[s] to examine thoughts as well as actions." *Carey*, 500 F. Supp. at 583.

**Paragraph 12, First Sentence** (referring to Aldo Salazar, AIBL's outside counsel, as "AIB's in-house counsel"). Chadwick has no personal knowledge as to Mr. Salazar's

employment, and certainly does not claim any personal knowledge in his declaration. This assertion must be stricken.

**Paragraph 13, First Sentence** ("AIB and SBE used the meeting to further solidify their relationship"). Chadwick cannot possibly know AIBL's motivations for attending the meeting or whether AIBL felt that the meeting had accomplished anything. This statement plainly constitutes "conclusory language and statements which purport to examine thoughts as well as actions." *Carey*, 500 F. Supp. at 583.

**Paragraph 13, Second Sentence** ("Among other things, both parties wanted AIB to see SBE's U.S.-based component, and both parties wanted SBE's sales representatives to understand the bank's services better so that they could be presented to consumers."). Again, Chadwick cannot possibly know AIBL's motivations for attending the meeting or whether AIBL felt that the meeting had accomplished anything. This statement, too, plainly constitutes "conclusory language and statements which purport to examine thoughts as well as actions." *Carey*, 500 F. Supp. at 583.

**Paragraph 14, Seventh Sentence** ("AIB and SBE both understood that the offshore banking presentation were meant to improve the SBE sales representatives' ability to present AIB's services to consumers to assist SBE in the sales process."). Chadwick has no personal knowledge on which to base his assertion of AIBL's understanding. It is, like the previous statements, impermissible "conclusory language and statements which purport to examine thoughts as well as actions." *Carey*, 500 F. Supp. at 583.

**Paragraph 18, Sixth Sentence** ("It is my belief that this meetin[g] occurred.") Chadwick telegraphs his lack of personal knowledge. "[S]tatements prefaced by the phrases, 'I believe' or 'upon information and belief' or those made upon an 'understanding' are properly subject to a motion to strike." *Carey*, 500 F. Supp. at 583.

**Paragraph 22, Fifth Sentence** ("SBE explained to AIB, and AIB understood, that if requested to do so, SBE would provide the appraisals to prospective purchasers to help persuade them to buy."). Once again, Chadwick has no basis for attesting to AIBL's understanding. *See Carey*, 500 F. Supp. at 583 (affidavits and declarations containing "conclusory language and statements which purport to examine thoughts as well as actions" are impermissible and are not evidence).

**Paragraph 25, Second Sentence** ("As discussed herein, AIB had extensive knowledge concerning the development plan and SBE's sales and marketing process."). Again, Chadwick has no personal knowledge regarding the extent of AIBL's knowledge and understanding of "SBE's sales and marketing process," and his conclusory speculation in this regard is impermissible.

**Paragraph 25, Third Sentence** ("However, to my knowledge, AIB did not perform any additional due diligence or underwriting with respect to SBE's loan guarantee."). Once again, Chadwick signals his lack of personal knowledge. Statements qualified by "to my knowledge" are appropriately stricken. *See Carey*, 500 F. Supp. at 583.

**Paragraph 25, Fourth Sentence** ("AIB never asked SBE for accounting records of any sort."). Chadwick offers no explanation as to how he would have personal knowledge of this statement. He could perhaps say that AIBL never asked *him* for accounting records, but that is a far cry from saying – without specifying his basis of knowledge – that AIBL never asked *anyone* in SBE for accounting records.

**Paragraph 26** (referring, again, to "Atlantic Group affiliates). Chadwick has no basis for the statements in this paragraph regarding the relationships between and ownership of AICS, BPA and AIBL, and does not even attempt to explain how he came by this supposed knowledge. All

statements in this paragraph regarding the relationships between and ownership of AICS, BPA and AIBL should be stricken.

**Paragraph 27, Second Sentence** ("I explained to AIB, and AIB understood, Coldwell Banker's business would be the resale of Sanctuary Belize lots as well as any other business Coldwell Banker would conduct in the region in the ordinary course."). Chadwick has no basis for stating what "AIB understood." This, too, is a classic case of an impermissible "statement[] which purport[s] to examine thoughts as well as actions." *See Carey*, 500 F. Supp. at 583; *see also It's My Party, Inc.*, 2012 U.S. Dist. LEXIS 119625, at *30 (affidavits must be based on personal knowledge; those portions that are not should be stricken).

**Paragraph 29, Fourth Sentence** ("Among other things, AIB was concerned about the effect Tarnished Dreams could have on current Sanctuary Belize owners who were considering financing construction through AIB but now might postpone."). Chadwick has no personal knowledge as to the nature of AIBL's concerns about the article. Again, Chadwick (and his ghostwriters at the FTC) attempt to insert an an impermissible "statement[] which purport[s] to examine thoughts as well as actions." *See Carey*, 500 F. Supp. at 583; *see also It's My Party, Inc.*, 2012 U.S. Dist. LEXIS 119625, at *30 (affidavits must be based on personal knowledge; those portions that are not should be stricken).

**Paragraph 30, Third Sentence** ("It is not credible to me that AIB did not know that Pukke ran SBE's sales and marketing no later than January 2014, when Enderle published *Tarnished Dreams* and the ensuing public controversy over the development's status."). Chadwick's rank conjecture as to AIBL's knowledge of Pukke's involvement in SBE is inadmissible, and must be stricken. *See It's My Party, Inc.*, 2012 U.S. Dist. LEXIS 119625, at *30 (affidavits must be based

on personal knowledge; those portions that are not should be stricken); *Carey*, 500 F. Supp. at 583 (conclusory statements and statements about others' thoughts and knowledge are impermissible).

**Paragraph 32, First and Second Sentences** (more conclusory assertions as to Aldo Salazar being "AIB's in-house counsel" and that Atlantic Bank Limited and AIBL were "Atlantic Group affiliates"). Chadwick has no personal knowledge as to Mr. Salazar's employment, and no personal knowledge concerning the ownership or alleged "affiliation" between AIBL and Atlantic Bank. Such conjecture should be stricken. *See It's My Party, Inc.*, 2012 U.S. Dist. LEXIS 119625, at *30 (affidavits must be based on personal knowledge; those portions that are not should be stricken).

**Paragraph 32, Seventh Sentence** (Pelayo and Salazar "may have" known of Pukke's role in SBE). This, again, is rank conjecture, and should be stricken. *See It's My Party, Inc.*, 2012 U.S. Dist. LEXIS 119625, at *30 (affidavits must be based on personal knowledge; those portions that are not should be stricken).

## CONCLUSION

For the foregoing reasons, AIBL respectfully requests the Court strike the portions of the Chadwick's Declaration set forth above and not consider these statements when ruling on AIBL's Motion to Dismiss.

|  |  |
|---|---|
|  | Respectfully submitted, |
| DATE:  January 31, 2019 | /s/ Creighton R. Magid |
|  | Creighton R. Magid (Bar No. 15488) |
|  | DORSEY & WHITNEY LLP |
|  | 1401 New York Avenue, N.W., Suite 900 |
|  | Washington, DC  20005 |
|  | Telephone:  (202) 442-3555 |
|  | Fax:  (202) 442-3199 |
|  | magid.chip@dorsey.com |
|  |  |
|  | *Counsel for Defendant Atlantic International Bank, Ltd.* |