**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

---

**FEDERAL TRADE COMMISSION,**

**Plaintiff,**

v.

**ECOLOGICAL FOX, LLC** *et al.*,

**Defendants.**

**No. 18 Civ. 3309 PJM**

---

### DEFENDANT ANDRIS PUKKE'S EMERGENCY MOTION TO STRIKE THE TEMPORARY RECEIVER'S FEBRUARY 22, 2019 REPORT (ECF NO. 219) FROM THE DOCKET SHEET AND RELATED REQUESTED RELIEF

Defendant Andris Pukke, by undersigned counsel, submits this Emergency Motion to Strike the Temporary Receiver's February 22, 2019 Report ("Report") (ECF No. 219) from the dDocket Sheet, and Other Related Relief ("Emergency Motion"), and requests to be heard as soon on this Emergency Motion as possible.  The Report of the Temporary Receiver Robb Evans & Associates LLC ("Receiver") contains many unauthorized and highly prejudicial statements which should not be part of the public record. The Report is much more than an audit or accounting of the Receiver's financial activities as mandated by Section XVII of the court's Temporary Restraining Order and Interim Preliminary Injunction ("PI Order"). Rather, the Report is a highly prejudicial advocacy pierce, which might well have been written by the Federal Trade Commission ("FTC"). However, unlike the FTC's case, Mr. Pukke will at no point likely be permitted to cross exam the Receiver on its Report or the conclusions the Receiver reached about key and unproven and disputed facts in the FTC's Amended Complaint. The Receiver has intruded upon the province

of the fact finder by stating factual determinations that are irrelevant to its duties, and which are highly prejudicial to Mr. Pukke.

For this reason, Mr. Pukke asks that (i) the Receiver's report be immediately removed from the court's docket sheet, (ii) the Receiver, the FTC and any other person or entity be ordered not to make the Receiver's report public, (iii) that no portion of the Report can be used in the litigation as evidence to establish a fact that is disputed and in contention, (iv) that the Receiver submit a revised Report which addresses only those issues directed by the Court's PI Order, i.e., audit and accounting matters, and that does not state conclusions about facts that are disputed in the litigation, (v) that any such revised report be submitted to the court and the parties for review and comment before being made public, and (vi) that any future report be so previewed before being made public. In addition, if the Receiver has provided the report to any person or entity, it should be ordered to provide any such recipients a copy of the court's order granting Mr. Pukke's requested emergency relief.

THE RECEIVER'S MANDATE

The Court PI Order states that "The Receiver shall be solely the agent of this Court in acting as Receiver under this Order." PI Order, Section XV. Section XVI or the PI Order states the "duties and Authority of Receiver." And Section XVII describes the contents of the Receiver's Report, stating, in full, as follows: "IT IS FURTHER ORDERED that the Temporary Receiver shall report to this Court at least one day before the date set for the hearing regarding Preliminary Injunction, regarding: (1) the steps taken by the Temporary Receiver to implement the terms of this Order; (2) the value of all liquidated and unliquidated Assets of the receivership estate; (3) the sum of all liabilities of the Receivership Entities; (4) the steps the Temporary Receiver intends to take in the future to: (a) prevent any diminutions in the value of Assets of the receivership estate; (b) pursue receivership estate Assets from third parties; and (c) adjust the liabilities of the

2

Receivership Entities, if appropriate; and (5) any other matters which the Temporary Receiver believes should be brought to the court's attention. Provided, however, if any of the required information would hinder the Temporary Receiver's ability to pursue receivership Assets, the portions of the Temporary Receiver's report containing such information may be redacted and be filed for the Court's benefit under seal without service on the parties."

RECEIVER'S REPORT

Late in the afternoon on Friday, Feb. 22, 2019, the Receiver filed its first audit report for the period Nov. 6, 2018 through February 21, 2019. The Receiver docketed its report so as to make it public (ECF No. 219). The Report moves well beyond an audit of the businesses within the receivership. It contains purported factual conclusions that are highly prejudicial, unproven by the authorized fact finder in this case, and many of which are hotly debated. Instead of simply conveying findings relating to an audit, the Report reads as if it were written as an advocacy piece in support of many of the Federal Trade Commission's positions in the case. And because the report was authorized by the court's PI Order, many members of the public, including the community of lot owners at The Reserve who are following the case, may well take all views stated within the report as fact, even those views that the parties dispute. This prejudices Mr. Pukke immeasurably. Because the Report contains statements that are not authorized by the court's PI Order, Mr. Pukke ask that the report be removed from the docket sheet, and for other related relief.

