# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| *IN re* SANCTUARY BELIZE LITIGATION | Civil No. **PJM 18-3309** |

## MEMORANDUM OPINION

The Federal Trade Commission ("FTC") has filed a Motion to Avoid a Reduction in Consumer Restitution Based on the Alleged Value of Fraudulent Transactions, ECF No. 610, seeking clarity, should it prevail at trial, regarding the manner in which the Court will calculate equitable monetary relief, including restitution, and also a determination as to which party bears the burden of proving that amount at trial. Defendant Chadwick has responded in Opposition, ECF No. 620, as did *Pro Se* Defendants Baker,[1] Pukke, ECF No. 630, and Santos, ECF No. 624. The FTC has filed a Consolidated Reply, ECF No. 623. For the following reasons, the Court holds that, if the FTC prevails on the matter of liability, it will be entitled to a restitution judgment equal to the amount consumers paid for real estate lots at Sanctuary Belize, notwithstanding the purported present value, if any, of the lots purchased. It will be the FTC's burden to prove, by a preponderance of the evidence, the amounts paid for the lots.

---

[1] As of the date of this Opinion, Baker has not properly filed his motion with the Court and thus it is not currently on the docket. *See* ECF No. 504 (directing Baker to submit all pleadings and correspondence directed to the Court by mail to the Office of the Clerk of the Court). As a reminder, all *pro se* defendants must properly mail their pleadings to the Office of the Clerk of the Court.

1

*a. Background*

The core of the FTC's allegations is that Defendants perpetrated an unlawfully deceptive scheme in violation of the Federal Trade Commission Act ("FTC Act") pursuant to 15 U.S.C. § 45(a) and the Telemarketing Sales Rule ("TSR") pursuant to 16 C.F.R. Part 310, through which Defendants purportedly attempted to convince, and in many instances did convince, U.S. consumers to purchase lots in a planned residential and commercial community in Belize, known as Sanctuary Belize. Indeed, since 2005, Defendants sold over one thousand lots, including some lots that have been sold more than once. ECF No. 539, p. 7; see also PX 816 at 20-23.

The Court has already determined that the FTC has a fair and tenable chance of establishing that Defendants were perpetrating a large-scale land sales fraud, based on one or more material misrepresentations. ECF No. 539-1. Accordingly, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), the Court has issued a Preliminary Injunction. ECF No. 615.

The Court has also held that, if the FTC prevails at trial, it will be entitled to an equitable monetary judgment against Defendants in the form of restitution, which in turn, the agency proposes to use to compensate consumers. *See* ECF No. 573, p. 3 (*citing FTC. v. Ross*, 743 F.3d 886, 890 (4th Cir. 2014)). Nonetheless, in responding to the FTC's motion, Chadwick asks the Court to re-address this prior determination and, in effect, to reconsider the remedies available under the FTC Act in this Circuit. He argues that the restitution sought by the FTC is in fact a legal remedy (as opposed to an equitable remedy) and therefore not permitted under 15 U.S.C. § 53(b). *See* ECF No. 620, pp. 2-4. The Court addressed this issue when ruling on Chadwick's Motion to Dismiss. *See* ECF No. 573, p. 3. Chadwick now, however, adds a wrinkle to his previous argument. Relying on *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), he argues that in order for the relief to be equitable, it must be traced to the particular funds within the defendant's

control rather than from the defendant's assets generally. *See* ECF No. 620, pp. 2-4.[2] The Court disagrees.

