IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| *IN re* SANCTUARY BELIZE LITIGATION | Civil No. **PJM 18-3309** |

## MEMORANDUM OPINION

The Federal Trade Commission ("FTC") has filed three motions to hold certain Defendants in contempt for violating this Court's Orders in *FTC. v. Ameridebt, Inc. et al*, 03-cv-3317-PJM ("*AmeriDebt*"). ECF Nos. 266, 267, 268. On July 25, 2019, the Court directed the Parties to brief the question of whether the contempt remedies the FTC seeks are essentially criminal in nature and whether the alleged contemnors have the right to a jury trial in connection therewith. ECF No. 529. The FTC has filed a submission on the issue. ECF No. 542. Defendant Peter Baker has responded in Opposition, ECF No. 558, Defendant Andris Pukke has responded in Opposition, ECF No. 560, and the FTC has filed a Consolidated Reply, ECF No. 572. For the following reasons, the Court holds that the remedies the FTC seeks are civil in nature and that the alleged contemnors do not have the right to a jury trial.

I.  **Factual and Procedural History**

In 2003, the FTC sued Pukke under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), in connection with what it alleged were fraudulent activities related to two credit counseling companies he owned and/or operated. *AmeriDebt*, ECF No. 1. Instead of

1

going to trial in that case, Pukke agreed to a Stipulated Final Judgment and Permanent Injunction (the "Final Order"). *AmeriDebt*, ECF No. 473. In addition to entering a $172 million judgment against Pukke and his companies[1], the Final Order barred Pukke and "employees, or affiliates, and those persons in active concert or participation with [Pukke] who receive actual notice of this Order by personal service or otherwise" from "making, or causing or assisting others to make, expressly or by implication, any false or misleading representation, including but not limited to misrepresenting… any aspect of the performance, efficacy, nature of central characteristics of the goods or services" while telemarketing that good or service. *Id.* The Final Order also barred these same individuals from violating the Telemarketing Sales Rule. *Id.*

In 2018, in the present proceeding, the FTC filed three contempt motions for violations of Orders issued in *AmeriDebt*, including the Final Order. The first motion seeks to hold Pukke, Baker and John Usher in contempt for allegedly violating the Final Order in *AmeriDebt* by deceptively telemarketing Sanctuary Belize Lots to consumers ("Telemarketing Contempt"). ECF No. 266. The FTC asks for "full remedial relief" equal to the total amount paid by lot purchasers in the present litigation as a result of the allegedly contumacious conduct which, if the contempt is proven, will be used to compensate purchasers of Sanctuary Belize lots. *Id.* While this amount is still undetermined, the FTC believes it will likely be greater than $144 million.[2] *Id.*

In the second motion, ECF No. 267, the FTC seeks to hold Pukke, Baker and Usher in contempt for failing to turn over a specific parcel of land in Belize (the "Sanctuary Parcel" or "Parcel") to the Receiver, as ordered by the Court multiple times in *AmeriDebt*. *See e.g.,*

---

[1] The FTC agreed to accept $35 million from Pukke if he cooperated, which he purportedly did not. *AmeriDebt*, ECF No. 473.

[2] Though the FTC's motion, ECF No. 266, asks that the Court hold the contemnors in contempt while allowing the FTC to collect additional evidence to prove the full extent of consumer harm, the FTC clarified during the Preliminary Injunction Hearing on September 24, 2019 that it is not currently seeking incarceration of the Defendants. However, the FTC did say that it may seek coercive incarceration at a future time if a Defendant refuses to comply with a Court order.

2

*AmeriDebt,* ECF No. 571. According to the FTC, Pukke and Baker continued to maintain control over the Sanctuary Parcel even after the Court ordered Pukke and Baker to turn it over and even after the Court held Pukke and Baker in contempt for their failure to do so. ECF No. 267. In its Parcel Contempt motion, the FTC asks that the Parcel be turned over to the Receiver to allow the Receiver to either fully recover the Parcel itself or its value, to be used for the benefit of consumers, and that Pukke, Baker and Usher face coercive incarceration if they fail to do so within 10 days of the Court's ruling. *Id.* To be clear, the Court understands that, if contempt is found in this regard, the proceeds from the Sanctuary Parcel will be used to compensate consumers in the *AmeriDebt* proceeding, not the lot purchasers in the present case.

