IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| *IN re* **SANCTUARY BELIZE LITIGATION** | * * * * * * * * * * | Civil No. **PJM 18-3309** |

## MEMORANDUM OPINION

By e-mail, *pro se* Defendant Andris Pukke has asked the Court to determine whether communications between himself, *pro se* Defendant Peter Baker and *pro se* Defendant Michael Santos are protected by the joint defense privilege as an extension of either the attorney-client privilege or the work-product privilege. The Court will construe this e-mail inquiry as a Motion for a Protective Order. The Federal Trade Commission ("FTC") has responded in Opposition, ECF No. 701, and Pukke has Replied, ECF No. 734.[1] On December 6, 2019, the FTC filed a surreply, ECF No. 742, and Pukke filed another response.[2] For the following reasons, the Court holds that the communications between the *pro se* Defendants are not privileged.

**I.      Factual and Procedural History**

The facts of this case are set out in the Court's Opinion granting a Preliminary Injunction,

---

[1] The Court set an expedited briefing schedule in November 12, 2019 correspondence with the Parties. The Court ordered that the FTC could file a response by November 20, 2019 and Pukke could file a reply by November 26, 2019. The Court received Pukke's Reply on December 2, 2019, though it was self-dated November 21, 2019. Though Pukke did not request an extension of time from the Court to respond, the Court considered his late filing anyway. Defendants are reminded to be timely with their filings, even if they are proceeding *pro se*.

[2] The FTC characterizes its filing as a Reply, but the Court set out a briefing schedule in its correspondence with the Parties. Because the FTC's surreply was filed without leave of Court, the Court will disregard this filing. Similarly, the Court will also disregard Pukke's response to the FTC's surreply.

1

*In re Sanctuary Belize Litig.*, 2019 WL 3714392 (D. Md. Aug. 2, 2019). Among other things, Pukke allegedly controlled the operations of the Sanctuary Belize Enterprise ("SBE"). including communications with lot owners about corporate structure, legal affairs, lot ownership structure, dissolution of SBE-related entities, payments for equipment shipped to Belize, review of lot sale contracts, authorization of commissions for telemarketers, dealing with consumers who wanted to sell their lots, dealing with the taxes of SBE entities, addressing HOA fee disputes, making design decisions, choosing office space, making rent payments, deciding raises for SBE employees, and reviewing architectural plans. *Id.* at 17.

Baker held numerous positions of control in several of the entities comprising SBE and was apparently involved in Sanctuary Belize marketing and sales operations, including owning Global Property Alliance, Inc. ("GPA"), one of the SBE Defendants responsible for marketing and sales of Sanctuary Belize. *Id.* at 18. Baker has also, under oath, accused Pukke of siphoning money from the Project and has claimed that filings and bank records showing him (Baker) having an ownership stake in SBE entities were falsified. *See id.* at 22; *see also* ECF No. 557 at 6 (Baker's filing on August 22, 2019 stating that "Pukke resented Baker…and used Baker's name to funnel millions to himself and outside investments that Baker was not part of").

Santos apparently worked as Director of Communications for GPA and as Director of Business Development for GPA, Buy Belize, LLC ("Buy Belize"), and Buy International, Inc. ("Buy International"). *See In re Sanctuary Belize Litig.*, 2019 WL 1934673, at *1 (D. Md. Apr. 30, 2019). Pukke allegedly controlled these three corporations, which purportedly marketed lots and tours of the lots located at the real estate development known as "Sanctuary Belize." *Id.*

Pukke is now suggesting that communications between himself, Baker and Santos are protected under the common-interest/joint defense privilege as an extension of the attorney-client

2

privilege or the work-product privilege. He argues that because he and the two other Defendants are proceeding *pro se* in this case, they are, in effect, their own lawyers. Furthermore, he says, because much of the communications inter se pertain to strategies in the case, their communications should be privileged. In addition, Pukke requests, if the Court finds that these communications are not privileged, that the FTC be ordered to turn over to him their internal communications as well.

## II. Joint Defense Privilege

The joint defense privilege, or common interest rule or doctrine, protects communications between parties who share a common interest in litigation. *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 341 (4th Cir. 2005). However, the joint defense privilege "presupposes the existence of an otherwise valid privilege, and the rule applies not only to communications subject to the attorney-client privilege, but also to communications protected by the work-product doctrine." *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d 244, 249 (4th Cir. 1990).

The Fourth Circuit has held that the joint defense privilege extends to civil co-defendants, and not just with respect to communications between their lawyers. *See id.* (stating "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims"). The proponent of the privilege, however, has the burden to establish the privilege applies and that there is a common interest. *See Sheet Metal Workers Int'l Ass'n v. Sweeney*, 29 F.3d 120, 125 (4th Cir. 1994); *see also Hanwha Azdel, Inc. v. C & D Zodiac, Inc.*, 617 F. App'x 227, 243 (4th Cir. 2015).

First, there is the question of what constitutes a "common interest." The Fourth Circuit has said the common interest must be about a legal matter. *See United States v. Aramony*, 88 F.3d 1369, 1392 (4th Cir. 1996). Common ownership or complete control, such as when wholly owned subsidiaries operate as a single entity, can establish common interest. *See Neuberger Berman Real*

*Estate Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 416 (D. Md. 2005). But the FTC argues, with support of case law from this Court, that defendants must share "identical" legal interests at the time of disclosure absent common ownership or complete control. *See Glynn v. EDO Corp.*, 2010 WL 3294347, at *7 (D. Md. Aug. 20, 2010); *see also Elat v. Ngoubene*, 2013 WL 4478190, at *2 (D. Md. Aug. 16, 2013); *see also Beyond Sys., Inc. v. Kraft Foods, Inc.*, 2010 WL 3059344, at *3 (D. Md. Aug. 4, 2010); *see also Schlossberg v. B.F. Saul Ins. Agency of Md., Inc.*, 2015 WL 1522879, at *6 (D. Md. Apr. 1, 2015); *see also Neuberger Berman Real Estate Income Fund*, 230 F.R.D. at 416. *But see Sheet Metal Workers Int'l Ass'n v. Sweeney*, 29 F.3d 120, 124 (4th Cir. 1994).

The Court need not get into the weeds on this. Both the record in this case and the FTC's Response contain a multiplicity of facts that demonstrate a lack of a common legal interest, in additional to a lack of an identical common legal interest and a lack of common ownership or complete control. Throughout the case, as the FTC points out, Pukke and his cohorts have been pointing their fingers at one another over the matter of control over entities and people; in short, they have been "advancing adverse theories of the case." In an August 22, 2019 filing, more than a month after Baker alleged in his deposition that he and Pukke started to work together *pro se*, Baker accused Pukke of misappropriating funds and using his identify without authorization. The FTC also points to a recent deposition on October 15, 2019, where Baker stated that he did not think that his interests and Pukke's are aligned.[3] To be clear, the Court notes Baker's use of the present tense, *i.e.* "our interests <u>are</u> not aligned" (emphasis added).

---

[3] The full interaction is below.
    **Q. Has [Pukke] indicated to you that he intends to testify in this case?**
    A. He's very close to the vest, so to speak, with his plans and his future plans. Because I don't think he thinks – our interests are not aligned.
    **Q. In what way aren't your interests aligned?**
    A. I had no idea what was going on with the sales and marketing as far as I believed everything…
ECF No. 701-1 at 41.

The FTC also argues that for the common interest privilege to apply, there must have been an understanding that the co-defendants shared legal interests and were exchanging information in furtherance of those legal interests. The Court agrees. In *Am. Mgmt. Servs., LLC v. Dep't of the Army*, the Fourth Circuit held that "there must be an agreement or a meeting of the minds" for the common interest doctrine to apply and that mere "indicia of joint strategy as of a particular point in time are insufficient to demonstrate that a common interest agreement has been formed." 703 F.3d 724, 733 (4th Cir. 2013) (internal citations and quotations omitted); *see also Maxtena, Inc. v. Marks*, 2013 WL 1316386, at *6 (D. Md. Mar. 26, 2013). In the same recent deposition, Baker said that Pukke did not tell him he considered the texts to be confidential until the weekend before October 15, 2019. Notably, Baker and Santos have stayed entirely silent on this issue, and no one has put forth evidence that there was a meeting of the minds.[4]

Pukke, in his Reply, writes in a few short paragraphs that he and Baker do have common interests,[5] stating that, since starting their *pro se* representations, they "have reconciled many of those misunderstandings and their interests are undeniably aligned." Pukke suggests that they now have "common goals and defense," namely dismissal of the case. But Pukke does not rebut any of the FTC's evidence with evidence of his own nor does he provide any further detail on how or when their interests became aligned. As to Santos, Pukke does not explain how he and Santos share a common legal interest, or even maintains they have a common legal interest. These mere conclusory statements do not advance his argument, especially given that it is his burden to show that a common interest exists.

---

Though Baker's first sentence in the deposition transcript is not clear, the next sentence shines light on the meaning. Furthermore, Pukke does not dispute the FTC's characterization of this exchange.

[4] The FTC represents that Baker has taken the position that he will wait for the FTC and Pukke to resolve their differences before producing his communications with Pukke.

[5] The FTC has also filed an email correspondence dated November 8, 2019 between it and Pukke. In the correspondence, Pukke agrees to produce these texts as he "can't find anything online that confirms [his] privilege claims." ECF No. 701-1 at 36.

Even though, as co-defendants, Pukke, Baker and Santos may have an interest in defeating the suit or in advancing the same procedural arguments that, quite frankly, is unavailing. *See, e.g., Baltimore Scrap Corp. v. David J. Joseph Co.*, 1996 WL 720785, at *8 (D. Md. Nov. 20, 1996) (holding that defendants who are "jointly accused of an unlawful act or face a common threat of litigation, does not necessarily demonstrate, at least for purposes of the common interest doctrine, that they share a common interest in the suit or in defending against the accusations" because though "they plainly have a common interest in being exculpated and defending against the State's allegations, it is not necessarily true that their interests in relation to one another are complementary."). Defendants' interests, as shown by the record, in major respects are not only not complimentary, they are contradictory.

Pukke has not met his burden to show that there is a common legal interest amongst himself, Baker and Santos.

### III. Attorney-Client Privilege

The Fourth Circuit has adopted the "classic" test for delineating when attorney-client privilege applies. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) **the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer;** (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Id.* (emphasis added).

The issue of whether the joint defense privilege as an extension of the attorney-client privilege extends to *pro se* civil defendants is a novel one. The Court finds the proposition highly doubtful.

The attorney-client privilege only applies to communications in representations involving a member of the bar. Since the joint defense privilege presupposes the existence of the attorney-client privilege, absent an attorney-client privilege, there can be no joint defense privilege. At the same time, why the joint-defense privilege as an extension of the attorney-client privilege should extend to cover *pro se* litigants who are not members of the bar and not subject to self-imposed oversight, regulation, and professional ethics, is highly questionable. While it may be true that the purpose of the attorney-client privilege, "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice," *Aramony*, 88 F.3d at 1389, has some relevance to defendants who are acting *pro se*, there are important countervailing considerations. The "attorney-client privilege interferes with the truthseeking mission of the legal process" because it "is in derogation of the public's right to every man's evidence." *Id.* (internal citations and quotations omitted). Defendants are claiming a shield that they simply are not entitled to.

But all this said, the Court finds it unnecessary to decide whether the joint-defense privilege as an extension of the attorney-client privilege applies to *pro se* civil defendants. The short of the matter is Pukke failed to meet his burden of demonstrating that a common interest even exists.

Accordingly, the Court **DENIES** his Motion for a Protective Order insofar as it presupposes that the communications between him, Baker, and Santos are protected by the joint defense privilege as an extension of the attorney-client privilege.

## IV. Work Product Privilege

Under the doctrine of Work Product Privilege as articulated in *Hickman v. Taylor*, 329 U.S. 495 (1947), "an attorney is not required to divulge, by discovery or otherwise, facts developed by his efforts in preparation of the case or opinions he has formed about any phase of the litigation, even if they have been reduced to writing. *In re Doe*, 662 F.2d 1073, 1077 (4th Cir. 1981).

The question of whether the work-product privilege applies to *pro se* defendants has not been conclusively answered by courts. While some district courts within the Fourth Circuit have suggested in dicta that the privilege applies to *pro se* defendants, *see Haigh v. Matsushita Elec. Corp. of Am.*, 676 F. Supp. 1332, 1359 (E.D. Va. 1987), and courts elsewhere have held the same, *see, e.g., Moore v. Kingsbrook Jewish Med. Ctr.*, 2012 WL 1078000, at *8 (E.D.N.Y. Mar. 30, 2012), the Fourth Circuit has yet to opine on the matter. But once again, this Court need not address the issue because, as already explained, Pukke has not met his burden of proving that a common interest in fact exists.

Accordingly, the Court **DENIES** Pukke's Motion for a Protective Order insofar as it presupposes that communications between him, Baker, and Santos are protected by the joint defense privilege as an extension of the work-product privilege.

In view of the foregoing, the Court concludes that no communications between Pukke, Baker and Santos are privileged.[6] Pukke must therefore produce all documents not already produced by him that are responsive to the FTC's document requests. He must do so within ten (10) days.[7]

---

[6] The FTC also argues that even if there were a common interest and communications are privileged, the crime/fraud exception would apply. The Court does not find it necessary to address this question, as it has found that the communications are not privileged.

[7] The Court understands the FTC is not asking for Pukke's communications with his former counsel or internal communications amongst Pukke's former counsel, which would be inappropriate since communications between counsel for a party are generally privileged. Nor will the Court order the FTC's internal communications to be produced. Clearly internal communications related to the case within the same legal firm (*i.e.* the FTC) are privileged either by reason of attorney-client or work-product privilege.

8

Because the FTC has provided evidence that Pukke has not been fully complying with the production of documents, the Court orders that Pukke must respond in writing with respect to each of the FTC's document requests, identifying what documents are being produced in response to each request, and further, what sources and locations he has accessed in searching for the responsive materials, whether or not he actually located relevant documents.

A separate Order will **ISSUE**.

**December 10, 2019**

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE