## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td><b><i>IN re</i> SANCTUARY BELIZE</b></td><td>*</td><td></td></tr>
<tr><td><b>LITIGATION</b></td><td>*</td><td>Civil No. <b>PJM 18-3309</b></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

## <u>MEMORANDUM OPINION</u>

The Court considers the FTC's Omnibus Motion to Strike, ECF No. 896, Defendants' Motions to Strike, ECF Nos. 904, 906-915 and 940, the FTC's Omnibus Opposition to Defendants' Motions to Strike, ECF No. 922, and Defendants' responses in Opposition to the FTC's Omnibus Motion to Strike, ECF Nos. 942, 944 and 945[1]. What is quite clear is that if, the Court had attempted to rule on the admissibility of each and every document, piece of testimony, or argument at the time they were offered during the trial, the proceedings—even apart from the disastrous COVID-19 interruption—might yet be going on. Accordingly, the Court stands by its decision (recognizing that occasionally it also made some rulings during trial) to allow in all evidence, but directing the Parties to file post-trial Motions to Strike any evidence they believe was inappropriately received during trial. Even then, in their post-trial motions, the Parties have identified a myriad of objections to evidence they ask the Court to rule on. The task is formidable, but for the most part the Court finds its unnecessary to rule on the objections item by item.

To begin, some perspective:

---

[1] Pukke e-mailed his response to the Court two days after the deadline to respond set forth in ECF No. 890.

1. This was a non-jury trial. One of the fundaments of the law of evidence was not in play. There was no need during the proceeding to keep lay jurors from in any way hearing about, much less relying upon, arguably questionable evidence that might materially affect their decision-making, whether it be hearsay, irrelevancies, immaterialities, documents of questionable authenticity or the like. A judge sitting in a non-jury case is presumed to know the law and is therefore deemed capable of sorting out what evidence should or should not be admitted. *See, e.g.*, *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) (adopting the Fifth Circuit's position in *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517 (5th Cir. Unit A Jan. 1981) that "excluding relevant evidence on the basis of 'unfair' prejudice is a useless procedure. Rule 403 assumes a trial judge is able to discern and weigh the improper inferences, and then balance those improprieties against probative value and necessity. Certainly, in a bench trial, the same judge can also exclude those improper inferences from his mind in reaching a decision."); *United States v. Hassanzadeh*, 271 F.3d 574, 578 (4th Cir. 2001) (finding a district court did not abuse its discretion in admitting evidence of a defendant's prior conviction under Federal Rule of Evidence 404 because "we have confidence that at the bench trial, the experienced district judge was able to separate the emotional impact from the probative value of this potentially prejudicial evidence."). In fact, the Fourth Circuit has actually directed that "in the context of a bench trial, evidence should not be excluded under 403 on the ground that it is unfairly prejudicial." *Id.*

2. There is, moreover, a self-regulating feature in this particular case. Following the Court's present ruling on the Motions to Strike, the Parties will be submitting Proposed Findings of Fact and Conclusions of Law, citing to evidence they feel either supports their case or undermines that of their opponent(s). That means that much evidence, the admissibility of

which is presently under challenge, may ultimately not be relied upon by a party in the party's final submissions. Beyond that, to the extent that a party may cite challenged evidence, the Court may well deem the evidence of marginal relevancy or materiality (i.e. not potentially outcome-determinative). Indeed, even if evidence may be objectionable and potentially outcome-determinative, the Court may still decide that other, indisputably better-grounded evidence, outweighs the challenged evidence. In this regard, the credibility of the proponent of the challenged evidence is likely to play an important role in assessing the strength of the objection.

3.  All this is to say: it is essentially an academic exercise, demanding an excess of effort for the Court, to rule on each and every objection before it can see how the evidence will ultimately be deployed in the case.

4.  One additional preliminary observation: a trial judge always hopes to conduct as error-free, or perhaps better said, as non-reversible a trial as possible. Evidence that could be kept out may nevertheless be let in, on the fair possibility that its admission will at most eventually be deemed harmless. Accordingly, a general inclination on the judge's part to let in as much of the proffered evidence as possible, without seriously prejudicing a party, would seem to be a reasonable guiding principle. None of this is intended to diminish the importance of the Motions to Strike that the Parties have obviously spent considerable time crafting. At a minimum, the Motions to Strike and the responses in Opposition will help the Court, along with its own recollection of the evidence, focus on the weight the Court should give the evidence if and when it is evaluated.

II.

That said, some categories of objections are easily ruled upon.

1. The Court indicated it would receive all evidence duly received during the Preliminary Injunction hearing, and confirms that proposition but, in fairness, this does not include hearsay, such as affidavits or excerpts of affidavits.

2. Opening arguments, closing arguments, and in-between arguments of counsel or *pro se* parties, including charts prepared by FTC counsel or *pro se* parties, are clearly not evidence and will not be considered as such. However, charts or summaries based on otherwise duly-received evidence will be considered. Statements of fact made during any arguments at trial but not made during the evidentiary phase of the trial where they were subject to cross-examination, will not be considered. However, evidence that was actually received during the evidence phase of the trial but referred to in the arguments, of course, remains in play. Moreover, that category of evidence and any reasonable inferences based on that evidence may be referred to in the argument portions of the Parties' final submissions.

3. The Court is well aware that Messrs. Pukke and Chadwick (to a lesser extent) pleaded the Fifth Amendment during their pre-trial depositions, then sought to testify at trial and/or to offer exhibits on topics that they declined to testify about on deposition. As to any and all matters these Defendants refused to answer in their depositions on Fifth Amendment grounds, their attempted trial testimony and any documents covering the matters they declined to be deposed on will be struck because it "is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." *Mitchell v. United States*, 526 U.S. 314, 321 (1999). On the other hand, as the Court has already ruled, the Court will permit the FTC to argue that appropriate negative inferences should be made as to the matters covered by the Fifth Amendment assertions. ECF No. 725 (citing *Baxter v.*

*Palmigiano*, 425 U.S. 308, 318 (1976) and *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002)). But, and this is important, the Court will not strike the testimony that Baker may have given about the activity of Pukke or Chadwick when Baker was on the stand, nor will the Court strike documents offered by Defendants that were created by any Co-Defendant or agents or employees of said Co-Defendants, even though they may be self-serving. These responses, of course, will be carefully weighed as possibly self-serving.

4.  The Court understands that hearsay evidence, as a rule, should not be admitted; that is, testimony or exhibits offered for the truth of the matter when the declarant did not appear live in court subject to cross-examination should not be received. For instance, the Court has ruled several times that affidavits and letters of SBE lot owners—satisfied or dissatisfied—will not be considered and they will continue not to be considered. But there was live testimony at trial by certain lot owners during trial on their satisfaction or dissatisfaction, and that testimony, of course, will be considered insofar as the issue of lot owners' satisfaction or dissatisfaction is an issue. The Herskowitz letter, AP 411 and PB 35, bears special mention. Clearly it is hearsay because Herskowitz, the author, did not testify at the trial nor was he duly deposed and his deposition offered in evidence. Nevertheless, Pukke and Baker apparently intend for the Court to accept the letter for the truth of the statements contained therein. But the Court clearly recalls testimony pertaining to the circumstances surrounding the drafting of the letter, particularly insofar as Pukke and Baker did not reveal those circumstances to the Court during trial until pressed by it. The background of the Herskowitz letter clearly demonstrates why the hearsay rule is important. Thus, while the letter will not come in for the truth of the statements contained therein, it will come in insofar as it reflects on how the letter came about as well as Pukke

and Baker's candor and credibility in the case. As to all other hearsay evidence, the Court will await the future filings of the Parties to see how, if at all, it is deployed and how outcome-determinative it may be before evaluating it. Again, this is not to say that any hearsay evidence will be deemed conclusive of the matters covered.

5.  Somewhat more problematic is ruling on the admissibility of documents the FTC says Defendants failed to produce before trial, despite one or more requests for production having been made. Determining whether certain documents in a document-heavy case such as this were in fact produced, then determining whether any non-production was intentional, invariably present difficult tasks for a trial judge. Certainly the three remaining active Defendants—Pukke, Baker, and Chadwick (at least to some extent)—did not have the same advantages the FTC had in accessing documents and quite possibility they were not, in every instance, able to get their hands on certain documents in timely fashion after their production was requested. The Court will therefore receive all documents the FTC says were not produced. (At the same time, the Court will also admit the Consumer Committee Minutes insofar as they may be relevant, which, candidly, seems to be marginally so, though it does not accept Pukke's and Baker's claims that they were withheld by the FTC during discovery)[2]. Again, this is not to say that the documents are authentic, non-hearsay, relevant or material. Nor of course are the documents necessarily conclusive as to the matters they purport to address. Other evidence, more solidly grounded—whether documentary or testimonial—will no doubt be cited in contradiction to the non-produced documents. The Court will leave it to the FTC, in its opposition to

---

[2] Baker, in his response to the FTC's Omnibus Motion to Strike, once again asks the Court to impose sanctions on the FTC for allegedly not producing documents it used at trial. The FTC filed a limited opposition, pointing out, again, that Baker's contention is baseless. ECF No. 930. The Court has already denied Baker's and Pukke's previous Motions for Sanctions, ECF Nos. 929 and 943, and will **DENY** this instant motion as well.

Defendants' Proposed Findings of Fact and Conclusions of Law, to challenge the validity, relevance, materiality or, weight to be given to any of the alleged non-produced documents.

6. A special word is in order about the Kanantik evidence. The FTC has proceeded on the theory that Kanantik was at all relevant times intimately involved with SBE in terms of marketing, sales, personnel, and other shared activities. Ample evidence to that effect was presented at trial and the Court allowed the FTC to pursue both the theory and evidence in support of it throughout the trial. Chadwick in particular has objected to virtually any evidence relative to Kanantik being received and has asked the Court to strike virtually wholesale all evidence pertaining to it. That request is rejected. At this juncture, arguably at least, everything Kanantik is in play. Chadwick therefore may find himself at sea without an anchor if he refuses to confront this reality in his future filings.

7. Out-of-court statements made by employees or agents of any and all Defendants, individual or corporate, including Defendants who have settled the FTC's claims against them, and offered by the FTC, will be received as admissions of a party opponent, pursuant to Federal Rule of Evidence 801(d)(2). Accordingly, there is no basis for Baker's request to exclude statements attributable to Usher, Kazazi, Costanzo (aka Connelly), and Greenfield. The "missing witness" rule has no application in this case. But as indicated in Section II.3, *supra*, certain documents offered by Defendants will also be received.

8. Pukke's request to strike all depositions is totally groundless and is rejected. Any Party-Defendant, including an active, settling, or defaulting Defendant, may be deposed and their depositions may be used in any way at the trial including as affirmative evidence or to impeach the deponents' testimony. Fed. R. Civ. P. 32. As to the use of the depositions as affirmative evidence, designated excerpts or counter-designated excerpts of the depositions

set forth in the Pre-Trial Order will be considered pursuant to the same rule and Local Rule 106. This includes depositions of nonparties, who may be deposed if opposing parties or their counsel have been given notice of their depositions, and excerpts of such depositions may be read into the record if previously designated or counter-designated in the Pre-Trial order. *Id.*; Fed. R. Civ. P. 30.

9. All other exclusions requested by Defendants are denied. The Court finds that such evidence has potential relevance to the allegations against Sanctuary Belize and one or more Defendants. Such evidence is not excludable merely because Defendants are displeased with what conclusions the evidence might lead to. Without limitations, this evidence includes:

   a. The Receiver's Reports (these are court records and business records).

   b. The Mathis Investment Agreements with Kanantik and her dealings with Chadwick.

   c. Any and all scripts, marketing materials, brochures or the like of Sanctuary Belize and Kanantik seized from 3333 Michaelson Drive, Irvine, CA.

   d. Testimony of Paige Reneau (but not including the e-mail purportedly sent by her post-trial).

   e. Testimony of Eric Lioy (presumably also Richard Peiser, the expert Pukke apparently means to refer to).

   f. Evidence pertaining to Baker's purchase of items, including personal items, using the funds of one or more corporate Defendants. (Arguably, this goes to Baker's activity as a knowing and active operative of one or more of the corporate

Defendants. Baker was free at trial to explain some or all of the purchases and indeed he undertook to do so.)

g.  Any and all evidence pertaining to AmeriDebt, DebtWorks, and the so-called Parcel Contempt. (The FTC may fairly argue that certain actions of Pukke and Baker taken in and for Sanctuary Belize violated court orders and agreements related to these cases. Chadwick's involvement in the Pukke supervised release proceeding, measured against evidence of his knowledge of Pukke's involvement in and use of aliases in the Sanctuary Belize enterprise offered at the recent trial, arguably suggests possible perjury on his part in the earlier cases, hence reflects upon his credibility in the present litigation.)

h.  The "Hey Buddy" e-mail from Pukke to Chadwick (PX 663). (Though Chadwick argues that "the FTC placed heavy reliance in its closing arguments on some evidence that had not been previously used at trial," including this e-mail, this e-mail was in fact introduced at trial. Trial Tr. 2/6/20 afternoon, 105:9-106:2.) [3]

i.  Baker's objection to evidence pertaining to Gordon Barienbrock. (Among other things, Barienbrock apparently loaned money that allowed one or more Defendants to purchase land for the Sanctuary Belize project. One or more Defendants or related entities took back a purchase money mortgage. This transaction occurred at the same time Defendants were purportedly representing to lot purchasers that the SBE project was "debt-free." Barienbrock might well have been added as a Relief Defendant in this case, but in any event, despite Defendants' suggestion that he was

---

[3] Chadwick also argues that he had no opportunity to cross-examine Pukke about the e-mail or explain the e-mail himself when called by the Government as a witness. Chadwick did not call Pukke as a witness, and though the Court left open the possibility that Chadwick might re-take the stand during the third week to supplement his original testimony, he did not request to do so. Trial Tr. 1/28/20, 220:5-220:14.

threatened and coerced, Barienbrock has signed a Settlement Agreement with the Receiver, the approval of which is pending before the Court. The Parties are free to argue the specific effect that the Settlement Agreement might have on the litigation.)

j.  "Old and outdated evidence," or evidence supposedly "outside the Statue of limitations," or res judicata arguments. (These arguments are meaningless. If evidence is relevant and material, it is not disqualified by reason of its age or the passage of time. This might go to the weight of the evidence, not its admissibility.)

k.  So called "unused" exhibits, of the FTC will not, at this juncture be excluded. (All were marked and delivered to Pukke, Baker and Chadwick before trial, none of whom objected to their authenticity when given an opportunity to do so by the Court. Defendants, for the most part have not specified which "unused" exhibits they have in mind, some of which may in fact have been used at trial. It remains to be seen how, if at all, any exhibits not expressly introduced at trial will be deployed by the FTC in the Proposed Findings of Fact and Conclusions of Law.) Baker argues that the FTC did not disclose certain exhibits that it introduced at trial pursuant to Federal Rule of Civil Procedure 26. However, Rule 26 does not require exhibits used solely for impeachment purposes to be disclosed ahead of time, and Baker has not specified which exhibits he believes were not disclosed ahead of trial and were not used for impeachment purposes. Furthermore, the Court recalls that many of the exhibits added to the FTC's exhibit list during trial were in fact documents the FTC had asked for, and which had not been received, or as to which the Parties stipulated, or the Court took judicial notice of.

A separate Order will issue.


May 12, 2020


_____/s/_____
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**