IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| *In re Sanctuary Belize Litigation* | ) | Civil Action No.: 18-3309 JPM |
|  | ) | Oral Argument Requested |
|  | ) |  |

## DEFENDANT PETER BAKER'S RESPONSE TO FTC'S OBJECTION TO STAY, CONTEMPT RESPONSE AND THE FTC'S THREAT TO AMENDING COMPLAINT WITH SECTION 19

Based on the pending Supreme Court rulings on the FTC's ability to obtain ANY monetary damages under Section 13(b), this case should clearly be Stayed pending that decision, as it has undeniably massive impact on this entire case.

Even the FTC understands the impact of the Supreme Court's decision on their ability to obtain monetary damages under 13(b) as they now threaten to simply amend the complaint and bring it under Section 19 if the ruling does not go in their favor. Why wait? This case should be Stayed due to the pending Supreme Court's decision on 13(b) and if the FTC wishes to amend the complaint in the meantime, they should do so. In fact, Baker welcomes the FTC's threat to amend the complaint and bring it under Section 19 of the FTCA.

Indeed, Section 19 would be more appropriate if the FTC intended to use old and outdated evidence. But they didn't choose to do so as they are very well aware that if they brought the case under Section 19, the defendants would have been provided lawyers and could have properly defended not only themselves, but the corporations that were deceptively given Clerk's defaults. The fact that **all** of the FTC evidence is older than 3 years would still be an issue for Section 19, but certainly more relevant to Section 19 then the complete lack of factual evidence for the FTC under Section 13(b).

Thus, by amending the complaint, the FTC would finally stop ridiculing Baker for his lack of counsel and his "strange and difficult to parse" filings. Baker demands that the FTC follows up on their threat to refile under Section 19 as it would give Baker the ability to obtain legal counsel so that he can properly defend against the FTC's clear violations of their own laws.

1

Baker would love to have legal representation and the resources for his defense, which a proper filing under Section 19 would enable him to do.

Indeed, Section 19 is the only one that the FTC has in their arsenal that enables them to legally obtain monetary damages. However, as they are well aware, this Section has a 3-year statute of limitations, which would render Mr. Baker not liable for any damages given he had not been associated with any aspect of sales or marketing for over eight years at the time of the filing of this lawsuit. Section 19 also provides a litany of other due process protections to defendants which the FTC conveniently trampled on by improperly filing under Section 13(b). Therefore, an amendment to the complaint implementing Section 19 is more than welcomed by Baker.

**CONTEMPT ISSUES**

The FTC is once again trying to mislead the Court by suggesting that Baker is somehow in Contempt of an order he was never a party to. The claim that Baker was party to the Order that Pukke was bound by in the *AmeriDebt* settlement of 2005 is a bold-faced lie. Baker was not party to that order at all. Regardless of that fact, the FTC continues their false premise that Baker somehow, because of the so-called parcel contempt, was bound to an order he was never a part of. Furthermore, Baker didn't do telemarketing sales and all the evidence has shown that Baker never controlled or worked in California for over a decade. Therefore, the FTC is just knowingly lying, thus far without consequence.

The FTC provided no evidence that Baker was aware of the restriction on violating telemarketing laws clause in Pukke's 2005 settlement agreement, which Baker never signed nor was ever a party to. Nor does the FTC provide any proof that Baker ever was provided with the order or that he had any knowledge of its contents. In fact, the evidence proves that Baker was only aware of the order in 2007, based on the so-called "parcel contempt", to which Baker was a party to and was improperly incarcerated for. Baker was eventually released from incarceration, thus purging the improperly ordered "parcel contempt" and proving Baker's impossibility defense.

In order to hold a party in civil contempt, it must be established by clear and convincing evidence of the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge of, and that contemnor was bound to such order.

Baker was not part of the *AmeriDebt* final order or settlement pertaining to that order. Nor was Baker a party to its requirements. Baker never worked in any aspect of Credit Counseling, which a reasonable person would understand that the *AmeriDebt* order involved. Baker was never provided Pukke's 2005 settlement agreement and would not know of its contents. Baker would and could not know the terms or wording of the agreement and there is no actual evidence or claim that Baker ever read such agreement because he did not. He was not a party to the *AmeriDebt* settlement agreement nor its final order, nor was this claim litigated at the trial.

The FTC somehow now wants to hold Baker to the order or settlement that he was not involved in nor a party to. And for as much as they claim that Baker was somehow in contempt of court for violating that order, they also claim that the contempt is civil in nature. However, they keep insisting that the contempt was "willful" and "deliberate," which would make the contempt criminal in nature under section 18 U.S.C. § 401 which states: "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401 (2006). Willfulness *mens rea* requires proving that a defendant knew what he was doing was wrong. *Dixon* v. *United States*, 548 U.S. 1, 5 (2006). The Seventh Circuit held that the willfulness element of criminal contempt requires proof of recklessness—that is, proof that the defendant was "conscious of a substantial risk that the prohibited events will come to pass." The First and Eleventh Circuits hold that willfulness in criminal contempt cases contemplates "knowledge that one is violating a court order." *United States* v. *Mourad*, 289 F.3d 174, 180 (1st Cir. 2002), *United States* v. *Straub*, 508 F.3d 1003, 1012 (11th Cir. 2007) ("Willfulness means a deliberate or intended violation."). But the Seventh, Fifth, and D.C. Circuits hold that willfulness in the context of criminal contempt is satisfied by "a finding of recklessness" (*United States* v. *Allen*, 587 F.3d 246, 255 (5th 2009)).

None of the government's evidence establishes that Baker acted willfully, nor has the FTC proven that "he voluntarily and intentionally violated" Pukke's 2005 Settlement or final Order or that he was a party to it. See *Cheek* v. *United States*, 498 U.S. 192, 200 (1991).

Furthermore, Congress enacted the Speedy Trial Act of 1974 (Pub. L. No. 93-619, tit. I, § 101, 88 Stat. 2085 (1975)) "to give effect to the sixth amendment right." *Betterman* v. *Montana*,

3

136 S. Ct. 1609, 1616 (2016). The Act generally provides that the "trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date." 18 U.S.C. § 3161(c)(1). Time may be excluded under § 3161(h), but if trial does not begin within 70 (non-excluded) days "the information or indictment shall be dismissed on motion of the defendant." *Id.* § 3162(a)(2). As this Court is aware, Baker filed motions to dismiss the contempt charges and no trial commenced within 70 days from the filing date, making a dismissal of the contempt allegations mandatory by law.

Additionally, the FTC never presented a case at trial for the contempt issues. They called no witnesses and presented no evidence. Doesn't there need to be evidence or a trial about these issues to rule on them? Furthermore, the only witnesses to these issues would have been the Receivership, Robb Evans, and His Honor, who both settled the matter. Therefore, by involving either party in the parcel contempt would have been a violation of Collateral Estoppel. Thus, it's clearly the reason why the FTC never presented a case on that issue at trial. Additionally, the telemarketing contempt was never litigated at trial by the Plaintiff, therefore the issues must be dismissed.

**BACKGROUND**

The so-called "Parcel Contempt" was and has been settled and purged for 10 years at the time this action commenced. Baker had purged and has been free of the contempt of that issue for over almost 12 years at the time of this action. **ALL** the applicable law is on Baker's side. **ALL** of it. Collateral Estoppel, Res Judicata, Statue of Limitations, Judicial code. All the law is on Baker's side. So are all of the official and legally signed and binding agreements, settlements, documents and orders pertaining to the parcel that long ago concluded the issue. The FTC has no actual law or evidence to support their bold statements and assertions. They have a theory and a sentence in a settlement with the SRWR that they had not settled with Baker at that time. But the question still remains as to why the SRWR has once again been placed into the Receivership, the same Receivership that settled and released SRWR **"fully, finally and forever"** ... **"The Receiver acknowledges that it is aware that it may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true pertaining to the Receiver Claims."** The Receiver through this

4

Agreement **"fully, finally and forever releases all of the Receiver Claims."** (PX781, #9, pg4-5). The settlement agreement that was signed by all parties, was executed, finalized, and approved by His Honor, Judge Messitte in his Court definitively concluded the parcel dispute in 2008 (PX894).

The Receiver/ FTC settled in 2008, willfully accepted the $2 million payment from Mr. Stephen Choi, a confirmed third party, and signed off to completely relinquish all of their rights to SRWR fully, finally and forever.

Furthermore, the *AmeriDebt* receivership (Robb Evans and Associates) wound up, concluded and closed in November 2013 with approval from His Honor, and thus no claim now could exist, let alone for Baker, who had specific instructions from the Court to cooperate with the Receivership, which Baker did. Baker was released from "coercive" confinement/jail in 2007, thus purging his civil contempt. Baker had no restrictions or bans tied to his release and Baker helped and assisted the Receivership by raising the money to settle with SRWR by adding money into the Receivership. The Receivership closed. No Contempt existed because civil contempt sanctions typically end when the party in contempt complies with the court order, or when the underlying case is resolved. **Both events happened in that case**.

Furthermore, the Receiver is obligated to be neutral, representing neither party, and is a fiduciary to all persons or entities who or which are ultimately shown to have interest in the property or fund which comprises the receivership estate, or the proceeds of same. **The receiver obtains the right to possession of the property, but not title**. Receiverships are an ancillary remedy and are created only where authorized by statute or equity.

It is well-established that the purpose for a court to appoint an equity receiver is to take custody and manage property involved in litigation in order to **preserve** the property pending the court's final disposition of the suit. *See* Wright & Miller, 12 *Fed. Prac. &* Case 3:09-cv-00298-N Document 455 Filed 06/08/2009 Page 3 of 9 *Proc. Civ. 2d* §2981 (2005)(emphasis added). A receiver has a duty to preserve the property of the estate for the benefits of the claimants, and that duty must be undertaken without bias to one side or the other. *See Boothe v. Clarke*, 58 U.S. 322, 331 (1854). "A receiver is an indifferent person . . . he is appointed on behalf of all parties." *Id.* The receiver is a fiduciary to the person who ultimately has rights in the property. *See Citibank, N.A., v. Nyland Ltd.*, 839 F.2d 93, 98 (2d Cir. 1988).

The FTC's rehashing of the Parcel Contempt makes the Receivership, Robb Evans and Associates, a claimant and adverse party to the case, thus wiping away their mandatory "neutrality". That is a clear violation of Baker's rights to a neutral Receivership.

**APPLICABLE LAW**

In making the determination whether a contempt is civil or criminal, courts may analyze (1) whether the opposing party benefits from the contempt action or the contempt vindicates the authority of the court,[1] (2) the trial court's purpose in imposing the sanctions,[2] (3) whether the contempt seeks to punish past conduct or coerce future conduct,[3] and (4) the nature of the sanction imposed.[4] The determinative test is the nature of the sanction imposed.[5] Some courts require that the contemnor act willfully if the contempt is criminal.[6]

Benefit Analysis -

Criminal contempt primarily benefits the court itself by —vindicat[ing] the dignity or authority of the court.[7]

Analyzing the Intentions of the Trial Court -

A civil contempt is designed to coerce the contemnor into compliance,[8] whereas a criminal contempt punishes the contemnor.[9]

Chronology Analysis -

Yet another method employed by courts to determine whether a contempt is civil or criminal focuses focuses on the chronology of the contempt.

---

1. See, e.g., Stilley, 238 S.W.3d at 910; In re Marriage of Betts, 558 N.E.2d at 416–17.
2. See, e.g., Pate v. Guy, 934 So. 2d 1070, 1072 (Ala. Civ. App. 2005).
3. In re Marriage of Betts, 558 N.E.2d at 417.
4. New Hartford, 970 A.2d at 576.
5. See infra Part III.B.5.
6. In re Marriage of Cyr, 186 P.3d 88, 91–92 (Colo. App. 2008).
7. In re Nolan W., 203 P.3d at 466 (quoting Morelli v. Superior Court, 461 P.2d 655, 658 (Cal. 1969)); see also Stilley, 238 S.W.3d at 910; New Hartford, 970 A.2d at 576; Minn. State Bar Ass'n v. Divorce Assistance Ass'n, Inc., 248 N.W.2d 733, 741 (Minn. 1976).
8. Town of New Hartford v. Conn. Res. Recovery Auth., 970 A.2d 570, 576 (Conn. 2009); In re Hillis, 858 A.2d 317, 322 (Del. 2004); In re Birchall, 913 N.E.2d 799, 810 (Mass. 2009); see also Robinson v. Fulliton, 140 S.W.3d 304, 309 (Tenn. Ct. App. 2003) (—The purpose of a civil contempt sanction is remedial . . . .).
9. An essential element of a finding of criminal contempt is that such a finding is intended to punish the contemnor ... Pate v. Guy, 934 So. 2d 1070, 1072 (Ala. Civ. App. 2005); see also Rodriguez v. Eighth Judicial Dist. Ct. ex rel. Cnty. of Clark, 102 P.3d 41, 45 (Nev. 2004); In re C.W., 960 A.2d at 466.

Civil contempt is prospective, while criminal contempt is retrospective.[10]

Civil contempt is prospective because it focuses on getting the contemnor to comply with the court order in the future.[11] Criminal contempt is retrospective because it focuses on punishing the contemnor for past conduct.[12]

Analyzing the Nature of the Sanction Imposed –

Courts also analyze the nature of the sanction imposed to determine whether the contempt is criminal or civil.[13] Examining the sanctions imposed is the most straightforward way of determining whether the contempt is civil or criminal.[14] In a civil contempt sanction, the contemnor must hold the - keys to his cell.[15] Thus, - no further contempt sanctions are imposed upon the contemnor's compliance with the pertinent court order.[16] The most common example is imprisonment until the contemnor complies with the court order;[17] the essential requirement for civil contempt sanctions, whether the sanction is a fine or imprisonment, is that the contemnor must be able to - purge himself of the contempt by complying with the court order.[18] In contrast, criminal contempts impose a fixed sentence or fine that cannot be avoided by the contemnor.[19]

Another test states that civil contempt is appropriate when a contemnor refuses to perform an affirmative action, and criminal contempt is appropriate when a contemnor performs

---

10. In re Marriage of Betts, 558 N.E.2d 404, 417 (Ill. App. Ct. 1990); see also In re Nolan W., 203 P.3d 454, 466 (Cal. 2009) (noting that civil contempt looks forward).
11. See Shillitani v. United States, 384 U.S. 364, 370 (1966); Pate, 934 So. 2d at 1072; In re Marriage of Betts, 558 N.E.2d at 417; In re C.W., 960 A.2d at 466.
12. Int'l Union, United Mine Workers v. Bagwell, 512 U.S. 821, 828 (1994); In re Marriage of Betts, 558 N.E.2d at 417; Sazama v. State ex rel. Muilenberg, 729 N.W.2d 335, 345 (S.D. 2007); Dudley, supra note 8, at 1046; see also Ky. River Cmty. Care, Inc. v. Stallard, 294 S.W.3d 29, 32 (Ky. Ct. App. 2008) (holding a contempt was criminal because -the sanctions were imposed to punish for conduct already committed rather than to compel future action).
13. The distinguishing factor between civil contempt and criminal contempt is the punishment imposed. Bergquist v. Cesario, 844 A.2d 100, 106 (R.I. 2004); see also Stilley v. Fort Smith Sch. Dist., 238 S.W.3d 902, 911 (Ark. 2006) (-In determining whether a particular action by a judge constitutes criminal or civil contempt, the focus is on the character of relief... (quoting Ivy v. Keith, 92 S.W.3d 671, 677 (Ark. 2002))); Town of New Hartford v. Conn. Res. Recovery Auth., 970 A.2d 570, 576 (Conn. 2009) (―[T]he nature of the relief itself . . . is instructive in determining whether a contempt is civil or criminal. (emphasis added)); Mortgage Specialists, Inc. v. Davey, 904 A.2d 652, 672 (N.H. 2006) (noting that the - character and purpose of the sanctions determine whether the contempt is civil or criminal); In re Small, 286 S.W.3d 525, 531 (Tex. App. 2009) (distinguishing civil and criminal contempt based upon their ―nature and purpose).
14. See Von Hake v. Thomas, 759 P.2d 1162, 1168 n.5 (Utah 1988) (characterizing a focus on the sanction imposed as a clear bright-line rule).
15. In re Marriage of Betts, 558 N.E.2d 404, 416 (Ill. App. Ct. 1990); see also In re Nolan W., 203 P.3d 454, 466 (Cal. 2009); Crowder v. Rearden, 296 S.W.3d 445, 450 (Ky. Ct. App. 2009).
16. In re Marriage of Betts, 558 N.E.2d at 416.
17. Int'l Union, United Mine Workers v. Bagwell, 512 U.S. 821, 828 (1994).
18. Parisi v. Broward Cnty., 769 So. 2d 359, 365 (Fla. 2000).
19. E.g., Stilley v. Fort Smith Sch. Dist., 238 S.W.3d 525, 911 (Ark. 2006); In re Marriage of Cyr, 186 P.3d 88, 91–92 (Colo. App. 2008); In re Small, 286 S.W.3d 525, 531 (Tex. App. 2009).

a prohibited action.[20] This test has been interpreted as merely stating that a coercive civil sanction is not available if there is nothing left to coerce.[21]

If the judge announces that the contempt is civil in nature and proceeds using civil contempt protections, he cannot impose criminal sanctions after the proceeding is finished.[22]

In this case the government is the opposing party which makes contempt criminal in nature, and it is therefore appropriate to grant more rights to the contemnor.[23]

The purge provision is essential to the civil contempt order and without it the order must be vacated (Bethea v. McDonald). It's **impossible**, for Baker to be in parcel contempt. All the law is on Baker's side. All the facts are on Baker's side. The FTC has an unproven theory, based on nothing but hearsay and wild speculation, that Mr. John Usher was a "strawman" for Baker, yet they show **no** evidence to support their accusation. In fact, the complete opposite is true. Baker was in jail in coercive confinement with absolutely **no way** to contact Usher, who, when contacted by Baker's lawyers, independently refused to turn over the SRWR. Usher's refusal forced the Receivership to fly to Belize, something they have done only once in this litigation, to meet with Usher, who proved that Baker had no ability to turn over SRWR and thus the Receivership chose to settle, further proving Baker's 2007 "impossibility defense". Baker who was improperly in jail, was subsequently released after that meeting.

A court cannot maintain an order of contempt where the imposed party does not have the ability to comply with the underlying order. This claim when made by the imposed party is known as the "impossibility defense". See Phillips, Sam. "In re Marciano – an analysis of the impossibility defense in contempt." Donlevy-Rosen & Rosen, P.A. Both compliance and inability to comply are complete defenses to coercive imprisonment proceedings. The contemnor may have already complied or be incapable of doing so, yet the determination of these facts is

---

20. See Gompers, 221 U.S. at 443; Dobbs, supra note 50, at 239–40.
21. Dobbs, supra note 50, at 240. Dobbs uses the example of violating an injunction against a sit- in; if the contemnor violates the injunction, there is nothing left to coerce, so punitive sanctions are all that remain. Id.
22. See supra note 152 and accompanying text.
23. In criminal contempt, where the government initiates the action, the granting of procedural safeguards does not conflict with the rights of any individual.

made without criminal safeguards even though imprisonment hinges on the outcome of that determination. Johansen, 491 P.2d at 765 (quoting Comment, The Coercive Function of Civil Contempt, 57 U. CHI. L. REV. 120, 125 (1965) [hereinafter The Coercive Function of Civil Contempt].

Some courts have held that an individual may not be subjected to civil contempt sanctions if there is no realistic possibility he will comply. [24] These courts reasoned that the sole justification for allowing civil contempt sanctions to be imposed with few procedural safeguards is that the sanctions are coercive rather than punitive. If the contemnor never will comply, then incarceration cannot have a coercive effect and the sanction takes on the character of a criminal penalty. Since the contemnor has been incarcerated without the constitutional safeguards that accompany criminal contempt proceedings, due process [25] or equitable considerations[26] require that he be released. The uncoercible contemnor, of course, still can be jailed for criminal contempt so long as he receives the broader procedural protections which accompany criminal contempt sanctions.

Adopting a rule that a civil contemnor can be confined only so long as he can be coerced suggests that a judge in fact can determine who can be coerced. Under this NRPC standard, if a judge knows from the outset that an individual will never comply with a court order, he presumably cannot issue the order in the first place. In addition, the NRPC standard requires a judge to review periodically contemnors who are currently incarcerated to ensure that they still might be persuaded to comply. If the judge determines that there is "no realistic possibility," or "no substantial likelihood" of compliance, then he must release the contemnor.[27]

---

24. This doctrine largely can be traced back to several cases in the mid-1970's. *See* Lambert v. Montana, 545 F.2d 87, 89-91 (9th Cir. 1976); *In re* Fan, 36 Cal. App. 3d 577, 584 (1977); Catena v. Seidl, 343 A.2d 744, 746-47 (N.J. 1975) (per curiam). It became more widely used after the Second Circuit held that an individualized determination of whether confinement had lost its coercive impact must be made, even where there was a statutory limit on incarceration that had not yet been reached. *See* Simkin, 715 F.2d at 37.
25. Due process requires that the incarceration be reasonably related to the purpose for which the prisoner was confined. *See* Jackson v. Indiana, 406 U.S. 715 (1972). Some courts have held that this aspect of the Due Process Clause applies to civil contempt. *See, e.g.*, Lambert, 545 F.2d at 89-91. Thus, if incarceration for civil contempt cannot have a coercive effect, it no longer is reasonably related to the purpose for which it was imposed. *Id.*
26. *See Inre* Cueto, 443 F. Supp. 857, 862-65 (S.D.N.Y. 1978) (releasing "uncoercible contemnors" on humane and equitable grounds); *see also In re* Freligh I, 894 F.2d 881, 885 (7th Cir. 1989) (suggesting equity concerns may persuade a judge to release a civil contemnor).
27. Courts have used several phrases to refer to the standard used to determine if continued incarceration will be coercive or cause the contemnor to comply. *See, e.g., Simkin,* 715 F.2d at 38 ("no realistic possibility"); *Lambert,* 545 F.2d at 90 ("no substantial likelihood"); *Farr,* 36 Cal. App. 3d at 584 ("absence of substantial likelihood"). The term "no realistic possibility of compliance," or "NRPC," is used in this Article as representative of all of these phrases].

9

The judges must release incarcerated civil contemnors if there is no substantial likelihood of compliance. The NRPC doctrine assumes that courts can make reasonable predictions about whether or not a contemnor can be coerced into complying with a court order. Under the doctrine, the judge is required to look at the specific facts and circumstances surrounding each case to predict what the contemnor will do-or will not do-in the future.[28]

Once coercive sanctions lost their coercive effect, they are no longer considered to be civil; therefore, the sanctions must be terminated at that point. In case where the contemnor finds himself literally incapable to complying with the court's order, this is also true because the "civil" sanctions would no longer serve any purpose other than to punish the contemnor. *See Shillitani*, 384 U.S. at 371.

Civil contempt sanctions are imposed to coerce compliance with a court order. Once a court order is declared invalid, compliance no longer is required. *See United States v. United Mine Workers*, 330 U.S. 258, 294-95 (1947); *In re Timmons*, 607 F.2d 120, 124 (5th Cir. 1979). While this is the prevailing law, the wisdom of it has not been accepted universally; And a civil contemnor jailed for disobeying such an order must be released.

**Furthermore, jail term is limited to the duration of the proceeding underlying the contempt order**. *See, e.g., id.;* United States v. Powers, 629 F.2d 619, 627 (9th Cir. 1980). A person who is found in civil contempt may be imprisoned as long as the civil contempt continues. *See* § 5A 21(b). A person imprisoned for civil contempt must be released when his civil contempt no longer continues. *See* § 5A-22. Therefore, civil contempt sanctions generally can extend only for the length of the underlying proceeding.

In the civil proceeding the sanction must serve either remedial or coercive function. *In re Havitt*, 117 F.2d *See supra* notes 29-34 and accompanying text (8th Cir. 1902) (explaining that civil contemnors "carry the keys of their prison in their own pockets"). Furthermore, the civil

---

28. *See Simikin,* 715 F.2d at 38-39 (finding that a judge must predict whether, under all the circumstances, there is a realistic possibility that an individual contemnor will comply); Catena v. Seidl, 68 N.J. 224, 229 (**N.J.** 1975) (per curiam) (stating that each case must be decided on the basis of an independent evaluation of the particular facts); *see also* Sanchez v. United States, 725 F.2d 29, 31 (2d Cir. 1984) (per curiam) (noting that in determining whether incarceration has ceased to be coercive, a court must make a difficult prediction regarding the contemnor's future behavior).]

coercive sanction must be immediately lifter upon the contaminator's compliance with the relevant court order.

It's clear that civil contempt "is purged once the underlying case is resolved/or the party in contempt complies with the Court order", both occurred. Both, the underlying case was resolved, and Baker complied with the Court order and assisted the Receivership by adding extra $2 million into the Receivership.

In contrast, the civil contemnor is usually imprisoned or fined until he purges himself of the contempt by submitting to the orders of the court. The fact that the civil contemnor is confined, however, can directly affect his ability to purge himself of the contempt. This happens whenever the termination of the civil confinement is conditioned upon the occurrence of an action that must be done outside of the prison. To avoid this sort of predicament, a judge ordinarily will release the contemnor in return for an expression of his willingness to perform the desired act or comply with the court order in question.

His Honor released Baker, who's contempt was coercive, at the request of the Receivership, who ultimately settled with SRWR. Baker could in no way influence the Receivership or Usher who independently chose to settle. Baker complied with the conditions and assisted the Receivership. To bring back the issue 10 years later is duplicitous and illegal. If anyone is in contempt, it is the FTC for violating the settlement, thus making the Receivership appointment a violation and putting Robb Evans in contempt as well.

Not only do these facts prove Baker's innocence but also prove the clear evidence that the FTC is willing to deceive the Court with nothing but their wild theories disguised as facts. Again, the civil contempt statute states: "A person imprisoned for civil contempt must be released when his civil contempt no longer continues." Bringing Baker back into contempt which he already purged over 13 years ago, is a violation the Civil Double Jeopardy laws of doctrine of Res Judicata that states:

*"a matter that has been adjudicated by a competent court and may not be pursued further by the same parties."*

The so-called Parcel Contempt is exactly that. **This** Court ruled and **adjudicated** the matter. Baker was freed, the Court ruled, and the matter was settled for "all time." To bring it

coercive sanction must be immediately lifter upon the contaminator's compliance with the relevant court order.

It's clear that civil contempt "is purged once the underlying case is resolved/or the party in contempt complies with the Court order", both occurred. Both, the underlying case was resolved, and Baker complied with the Court order and assisted the Receivership by adding extra $2 million into the Receivership.

In contrast, the civil contemnor is usually imprisoned or fined until he purges himself of the contempt by submitting to the orders of the court. The fact that the civil contemnor is confined, however, can directly affect his ability to purge himself of the contempt. This happens whenever the termination of the civil confinement is conditioned upon the occurrence of an action that must be done outside of the prison. To avoid this sort of predicament, a judge ordinarily will release the contemnor in return for an expression of his willingness to perform the desired act or comply with the court order in question.

His Honor released Baker, who's contempt was coercive, at the request of the Receivership, who ultimately settled with SRWR. Baker could in no way influence the Receivership or Usher who independently chose to settle. Baker complied with the conditions and assisted the Receivership. To bring back the issue 10 years later is duplicitous and illegal. If anyone is in contempt, it is the FTC for violating the settlement, thus making the Receivership appointment a violation and putting Robb Evans in contempt as well.

Not only do these facts prove Baker's innocence but also prove the clear evidence that the FTC is willing to deceive the Court with nothing but their wild theories disguised as facts. Again, the civil contempt statute states: "A person imprisoned for civil contempt must be released when his civil contempt no longer continues." Bringing Baker back into contempt which he already purged over 13 years ago, is a violation the Civil Double Jeopardy laws of doctrine of Res Judicata that states:

*"a matter that has been adjudicated by a competent court and may not be pursued further by the same parties."*

The so-called Parcel Contempt is exactly that. **This** Court ruled and **adjudicated** the matter. Baker was freed, the Court ruled, and the matter was settled for "all time." To bring it

back now is and has been, a violation of that order and a violation of Res Judicata, as well as the Statue of Limitations of that matter for appeals on the subject. Furthermore, the **Collateral Estoppel** applies as:

*"Collateral Estoppel -a doctrine by which an earlier decision rendered by a court in a lawsuit between parties is conclusive as to the issues or controverted points so that they cannot be relitigated in subsequent proceedings involving the same parties."*

Again, the Parcel Contempt is exactly that. This Court ruled, yet the FTC is now attempting to relitigate the exact points that were previously settled, therefore violating the doctrine of Collateral Estoppel.

To hold Baker in contempt once again is not legally permissible. Retrying this issue once again is a violation of that legally binding agreement. The Receivership closed seven years ago, and the FTC brought their wild theories and accusations as to contempt sanctions in 2018 which was five years after the Receivership of *AmeriDebt* closed. Even if what the FTC alleged was true (it's not), it doesn't matter. The law is clear. One cannot be held in civil contempt twice for the same thing.

His Honor asked the FTC in September 2019 if the contempt was criminal or civil in nature. The FTC argued that it's civil. By the sheer fact that His Honor agreed and says that its civil, makes the entire contempt non-existent, because Res Judicata applies and safeguards defendants from double jeopardy in civil case. Collateral Estoppel also applies as once an issue is concluded, it is concluded for all time.

Interestingly, for as much as the FTC wants to claim that the contempt is civil in nature, they keep stating and insisting that the contempt was "willful" and deliberate, making the contempt criminal in nature under section 18 U.S.C. § 401(3). Therefore, if the Court was to find that Baker is in contempt, then it's criminal in nature and Baker has been denied his rights as such.

The Supreme Court has recognized that a criminal contemnor deserves all of the following constitutional protections: (1) the right to be advised of the charges, *See Young v. United States ex rel. Vuitton et. Fils S.A. et al*, 481 U.S. 787, 794 (1987) (citing *Cook v. United*

12

*States*, 267 U.S. 517, 537 (1925)); (2) the right to the assistance by counsel, *Cooke v. United States,* 267 U.S. 517, 537 (1925). The Fifth Circuit has even extended the right to the assistance of counsel by recognizing a right to appointed counsel if the accused is indigent. *Ridgway v. Baker*, 720 F.2d 1409, 1414-15 (5th Cir. 1985); (3) a right to a jury trial if the sentence imposed will exceed six months confinement or constitute a "nonpetty" fine, See *supra* notes 67-9 and accompanying text. *See as well Bloom, 391 U.S. at 199*; (4) the presumption of innocence, *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 444 (1911); (5) the requirement that guilt be proven beyond a reasonable doubt, *Bloom v. Illinois*, 391 U.S. 194, 205 (1968) (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 444 (1911); (6) the right to be tried by an unbiased judge in a public trial in those cases deserving a trial, *In re Oliver*, 333 U.S. 257 (1948); (7) the right to a "disinterested prosecutor," In *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987), the Supreme Court recognized a criminal contemnor's right to a "disinterested prosecutor." The Court next stated that criminal contempt proceedings arising out of civil litigation are between the public and the defendant and are not part of the original civil action; (8) the privilege against self-incrimination, *Gompers*, 221 U.S. at 444; (9) the right to cross-examine government witnesses, *Davis v. Alaska, 415 U.S. 308, 315-16 (1974)*; (10) opportunity to present a defense and call witnesses, *Cooke v. United States*, 267 U.S. 517, 537 (1925); (11) the Protection against double jeopardy, *See United States v. Dixon, 509 U.S. 688 (1993); In re Bradley, 318 U.S. 50 (1943). See generally David S. Rudstein, Double Jeopardy and Summary Contempt Prosecutions, 69 Notre Dame L. Rec. 691 (1994); Ryan J. Cassidy, Note, United States v. Dixon: The "Jeopardizing of Judicial Contempt Power." 5 Widener J. Pub. L. 179 (1995).*

    Furthermore, criminal violations have 5-year statute of limitations thus the reason the FTC demanded that the contempt be civil even though their accusations are criminal. The statute 18 U.S.C. § 401, grants the federal courts broad powers to punish acts of criminal contempt. This power, however, can only be exercised if not barred by a congressionally established five-year statute of limitations. *See United States v. Diapulse Corp. of America*, 365 F.Supp. 935 (E.D. N.Y. 1973).

    The FTC asks for an extreme monetary fine as to the defendants when arguing their contempt claims. Yet there is no punitive fine sanction available as to the civil contempt, only in

criminal. As to any monetary or any other punishment/claim, only when all the procedural requirements of the criminal contempt proceedings are met, the punitive fine can be imposed. The defendant has been denied any such procedural requirements.

Regardless, by the allegation of contempt, the FTC has made the Receiver a plaintiff, which is in clear violation of the Receivership law and thus the contempt must be dismissed immediately, or the Receivership must be replaced. Additionally, the FTC is now asking His Honor to violate Judicial code by having him rule on a case he decided and ordered settled. As well as violating the Statue of Limitations on any appeal of that order by over a decade.

Since the contempt is claimed to be civil, civil law applies. Res Judicata, Collateral Estoppel, Judicial code and Statue of limitations all are the governing law which the FTC have violated duplicitously, and for which Baker has been extremely prejudiced, for almost 2 years. He welcomes a decision on these matters as he is both confident in the final ruling and hopeful that it will finally put an end to the violations of his rights.

**CONCLUSION**

For all the aforementioned reasons, the Court should Stay the case pending the Supreme Court rulings, dismiss the contempt against Baker and if they still desire, allow the FTC to amend the complaint using Section 19 of the FTCA as they threatened, thus allowing the defendants to hire proper counsel and to defend the corporations from the improper clerk's defaults.

Dated this 17th day of August 2020.

Respectfully submitted,

/s/ Peter Baker

*Appearing pro se*