**THE RECEIVER'S UNAUTHORIZED STATEMENTS OF FACT**

Given the audit-focused mandate of the Report, it is difficult to understand the relevance of the following statements - - statements which are in contention in the litigation and for which Mr. Pukke is unable to challenge the Receiver. By way of example, the Receiver has published to the world the following assertions:

1. An evaluation of the veracity of Mr. Pukke and other defendants in the midst of the Receiver's raid on a defendant business. Report, p. 3. Mr. Pukke submits that the Receiver is not the proper party to judge credibility; anyone might seem untruthful in the midst of a government raid, and any government staff in the midst of a raid is likely predisposed to find dissembling (the Report does not say which natural persons made the subjective statements in the Report, thereby insulating the Report from cross examination and hampering Mr. Pukke's ability to investigate the truthfulness of the allegations made in the Report in aid of his defense).

2. The Report states that "Pukke Exercised Total Control Over the Belize Development Project." Report, pp. 3-5. This is a central and hotly contested fact issue in the case. It is unclear why the Receiver is weighting in on the issue with its opinion. In relation to audit and accounting matters the Receiver's opinion is a non sequitur. And, of course, there is much evidence in the case refuting the Receiver's determination, including the actual ownership structure of defendant companies, Mr. Pukke's employment relationship, the division of duties and decision making with various defendant company, and the rampant infighting by and among defendants. The Receiver's conclusion of not mandated, unauthorized, not subject to cross examination, and highly prejudicial.

3. The Receiver states that "Pukke diverted at least $15.9 million on consumer payments." Report, pp. 5-7. The Receiver's conclusions cannot be cross examined for correctness or context. By way of example, certain funds were

investments that made profitable returns, others were loans that have been repaid.

4. The Report states a review of what it calls "Broken Promises and Commitments to Consumers." Receiver's report, p. 7. This section parrots the FTC's argument that certain amenities were "promised" to some unidentified and unknown number of lot purchasers at The Reserve. The Report mentions an international airport. It is unclear how the Receiver has made a factual conclusion that is contested in the case, save wholly accepting the FTC's arguments. Nor is it clear what much of the section of this Report has to do with accounting. Also, in this section the Receiver argues that certain non-recourse loans, and/or certain loans not secured by The Reserve property in fact burdened the real estate with debt.

5. The Report states that "The Reserves' Financial Model is Not Viable." report, p. 8. Again, the Receiver adopts the FTC's view about what amenities are to be included in a completed Reserve development. From this mistake, the Receiver argues that there was not enough money for the developer to complete an international airport, an American style hospital, a championship golf course, among other items. As the court knows from reading Mr. Pukke's court papers, Mr. Pukke disputes the fact that lot owners were promised an international airport, and certain other large amenities the Receiver describes.

6. The Report states that there are "Misrepresentations and misleading statements to consumers contained in scripts at the Irvine Office." Report at p. 10. Again, on this topic, the Report simply parrots the FTC's views on a matter that seems wholly unrelated to audit or accounting. Whether or not misstatements were

made is an issue central in the case. Telephonic scripts reviewed by the Receiver are hearsay unless testified to in some manner. Of course, the Report is not subject to cross examination, and any reader unfamiliar with Section 5 of the FTC Act might logically conclude that Mr. Pukke made the alleged misrepresentations, which prejudices him in this matter.

7. The Report states that "The Receivership entities resisted requests by lot buyers to cancel purchase contracts." Report, p. 10. Any seller may try to keep her or his contract which is not necessary problematic as the FTC and now Receiver allege. But it must also be said the refunds were often given to unhappy customers. The FTC is also aware that when two of its young staff members posed as lot buyers and paid certain deposits, the monies were refunded in the ordinary course of the business. This sharply cuts against the FTC's and the Receiver's view of the world. But the Receiver cannot be cross examined. Further, this area seems far afield from audit duties of the Receiver.

8. The Receiver opines on alleged statements about the increase in lot values, again citing paper scripts, and arguing that sales people promised accretion in lot values. Again, it is unclear why the Report needs to parrot the FTC's view of the world on this point, or what it has to do with its Receiver's audit function. And importantly, this issue is contested. By way of example, during his deposition on Feb. 19, 2019, Peter Baker testified that one early lot purchaser, Nancy McKenney, successfully re-sold one of her lots for a great profit.  On February 19, 2019, he clarified his position under oath, testifying that early lot owners "made out like bandits" and that Ms. McKenney in particular, sold her lot for several times her initial purchase price and that she "more than doubled

6

her money" and that another early investor named Taylor and other "People who had lots in the beginning who sold out made a lot of money." Ex. 1 (February 19, 2019 Deposition of Peter Baker), 342:23-344:23. Also, the only current valuation of lots now in the case is from Prof. Eric Sussman of UCLA who, in his preliminary expert report, values the lots at The Reserve at $800,000 per acre. This means that all lots have significantly increased in value. Again, this point will be contested by the parties. The Receiver has no business weighing in on this issue, as it is outside his audit mandate.

9. The Receiver also provides its review of certain litigation files. Report, p. 15-18. Working outside the audit function, the Receiver hedges, noting that their review merely "suggests" certain conclusions (p. 15) and noting that there "appears" to be a certain conclusion. This section has nothing to do with the Receiver's audit function, save implying that the developer was unethical. Again, this is highly prejudicial and far afield from an audit function.

As these examples demonstrate, the prejudicial statements run throughout the Receiver's report. The document should be withdrawn so as help insure the possibility of a fair PI hearing, and further litigation of this matter. Specifically, Mr. Pukke asks for the following relief: (i) that the Receiver's report be immediately removed from the court's docket sheet, (ii) the Receiver, the FTC and any other person or entity be ordered not to make the Receiver's report public, (iii) that no portion of the report can be used in the litigation as evidence to establish a fact that is in contention, (iv) that the Receiver submit a revised report which addresses only audit and accounting matters, and that does not state conclusions about facts that are in contention in the litigation, (v) that any such revised report be submitted to the court and the parties for review and comment before being made public, (vi) that any future report be so previewed to the court before

being made public, and (vii) that the Receiver send any court order granting, in whole or in part, the relief requested above to any person or entity to whom the Receiver has previously sent its Report, including any lot owners at The Reserve.

A draft order for the court to consider is provided.

## CONCLUSION

For the foregoing reasons, we respectfully submit that this Court should enter an order removing the Receiver's report from the court's docket, and other related relief enumerated above and contained in the draft order that accompanies this request for emergency relief.

Respectfully submitted,

**PIERCE BAINBRIDGE BECK PRICE & HECHT LLP**

 /s/ Patrick A. Bradford
Patrick A. Bradford (admitted *pro hac vice*)
Jeffrey Newton (admitted *pro hac vice*)
Minyao Wang (*pro hac vice forthcoming*)
Stephen P. Farrelly (admitted *pro hac vice*)
20 West 23rd Street, Fifth Floor
New York, New York 10010
Tel: (212) 972-0200

*Attorneys for Defendant Andris Pukke*

**PRICE BENOWITZ LLP**

 /s/ Jesse D. Stein
Jesse D. Stein
409 7th Street, NW, Suite 200
Washington, DC 20004
Tel: (202) 417-6000

*For Defendant Andris Pukke*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I served the foregoing Motion, and related Proposed Order, on the following people and entities by e-mail at the e-mail addresses listed:

- Jonathan Cohen, Ben Theisman, Amanda Kostner, and Khouryanna DiPrima, counsel for the Federal Trade Commission, at jcohen2@ftc.gov, btheisman@ftc.gov, akostner@ftc.gov, kdiprima@ftc.gov;
- David Wiechert, counsel for Rod Kazazi, at dwiechert@aol.com;
- Lanny Davis, Wayne Gross, and Joshua Robbins, counsel for Angela Chittenden, Beach Bunny Holdings LLC, and Power Haus Marketing, at ldavis@dggpllc.com; wgross@ggtriallaw.com; jrobbins@ggtriallaw.com; alange@dggpllc.com;
- Cori Ferrentino and Michael King, counsel for Brandi Greenfield, at cori@ferrentinolaw.com and mking@wintersking.com;
- William Rothbard, counsel for Peter Baker at Rothbard@ftcadlaw.com;
- Frank Costanzo and Deborah Connelly at ecologicalfox@gmail.com;
- Ashanti Arthurs Martin, Belizean counsel for John Usher, at ashanti@balderamosarthurs.com;
- Andrew Berg, counsel for John Vipulis, berga@gtlaw.com;
- Andrew Stolper, counsel for Luke Chadwick, Prodigy Management Group LLC, Belize Real Estate Affiliates LLC, Exotic Investor LLC, and Southern Belize Realty LLC, at astolper@lawfss.com;
- Chip Magid, counsel for Atlantic International Bank Ltd., at Magid.Chip@dorsey.com; and
- Gary Caris, counsel for the Receiver, at gcaris@btlaw.com

   _/s/ Jesse D. Stein_____
   Jesse D. Stein