Precedent makes clear that *Great-West* is not applicable to cases brought pursuant to the FTC Act, where the Court is empowered under *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946) to grant relief even if that relief is typically similar to that conferred by a court of law. *See FTC v. Ross*, 743 F.3d 886 (4th Cir. 2014) ("the Supreme Court has long held that Congress' invocation of the federal district court's equitable jurisdiction brings with it the full 'power to decide all relevant matters in dispute and to award complete relief even though the decree includes that which might be conferred by a court of law.'") (quoting *Porter* at 399); *FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 601 (9th Cir. 2016). Moreover, recent opinions in similar cases have determined that there is no requirement that the funds be traceable to the alleged wrongdoing. *See, e.g., FTC v. World Patent Mktg., Inc.*, No. 17-cv-20848, 2017 WL 3508639, at *17 (S.D. Fla. Aug. 16, 2017) ("The court may freeze Defendants' assets even if the frozen assets are not traceable to Defendants' fraudulent activity."); *FTC v. Williams, Scott & Assocs. LLC*, No. 14-cv-1599, 2015 WL 7351993, *1 (N.D. Ga. Sept. 22, 2015) ("[T]he Court agrees with the FTC that, in this type of action, the frozen assets need not be traceable to the fraudulent activity underlying a lawsuit.").

b. *Motion to Avoid a Reduction in Consumer Restitution Based on the Alleged Value of Fraudulent Transactions*

   i. *Measurement of Restitution*

The FTC asks the Court to hold that the measure of equitable monetary relief is the amount consumers paid for lots, less any refunds already made to the consumers. ECF No. 610, p. 3. Under

---

[2] This, too, has been previously addressed by the Court in this litigation. In response to the same argument put forward by Defendant Atlantic International Bank Limited ("AIB") in its Opposition to the Preliminary Injunction, *see* ECF No. 24, pp. 29-31, the Court stated that having "considered the numerous caselaw that's been set forth... [the Court] is satisfied that certainly at this stage, the preliminary injunction stage, there is no tracing requirement with respect to the asset freeze." *See* Tr., Prelim. Inj. Hrg, 3/13/19 (a.m.) (sealed) at 14-15 The Court then denied AIB's request for interlocutory appeal on the issue. *Id.* at 15.

this proposed calculation, there would be no "credit" given to a consumer for the present value of the lot. In contrast, Defendants ask the Court to consider the present value of each lot, which, they argue, should then be applied as offsets to the amounts paid for the lots.

The Court agrees with the FTC. The alleged violations of the FTC Act occurred at the time of the allegedly deceptive sales. In other words, "[t]he fraud [was] in the selling, not the value of the thing sold." *McGregor v. Chierico*, 206 F.3d 1378, 1389 (11th Cir. 2000) (quoting *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 606 (9th Cir. 1993)). As such, the present value of the product is irrelevant. *Figgie*, 994 F.2d at 606 (discussing why a hypothetical dishonest jeweler who sells rhinestones as diamonds is not entitled to an offset for the value of the rhinestone).

*McGregor* is informative. There, the Eleventh Circuit held that even if fraudulently sold printer toner was useful and valuable, the appropriate measure of damages would be the gross sales price of the toner, thereby providing consumers the equivalent of a full refund for the purchased toner.[3] 206 F.3d 1378, 1389 (11th Cir. 2000); *see also FTC v. Kuykendall*, 371 F.3d 745, 766 (10th Cir. 2004) ("We... conclude that the district court need not offset the value of any product the defrauded consumers received."). *McGregor*'s holding was adopted by this Court on a prior occasion. *See FTC v. Ameridebt, Inc.*, 373 F.Supp.2d 558, FN 6 (D. Md. 2005); *see also FTC v. Ross*, 897 F. Supp. 2d 369, 388 (D. Md. 2012), *aff'd*, 743 F.3d 886 (4th Cir. 2014), *cert. denied*, 135 S.Ct. 92 (2004) ("the amount of consumer redress is the amount paid by consumers for the Defendants' products minus any refunds"); *FTC v. Loma Intern. Business Group Inc.*, No. 11-cv-1483, 2013 WL 2455986 at *7 (D. Md. 2013) ("[t]he correct measure of unjust gains under [the

---

[3] *Pro Se* Defendant Pukke attempts to distinguish *McGregor* by arguing that printer toner is "without any resale value" and therefore materially different than real estate, which he argues, has value. *See* ECF No. 630, p. 5. The Court finds this distinction unpersuasive. Indeed, the *McGregor* Court specifically predicated its holding on the assumption that the toner was "a useful product" that may have even been purchased "at a competitive price." 206 F.3d at 1388-1389 (11th Cir. 2000).

4

FTC Act] Section 13(b) is the 'net revenue (gross receipts minus refunds), rather than the amount of profit (net revenue minus expenses'") (quoting *FTC v. Washington Data Resources, Inc.*, 704 F.3d 1323, 1326-1327 (11th Cir. 2013)).

Indeed, "allowing a damages determination based on gross receipts in a case arising directly under the FTC Act furthers the FTC's ability to carry out its statutory purpose." *FTC v. Ross*, 897 F. Supp. 2d 369, 388 (D. Md. 2012) (quoting *FTC v. Kuykendall*, 371 F.3d 745, 765-66 (10th Cir. 2004)). The Court believes it would make little sense and, indeed, would be manifestly unfair for an allegedly defrauded consumer to be subject to the whims of the real estate market with respect to property he was inappropriately induced to buy. It would be equally unjust for a defendant to be able to escape liability for a fraud if real estate values have fortuitously fluctuated upward in value by the time of trial.[4]

In short, the amount of restitution that would be due from Defendants if found liable is properly equal to the sales price of lots less any refunds already made to consumers. Those amounts will not be further reduced based on the present value of the lots.[5]

*ii. Burden of Proof*

At trial, the FTC will have the burden of proving the sales prices by a preponderance of the evidence. *See FTC v. Ross*, 897 F. Supp.2d 369, 388 (D. Md. 2012). "The burden then shifts to the

---

[4] *Pro Se* Defendant Santos expresses concern that, if reimbursed in this manner, consumers will receive a "windfall" and be "paid twice." *See* ECF No. 624, p. 4. This is simply not so. Consistent with restitution law, consumers who are repaid the prices they paid for the lots would be obliged to relinquish the lots to defendants. *See* Dobbs, Law of Remedies: Damages, Equity, Restitution § 4.7, p. 477 (3d. ed. 2018) (citing Restatement (Third) of Restitution and Unjust Enrichment § 54 cmt. b (2011)); *see also FTC v. Figgie Intern., Inc.*, 994 F.2d 595, 606 (stating that the refund "creates no windfall" for customers who may, if they prefer, keep the deceptively sold "heat detectors instead of returning them for refunds").

[5] Although the Court is confident that this holding is correct, should the Fourth Circuit disagree with this conclusion, there will be no evidentiary record of the present value of the lots to offset the sales price. However, given the potential complexity of proving the present value of over one thousand parcels, the Court has determined it will not entertain evidence concerning the value of the potential offsets by Defendants. *See* Chadwick's description of the task of determining the present value of the lots as requiring the specialized knowledge of "expert testimony because of the myriad of extremely complicated factors affecting the market value of real estate in Belize." ECF No. 620, p.10.

defendants to show that the FTC's figures are inaccurate." *FTC v. Loma Intern. Business Group Inc.*, No. 11-cv-1483, 2013 WL 2455986 at *7 (D. Md. 2013); *see also FTC v. QT, Inc.*, 448 F. Supp.2d 908 (N.D. Ill. 2006) ("the burden-shifting framework requires the FTC to first show that its calculations reasonably approximated the amount of the defendants' unjust gains, after which the burden shifts to the defendants to show that those figures were inaccurate") (markings omitted).

*c. Conclusion*

For the foregoing reasons, the Court holds that, if the FTC prevails as to liability, it will be entitled to a restitution judgment equal to the amount consumers paid to purchase lots, notwithstanding the purported present value of the lots purchased.

A separate Order will **ISSUE**.

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**October 17, 2019**