In its third motion, ECF No. 268, the FTC seeks to hold Pukke in contempt for violating an Order in *AmeriDebt* prohibiting him from partially or fully repaying a loan to John Vipulis prior to fully satisfying the FTC's judgment against him, ECF No. 625. The FTC alleges that, in clear violation of the Order, Pukke repaid Vipulis over $3.25 million for the loan. *See* ECF No. 268. The FTC asks that Pukke be found in contempt and ordered to pay $3.25 million plus interest to the FTC "as a compensatory contempt remedy." *Id.* Again, the Court understands that if Pukke is found to be in contempt, any recovery from him will be used to compensate consumers in the *AmeriDebt* proceeding, not the lot purchasers in the present litigation.[3] Notably, in March 2019, Vipulis settled with the FTC with respect to both the contempt motion, and the present case. ECF No. 352. Vipulis agreed to and apparently did turn over $4,112,000 to the Receiver, who in sequence would turn the funds over to the FTC. *Id.*

After receiving these motions, the Court ordered supplemental briefing on the question of whether the remedies the FTC seeks are essentially criminal in nature, in which case the alleged

---

[3] Though the FTC only asks that any money recovered be returned to it, the Court presumes that any recovery will ultimately be paid out to *AmeriDebt* victims.

3

contemnors would be entitled to a jury trial, or whether they are civil in nature, in which case they would not be. ECF No. 529.

II.     **Legal Standard**

Under the Supreme Court's decision in *Int'l Union, United Mine Workers of Am. v. Bagwell*, a "contempt fine is considered civil and remedial if it either coerces a defendant into compliance with a court order or compensates the complainant for losses sustained." 512 U.S. 821, 821 (1994). *See also Bradley v. Am. Household Inc.*, 378 F.3d 373, 378 (4th Cir. 2004) (holding that "civil contempt sanctions are intended to coerce the contemnor into compliance with court orders or to compensate the complainant for losses sustained") (internal citations and quotation marks omitted); *see also Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 822 (4th Cir. 2004) (stating that "civil contempt sanctions can serve the purpose of compensating a complainant for losses sustained"). Civil contempt sanctions require nothing more than "notice and an opportunity to be heard." *Bagwell*, 512 U.S. at 827.[4]

In contrast, criminal contempt sanctions are "punitive" in nature, and are intended "to vindicate the authority of the court." *Id.* at 828. *See also Bradley*, 378 F.3d at 378 (stating criminal sanctions are "intended to vindicate the authority of the court by punishing the contemnor and deterring future litigants' misconduct" (internal citations and quotation marks omitted)).

However, "the stated purposes of a contempt sanction alone cannot be determinative" because "[most] contempt sanctions, like most criminal punishments, to some extent punish a prior offense as well as coerce an offender's future obedience." *Bagwell*, 512 U.S. at 828 (omitting internal citations and quotation marks). Therefore, "conclusions about the civil or criminal nature

---

[4] In the Fourth Circuit, "indirect" contempt, or contempt that occurs out of court, is subject to more protections than "direct" contempt, or contempt that occurs in court. *Cromer*, 390 F.3d at 820. Only "direct" contempt may be punished summarily. *Id.* "[Certain] indirect contempts nevertheless are appropriate for imposition through civil proceedings." *Bagwell*, 512 U.S. at 833.

4

of a contempt sanction are properly drawn...from an examination of the character of the relief itself." *Id.* (omitting internal citations and quotation marks).

Once a contempt is found to be civil in nature, remedies are "within the court's broad discretion" and may include ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorney's fees. *In re General Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995). Coercive incarceration is a "paradigmatic" civil sanction. *Bagwell*, 512 U.S. at 828. But a court must keep in mind that "[generally], a compensatory sanction may not exceed the actual loss to the complainant caused by the actions of respondent, lest the contempt fine become punitive in nature, which is not appropriate in a civil contempt proceeding." *In re General Motors Corp.*, 61 F.3d at 259 (internal citations and quotation marks omitted).

**III.    Analysis**

The FTC argues that all of the contempt motions it has filed are civil in nature because they seek only compensatory monetary awards and possibly follow-up coercive sanctions. The Court agrees that the remedies sought in all three contempt motions are civil in nature.

*A. Telemarketing Contempt*

The FTC seeks an award equal to the total amount paid by Sanctuary Belize consumers for lots (and presumably for incidentals) as a result of Pukke, Baker and Usher's alleged violations of the Court's Final Order in *AmeriDebt*, which the FTC estimates to be greater than $144 million.[5] The FTC labels this remedy as "compensatory."[6]

---

[5] The Court has separately issued an opinion holding that if the FTC prevails at trial, it will be entitled to a restitution judgment equal to the amount consumers paid to purchase the lots, notwithstanding the purported current value, if any, of the lots purchased. ECF No. 631.

[6] The FTC has clarified that any recovery in this regard will be joint and several with any remedies potentially awarded in the merits phase of *In re Sanctuary Belize* and that the FTC will only recover once for consumers in the present case. ECF No. 572. This clarification disposes of Pukke's argument that a contempt finding would allow for double recovery and is therefore punitive in nature.

5

The Court agrees. If proven, the total amount of relief will be calculated based on the amount of the harm, with the funds ultimately being paid to the consumers. The stated purpose of this remedy is to put the consumers in a place they would have been in had the alleged contempt not occurred. This remedy is clearly compensatory and therefore civil in nature.

Pukke submits that he will be unable to purge the Telemarketing Contempt if he is found to be in contempt, seemingly suggesting that in reality the FTC is seeking a contempt finding based on past behavior. However, *Bagwell* specifically states that a remedy is civil if it "coerce[s] the defendant into compliance with the court's order, [*or*] ... compensate[s] the complainant for losses sustained." *Bagwell*, 512 U.S. at 829 (citing *United States v. Mine Workers*, 330 U.S. 258, 303–304 (1947)) (emphasis added). The use of the conjunction "or" in *Bagwell* is fatal to Pukke's argument. The complainants would still be compensated for losses sustained.

Furthermore, multiple Circuits have focused on this second conjunctive clause in *Bagwell* in finding contempt motions similar to the contempt motions in this case to be civil in nature. *See FTC. v. Kuykendall*, 371 F.3d 745 (10th Cir. 2004) (finding defendants' violation of a permanent injunction from a previous case was civil in nature); *FTC. v. Leshin*, 618 F.3d 1221, 1239 (11th Cir. 2010) (stating a "contemnor need only be afforded the opportunity to purge his sanction of a fine, in the civil context, where a fine is not compensatory"); *FTC. v. Trudeau*, 579 F.3d 754, 770 (7th Cir. 2009) (holding that though the defendant could not purge his contempt, the sanction could still be civil if it compensated the complainant for losses sustained); *FTC v. Rensin*, 687 F. App'x 3, 7 (2d Cir. 2017) (finding a sanction imposed for a violation of a Consent Order to be civil in nature because the purpose of the sanction was "to disgorge....money received for its behaviors that were in violation of the Consent Order and to compensate customers who entered into the installment purchase agreements under false pretenses.").

6

Pukke argues that the allegedly contemptous behavior here is similar to the behavior in *Bagwell*, which the Supreme Court held was criminal in nature: the sanctionable conduct occurred out of court, involved widespread, ongoing, out-of-court violations of a complex injunction, lasted many months, was geographically widespread, was complete by the time of the contempt motion, and involved serious fines. Pukke fails, however, to mention key distinguishing factors of *Bagwell*, that "neither any party nor any court of the Commonwealth has suggested that the challenged fines are compensatory" and that "[at] no point did the trial court attempt to calibrate the fines to damages caused by the union's contumacious activities or indicate that the fines were to compensate the complainant for losses sustained." *Bagwell*, 512 U.S. at 834 (internal citations and quotation marks omitted). The *Bagwell* Court, in fact, stated that it was "[imposing] some procedural burdens on courts' ability to sanction widespread, indirect contempts of complex injunctions through *noncompensatory* fines." *Id.* at 839 (emphasis added). Again, the fact remains that multiple Circuits have found contempt proceedings similar to the proceedings under way here to be civil in nature.

The Court acknowledges that the alleged contempt is "indirect," inasmuch as the contemptuous actions are said to have occurred out of court. However, indirect contempt can still be civil in nature. *See Bagwell*, 512 U.S. at 833; *see also Enovative Techs., LLC v. Leor*, 86 F. Supp. 3d 445 (D. Md. 2015) (holding a defendant in civil contempt for violating a Preliminary Injunction).

Throughout this proceeding, the alleged contemnors have been provided ample due process and will continue to be provided with such through evidentiary hearings on the contempt motions, which will be held contemporaneously with the merits trial. Both the FTC and the alleged contemnors will be able to present evidence as to why a finding of contempt is or is not warranted.

The Court is satisfied that this manner of proceeding will fulfill *Bagwell's* "notice and an opportunity to be heard" requirement. 512 U.S. at 827. Accordingly, the Court will **DEFER** ruling on the Telemarketing Contempt motion until the merits trial.

*B. Parcel Contempt*

The FTC also seeks an order compelling Pukke, Baker and Usher to turn over the Sanctuary Parcel to the Receiver or face coercive incarceration if they fail to do so. The FTC argues that the coercive incarceration it seeks is civil in nature, since Pukke, Baker and Usher allegedly still exercise control over the Sanctuary Parcel in violation of the Court's Order in *AmeriDebt*.

Again, the Court holds that the remedy sought is civil in nature. The FTC has stated that, if it prevails on the motion, the cash value of the land could be used to compensate victims, presumably the *AmeriDebt* victims, for their harm. Since the purpose of the contempt sanction is compensatory, it remains civil in nature. Incarceration would be appropriate only if necessary to "coerce[ ] the defendant[s] into compliance with the court's order" should Defendants fail to turn over the Sanctuary Parcel. *Bagwell*, 512 U.S. at 829 (internal citations and quotation marks omitted). If Pukke, Baker and Usher are in fact found to effectively exercise control over the Parcel, and are further found to be able to turn over the parcel but refuse to do so, as to any resulting incarceration, they would "carr[y] the keys of [their] prison[s] in [their] own pocket[s]." *Trudeau*, 579 F.3d at 770 (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911)). Arguably, Pukke, Baker and Usher may also be required to compensate the *AmeriDebt* consumers even if they do not presently control the Parcel so long as they are found to have effectively exercised control over the Parcel at some earlier date[7].

---

[7] The Court understands the FTC is alleging Pukke, Baker and Usher currently effectively control the Sanctuary Parcel. But even if they do not, they may still face a compensatory sanction based on some appropriate date in the past (*e.g.* the date of the Turnover Order, the date of the Orders Approving Stipulation for Conditional Release of Pukke and Baker, etc.).

Pukke argues that it will be impossible for him to comply with any order to turnover control of the Parcel because he does not own or control it. This, he says, makes the sanction punitive and criminal in nature. That remains to be seen. Current or past ownership or control of the parcel are matters of fact that must be deferred until the merits phrase of this case. Accordingly, the Court will **DEFER** ruling on the Parcel Contempt until the merits trial.

*C. Loan Contempt*

Lastly, the FTC asks the Court to hold Pukke in contempt and award it $3.25 million plus interest, the amount Pukke allegedly repaid Vipulis in violation of the Court Order in *AmeriDebt*. According to the FTC, these funds should have been conserved so as to provide redress to Pukke's victims in *AmeriDebt*. The FTC argues that the $3.25 million plus interest it seeks is a compensatory remedy. Pukke argues that the sanction is punitive because the FTC has settled with Vipulis, who has purportedly repaid to the FTC the money the FTC now seeks from him.

To be sure, the FTC acknowledges that a double recovery would not be compensatory in nature, since it states in its pleading that "[t]o the extent any such funds exceed the amounts paid by Vipulis to resolve the claim against him, Pukke is liable." ECF No. 542. And in its Reply, the FTC claims that the Receiver has identified payments made to Vipulis that exceed the amount of the monies paid by Vipulis to the FTC. ECF No. 572.

As discussed previously, compensatory sanctions, even when paid to the FTC, remain civil in nature and do not require a jury trial. *See Leshin*, 618 F.3d at 1237 ("We afford the district court wide discretion in fashioning an equitable remedy in civil contempt, which includes ordering disgorgement"). The Court understands any monetary remedy will be used to compensate *AmeriDebt* victims, through the FTC.

9

If it is determined that the money paid to Vipulis, a potential source of the *AmeriDebt* victims' compensation, has been fully refunded, the Court agrees that the FTC would be seeking a sanction that exceeds the actual loss to the complainant caused by the actions of respondent--in effect becoming a criminal sanction under *In re General Motors Corp.*, 61 F.3d at 259. But whether the settlement with Vipulis in fact exceeds any actual loss caused by Pukke, if any, has yet to be determined.

In this regard, the Court would note that it is authorized to award appropriate prejudgment interest in civil contempt motions. *See Goya Foods, Inc. v. Wallack Mgmt. Co.*, 344 F.3d 16, 21 (1st Cir. 2003) (reiterating a prior holding that a "district court had discretion to include a prejudgment interest component in the monetary sanction"); *see also SEC v. Homa*, 514 F.3d 661 (7th Cir. 2008) (affirming the district court's award of civil contempt and order that they jointly and severally disgorge approximately $7,216,462.76, plus prejudgment interest). The Court is not in a position at this time to parse out what part of the Vipulis settlement was for repayment of principal and what part was for interest, nor indeed what rate of prejudgment interest, if any, was included in the settlement. Since the clock for the accrual of interest arguably started running at the moment of contempt, *i.e.*, the date of the prohibited payment by Pukke to Vipulis, Pukke's liability, if contempt is proven, may well not have been fully satisfied by Vipulis' settlement with the FTC. As with the other alleged contempts, the Court will **DEFER** ruling on the Loan Contempt motion until the merits trial.

For the foregoing reasons, and except as noted above, the Court finds that the remedies the FTC seeks are civil in nature and that the alleged contemnors are not entitled to jury trials.

A separate Order will **ISSUE**.

**October 22, 2019**

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE