IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

SOUTHERN DIVISION

|  |  |
|---|---|
| *In re Sanctuary Belize Litigation* ) ) ) ) ) ) ) ) | Civil Action No.: 18-3309 PJM<br><br>Oral Argument Requested |

# DEFENDANT LUKE CHADWICK'S REPLY TO THE FEDERAL TRADE COMMISSION'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO STAY

Defendant Luke Chadwick's hereby files his Reply to the Federal Trade Commission's Omnibus Opposition To Defendants' Motions To Stay, [*See* Dkt. 1007, Filed August 8th, 2020], and in support, Chadwick incorporates by references the following memorandum of law and all relevant filings in this case[1].

## I. INTRODUCTION

Luke Chadwick's motion for a stay of these proceedings (Dkt. No. 1010) set forth grounds tailored particularly to him, and to this present moment. The Supreme Court has now either scuttled or at a minimum, set up to be knocked down, various legal bases on which the FTC so aggressively pursued a $138 million judgment

---

[1] Defendant Chadwick has had the assistance of Stand-By Counsel, Bruce Searby, (admitted *pro hac vice*) in briefing his Reply to the Federal Trade Commission's Omnibus Opposition To Defendants' Motions To Stay.

1

against him for his limited role at Sanctuary Belize. Even before these late developments, the FTC had run aground at trial on various factual points as to Chadwick and the case in general, and here the FTC barely attempts to refute Chadwick's grounds for a stay, which meet the legal test. So, instead, the FTC seeks to persuade this Court that it had already decided Chadwick's motion against him at various times in the past. The FTC also pretends that other district courts are deciding against stays sought on the same grounds. Then, in the eventuality that these tactics fail upon inspection, the FTC asks this Court to decide this motion based upon an imagined future, wherein it successfully adds a new cause of action against Chadwick under Section 19 of the FTC Act, without needing to have a new trial.

Altogether, the FTC is manifesting this famous dystopian philosophy:

> "Who controls the past," ran the Party slogan, "controls the future; who controls the present controls the past." And yet the past, though of its nature alterable, never had been altered. Whatever was true now was true from everlasting to everlasting. It was quite simple. All that was needed was an unending series of victories over your own memory. "Reality control," they called it; in Newspeak, "doublethink."

George Orwell, 1984.

For the FTC to succeed with many of its points in opposition to Chadwick's stay motion, it would require a remarkable "series of victories over" the Court's own memory – memory not only of the reality of the past, but also of contradictory things that the FTC has said in that same brief.

In its "omnibus" Opposition, as usual, the FTC mashes Chadwick's position together with those of his co-defendants' as much as it can. However, the seams in

the FTC's arguments *vis-a-vis* the different defendants could not be more obvious, as set forth below. Messrs. Pukke and Baker have a much longer and more tortured history before this Court, and this rightly could yield different results. The FTC's efforts to conflate their situations with Chadwick's once again is incompatible with the individual consideration that a defendant's stay motion deserves under the law.

Therefore, this Court should grant a stay of this action as to Chadwick until such time as the high court resolves central issues of remedy in this case -- likely in Chadwick's favor. Relatedly, this Court should lift the drastic asset freeze and receivership over Chadwick's assets, sought in furtherance of the FTC's overreaching theories on remedy and, again, erroneously lumping in Chadwick with the other Sanctuary Belize defendants.

## II. ARGUMENT

### A. The FTC Wrongly Argues That Chadwick Has Already Lost This Motion For Stay, Which He Brings For The First Time

The Court should reject the FTC's attempt to characterize Chadwick's motion as a mere rehash of arguments the Court has already rejected.

Appealing to an anticipated weariness of the Court with this grinding litigation, the FTC tries to swat away Chadwick's motion by erroneously arguing that "the defendants say nothing they have not already said" on the issue of a stay. (Dkt. No. 1007, at 1.) The FTC refers explicitly to Chadwick's pretrial motion for a continuance of the trial date for 90 days to permit counsel for him to enter a general

3

appearance and become prepared for trial. (*See id.,* at 3, citing "DE 810-811 & 814 (Chadwick motion to stay); DE 817 (denial of Chadwick's motion to stay)"). As the FTC well knows, however, that motion to permit Chadwick to have adequate representation at trial made no mention of any of the current grounds of this post-trial motion for a stay to wait for the Supreme Court to rule (as it now certainly will) on key issues of remedy. The FTC's galling effort to cite that January 2020 motion as a previous litigation of Chadwick's arguments in this motion now should underscore Chadwick's pleas to the Court to check citations the FTC has made to the record in this case.[2]

Otherwise, the FTC is only referring to earlier motions for a stay that were filed by Chadwick's *co-defendants,* wherein they cited appellate cases that have subsequently been taken up by the Supreme Court. While there is some overlap in arguments now presented on the availability of an equitable monetary remedy, this Court should focus on the different procedural posture of this case now versus seven months ago before trial, and on the more basic fact that motions brought by other defendants cannot and should not preclude Chadwick from bringing his own arguments. The standard for considering stay motions requires a balancing of the hardship to the parties, among other factors, *see Stone v. Trump,* 356 F.Supp.3d 505, 517-518 (D. Md. 2018) (quoting and citing cases) (J. Russell), and so it is quite

---

[2] The FTC makes another distorted claim in its opposition about the record in this case: "Additionally, having failed to obtain a stay, Chadwick has already asked multiple times to have claims against him severed, and this Court has rightly denied these requests." (Dkt. No. 1007, at 4.) In fact, Chadwick did raise his desire for a severance, but did not file a motion to sever after the Court stated that if he did, it would be denied.

impossible for Chadwick's stay motion to have been decided by the failures of his co-defendants', who did not and could not make Chadwick's showing for him. Co-defendants Pukke and Baker, who are also subject to contempt proceedings to which Chadwick is not, are subject to different remedies and they thus may experience distinct degrees of hardship from the wait for clarification of the Court's remedial powers under the FTC Act.

There are additional clear reasons based on traditional factors in ruling on a stay motion for why the Court's consideration of the co-defendants' earlier motions should not resolve Chadwick's current motion. The anticipated length of the stay is now different, that is to say considerably shorter. Moreover, the judicial economies are different – the Court now having conducted the trial and closed the record, releasing witnesses, the parties, and the Court from the management of a pending trial calendar. *See Stone,* 356 F.Supp.3d at 517 (length of stay and judicial economies are additional factors in considering a stay). The trial is behind it, and yet potentially futile litigation over a myriad of remedy issues lies before it – and before the Fourth Circuit. All further efforts by the courts and the parties should wait for the Supreme Court to clarify the scope of remedial action.

Nor was this Court previously presented with the grounds for a stay that "a higher court *will* issue a decision" that may affect this case's outcome. *See Stone,* 356 F.Supp.3d at 517 (emphasis added). The FTC derides mention of the orders granting certiorari as attempts to "freshen up" Messrs. Pukke's and Baker's old motions, but to the contrary, the orders trigger a factor recognized by this Court as a key

5

consideration. The case law cited by Chadwick in his motion to stay (Dkt No. 1010, at 5), contradicts the FTC's breezy assertion that "all that needs to be said is that *FTC v. Ross*, 743 F.3d 886 (4th Cir. 2014) is binding precedent in the Fourth Circuit." (Dkt. No. 1007, at 3.) This Court has unquestionable discretion to stay the case if a higher court is set to rule on a key issue and may overrule that now-binding precedent. Chadwick will discuss the likelihood that ruling "may affect the pending case's outcome" below.

Despite these multiple, strikingly obvious distinctions, all potentially changing the way this Court decides to exercise in its own discretion its "inherent control" over its own docket, the FTC argues that the prior rulings are "law of the case" requiring denial of these motions. (Dkt No. 1007, at 4.) Law of the case should not apply to Chadwick, a ruling in which he was not a moving party, raising his own hardships.

Even more far-fetched is the FTC's next suggestion that the Fourth Circuit, in upholding this Court's *discretion* to deny a stay motion, was actually tying this Court's hands under the "mandate rule." (*Id.*) The FTC cites no genuine support for the characterization that the Fourth Circuit's decision constituted a "directive" to this Court to "try[] this case to a complete verdict." (*Id.*) No such intervention by the Fourth Circuit in this Court's discretionary powers to stay the case if it ever saw fit was requested by the FTC, or received.[3]

---

[3] Again, the FTC's over-reading into this outcome is cause for extreme caution by this Court about many of the FTC's characterizations of the historical record, only some of which Chadwick has had the wherewithal to challenge.

6

Therefore, this Court should consider the grounds of Chadwick's motion for a stay with the fresh look they deserve.

### B. Contrary To The FTC's Assurance That The Grants Of Certiorari Are A Non-Event, Reversal Of The Seventh Circuit In AMG Capital Both Is Likely And Would Leave The FTC With No Clear Path To Claim Its $138 Million Judgment

In a calming, almost-parental tone, the FTC states: "The Court can rest assured that the Defendants' arguments and the grants of *certiorari* change nothing relevant to this case." (Dkt No. 1007, at 2.) This assurance has four basic branches, none of which is coherent.

First, the FTC argues that equitable monetary remedies under Section 13(b) will be upheld by the Supreme Court because of dicta in *Liu v. SEC*, 591 U.S. ___, 140 S.Ct. 1936, 2020 WL 3405845 (U.S., June 22, 2020), citing a Supreme Court case several decades old under the International Emergency Economic Powers Act ("IEEPA"), *Porter v. Warner Holding Co.*, 328 U.S. 395, 66 S.Ct. 1086 (1946), for a general proposition about implied powers of equitable courts to award restitution. (Dkt No. 1007, at 2.) However, as always, the FTC skips over the stated limitation of the principle for an implied power: *unless* the statute provides otherwise. *See Porter*, 328 U.S. at 398. Here, as previously argued, the statute *does* provide otherwise, placing the exercise of equitable monetary remedies very specifically and carefully elsewhere in the enforcement provisions of the FTC Act, and *not* in Section 13(b). [*See Dkt. 993 Defendant Luke Chadwick's Post Trial Findings Of Fact And Conclusions Of Law Pgs. 48 – 52*]. Once again, upon close inspection, the FTC has

7

given this Court no real reason to believe that the hollowed-out precedents upon which the FTC has relied for years will stand up to the force of reasoning contained in the special concurrence in *AMG Capital* and the opinion of the Seventh Circuit in *Credit Bureau*. It is confirmed: the day of reckoning now will come. But the FTC once again makes no effort at statutory construction to prove its argument under Section 13(b), as one would expect from a government agency explaining how its powers bestowed by Congress are capable of taking everything a man owns away from him.

Second, the FTC is also "whistling past the graveyard" about another problem it is going to face before the current Supreme Court next term. Further affecting the likelihood of the FTC's proposed $138 million judgment emerging from next year's Supreme Court term, is the question of *how* any equitable monetary remedy under Section 13(b) would need to be calculated if it is available at all. The Supreme Court will certainly be briefed on these questions in the course of hearing the FTC remedy cases now before it, and accordingly it could decide arguments identical to Chadwick's arguments based on *Liu*. These include the general unavailability of joint and several liability, the lack of any findings making it possible to determine individual victim recoveries, and the need to factor in an accounting for costs, among many others. Here, the FTC again dismisses *Liu* as "immaterial to this case because, among other reasons, it concerns the wrong agency, the wrong statute, and the wrong remedy." (Dkt No. 1007, at 6.) Doublethink is in full force at this moment, because the FTC essentially asks this Court to forget that the FTC had *just* been relying on a superannuated decision under IEEPA cited in *Liu* to support restitution under

Section 13(b) of the FTC Act. *Liu 's* discussion *of* equitable powers should not be cherrypicked for where it seems to help the FTC and dismissed outright where it doesn't.

Third, the FTC argues that the Supreme Court's merits ruling in *AMG Capital* will not affect this litigation because it has a surefire "backstop" plan to amend its complaint so that Chadwick "will be subject to monetary liability under Section 19 of the FTC Act, which provides for monetary relief for violations of rules such as the Telemarketing Sales Rule." (Dkt No. 1007, at 5, 12.) Remarkably, in the FTC's view, this new cause of action requires no new trial. The FTC has had two years to try to bring such a cause of action under Section 19, but has not done so. The FTC cannot be taken seriously with this desperate plan of "magical thinking," which has several flaws:

- The FTC has no right to amend its complaint at this stage after trial, but rather requires leave of court subject to the provisions and restrictions of, inter alia, Federal Rule of Civil Procedure 15(b), including a showing that the claim was "tried by consent." Amendment is subject to objection that the post-trial amendment causes prejudice in defending the merits. Somehow, the FTC fails to mention these procedural hurdles in floating its "backstop" trial balloon.
- Section 19 has a three-year statute of limitations applicable to any claimed violation of the Telemarketing Sales Rule (TSR) by Chadwick, under subsection (d). The issue cannot be fully considered until the FTC actually files a motion to amend the complaint to add a claim under Section 19, stating facts with sufficient particularity. Nonetheless, based on the FTC's showing at trial as to the timeline of events, the statute of limitations would pose an outright impossibility for such a TSR claim against Chadwick, given he had been gone from Sanctuary for approximately 4 years at the time the FTC first filed its complaint, and presumably explains why the FTC has never brought it to this date. And even if it did, this would apply to other defendants and not to Chadwick based on this three-year statute of limitation.

9

- Violations of the FTC Act other than of specific rules (like the TSR) must, under Section 19(a)(2) first proceed administratively before the Commission, only thereafter to be followed by proceedings in court.
- Thus far, the FTC has neither instituted administrative proceedings against Chadwick, nor (to Chadwick's knowledge) voted to back up the threat of its trial team that a new claim will be added to the complaint.

Fourth, the FTC references other district courts that have rejected stays in the wake of the grants of certiorari in *AMG Capital* and *Credit Bureau*. (Dkt No. 1007, at 7, citing *FTC v. Simple Health Plans, LLC*, No. 18-cv-62593- DPG (S.D. Fla. Aug. 3, 2020) (Exhibit A to Dkt No. 1007), and *FTC v. Kutzner,* 16-cv-999-DOC (AFMx) (C.D. Cal. July 28, 2020) (Exhibit B to Dkt. No. 1007). However, here the FTC demonstrates once again its tendency to encourage this Court to read far too much into other court decisions. In *Simple Health Plans, LLC,* the district court found that the defendant there had not made a showing of irreparable injury, but there is no telling what that showing was or how it fell short. Moreover, the paperless order also reads, in language that the FTC chose not to quote in its opposition brief here, that the Supreme Court cases "will have no bearing on Defendants' liability" or "whether injunctive relief is warranted"; rather, the high court will "only" consider the question of whether the FTC can obtain monetary relief. (Exhibit A to Dkt No. 1007.) However, the availability of monetary relief is *precisely* the question as to which Chadwick seeks the stay, to avoid the potential for waste and harm from proceeding to judgment and satisfaction of judgment as to monetary relief where that question is to be decided shortly, next term. The FTC's argument gains even less from citing the district court's rejection of a stay in *Kutzner,* where there was *no* basis given for the decision in the minute order. (Exhibit B to Dkt. No. 1007, stating: "The Court DENIES the EX

PARTE APPLICATION to Stay Case pending Supreme Court Cases filed by defendant Jeremy Foti.")

The FTC's brief may have fired a lot of bullets at the grants of certiorari in its other cases as a basis for a stay in this case, but the bullets are all blanks.[4]

### C. The FTC Effectively Concedes Chadwick's Argument That Pukke And Baker Are Dissimilar To Him In Terms Of Claims And Remedies Subject To A Stay

In its "omnibus" filing, the FTC puts on full display that there is, in fact, a big difference between the effect of the grants of certiorari in *AMG Capital* and *Credit Bureau* upon the lots of the three defendants. The FTC argues that, even if it suffers defeat next term in the Supreme Court, Messrs. Pukke and Baker are still subject to contempt claims that are unaffected by the issue of remedy under Section 13(b). (Dkt No. 1007, at 9-11.) This is precisely Chadwick's point – the Court can simply stay the part of the case involving Chadwick, who is not subject to contempt proceedings.

### D. The FTC Fails To Rebut Chadwick's Showing That Established Irreparable Harm

The FTC argues that Chadwick failed to establish harm weighing in favor of a stay. The FTC states that "Chadwick provides nothing but a brief, self-serving

---

[4] The FTC is all in favor of a stay if it is the one asking for it based on hoped-for relief from the high court on the issue of equitable monetary relief under Section 13(b). The FTC's opposition defends its request for a stay of the Seventh Circuit decision in *Credit Bureau,* arguing it is "not remotely inconsistent for the FTC to oppose a stay in this case while seeking a stay of a contrary, wrongly decided ruling, particularly when that stay is being sought in the very case that is on review." (Dkt. No. 1007, at 9.) Apparently, only if the FTC believes a case is "wrongly decided" should Supreme Court review provide the basis for a stay. This effectively is a shameless request for favoritism from the judicial branch.

affidavit lacking any corroboration." (Dkt No. 1007, at 13.) This critique does not amount to a rebuttal or even a denial.

Instead of making arguments based on facts, the FTC mocks Chadwick's claim that the preliminary injunction has prevented him from working in real estate, (*see id.* at 14), cracking what seems to be a very cruel and tasteless joke suggesting that Chadwick must thereby be admitting that his commercial abilities are based on fraud. In any event, it is disturbing that those in government who wield such great power could be so openly insensitive to its consequences upon an individual.

In addition to the unrebutted facts stated in Chadwick's declaration, the FTC surely knows that the following article appeared in *The Wall Street Journal* about the lawsuit naming him as lead individual defendant, in a case the FTC told the press was "the largest-ever overseas real-estate investment scam" the agency has ever targeted." *See* Katy McLaughlin, "FTC Alleges Major Real-Estate Scam," *Wall Street Journal.* (November 8, 2018) (available at https://www.wsj.com/articles/ftc-alleges-100-million-real-estate-scam-1541694131). Literally called a "henchman" of Mr. Pukke's by the FTC in court filings, Chadwick was then put under a total, global asset freeze, stripped of control over his resort business, belatedly granted only a $3,000/month allowance to support his family, and denied has passport for foreign travel not especially approved by the Court. This is only the beginning of Chadwick's dire situation over the past two years, which naturally has included the extremely time-consuming responsibility of defending himself in court since November 2019.

Thus, it is a matter of common sense that all of these circumstances have drastically interfered with him working in the real estate business, as his declaration affirms.

The FTC's countervailing interests on behalf of upset consumers at Sanctuary Belize awaiting a verdict should give way under the extraordinary circumstances now present. This is especially the case after trial in this matter revealed there to be only a relatively small fraction of such consumers claiming fraud, often still being wealthy enough to enable spectating in the courtroom throughout much of the 3 and ½ week trial.

### E. **The FTC Fails To Defend Its Showing for an Asset Freeze and Receivership Over Chadwick's Assets and Entities, Which Lack Justification Now More Than Ever**

Chadwick established in his moving papers that the asset freeze and the receivership should be lifted because they flowed, at least as to him, directly from the FTC's dubious claim to a huge equitable monetary remedy. Moreover, these measures were entered against him despite an almost non-existent showing by the FTC of the involvement of *his* assets in the claimed scheme. The FTC now fails to persuasively oppose Chadwick's arguments.

The FTC confuses the basis for the interim relief. It misstates the record even while quoting the very material contradicting or undermining what it is stating. According to the FTC,

> [T]he Court has already determined that Chadwick, like the rest of the defendants, is likely to abscond with or dissipate assets if the asset freeze were lifted or his entities were released from the Receivership. *In re Sanctuary Belize Litigation*, 409 F. Supp. 3d 380, 419 (D. Md. 2019) ("Given the strong evidence of the diversion and dissipation

> of funds by SBE principals . . . there is a distinct possibility that the **Reserve's assets** would dissipate absent a Preliminary Injunction and asset freeze.")

(Dkt No. 1007, at 17) (emphasis added). Here, the Court cited the need to protect assets of Sanctuary Belize (aka "The Reserve") from dissipation – not Chadwick's own businesses, which were either defunct or had been separate from Sanctuary Belize for years at the time. There was no basis at the time cited, or shown, to justify sweeping Chadwick's assets into this dragnet. Chadwick filed various objections that the Court did not address in ruling for the FTC. Those objections stand.

The Receiver, Brick Kane, later testified at trial that Chadwick's businesses were not completely intertwined with the core SBE entities. [*See* Trial Transcript, Date 1/23/20 PM Session, Pg 25, Ln 12 - Ln 21]. Various other witnesses, including the FTC's own, recollected a split between the two developments of Sanctuary Belize and Kanantik several years before the lawsuit. For example, FTC witness Robert Hofmann, a repeat visitor to Sanctuary Belize over many years, observed that Kanantik and Sanctuary Belize had "broken up" less than a year after he purchased his lot at Sanctuary in 2015. [*See* Trial Transcript 1/24/20 Pg 195, Ln 13 – 20].

However, the FTC employs the Doublethink tactic of ceaselessly repeating its altered version of what the evidence has shown, including that "Kanantik and Sanctuary Belize are so intertwined to be one," or perhaps "sisters," without explaining the legal significance of a corporate sisterhood, if any. (Dkt No. 1007, at 14). This assertion is stubbornly stated in the present tense ("are" so intertwined) despite uncontested proof at trial such as Mr. Hofmann about the estrangement several years back. These assertions recycle everlastingly without the FTC ever

addressing the contradictory testimony that Mr. Kane gave as to Chadwick's entities – that they were *not completely intertwined with the Sanctuary Belize entities*. Trying to blunt this dagger in the back of its case against Chadwick, the FTC leans on the Receiver's "response" filing four days earlier that "also details significant evidence regarding Chadwick's, and his companies', operations—including their extremely close relationship with the rest of the SBE." (*Id., at* 18.) Chadwick filed last week his reply to the Receiver's gratuitous, FTC-friendly filing promptly cited by the FTC in its opposition here. [*See* Dkt. 1013, filed August 17th, 2020]. In brief, the handful of points made by the Receiver failed dismally, to establish something beyond arms-length commercial relations between Chadwick's entities and Sanctuary Belize, none of which lasted beyond 2016.

Especially now, it is time to lift the crushing burden of the global asset freeze and receivership from off Chadwick's shoulders.

### III.   CONCLUSION

Therefore, for the reasons stated above and in Chadwick's moving papers, the Court should grant a stay of the action against Chadwick and lift the asset freeze and receivership as to him and his entities.

Dated this 21st day of August, 2020.    Respectfully submitted,

/s/

Luke Chadwick

*Appearing pro se*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of August, 2020, I directed the foregoing document, **DEFENDANT LUKE CHADWICK'S REPLY TO THE FEDERAL TRADE COMMISSION'S OMNIBUS OPPOSITION TO DEFENDANT'S MOTIONS TO STAY**, to be mailed to the clerk of the Court for the United States District Court for the District of Maryland, and served copy by emails to chambers, counsel of record, and unrepresented defendants, as follows:

Alisa_Lu@mdd.uscourts.gov

Ben_Schneider@mdd.uscourts.gov

Jessi_Hibbs@mdd.uscourts.gov

ekkup@msn.com

bsearby@searby.law

peterbakerx@gmail.com

gcaris@btlaw.com

btheisman@ftc.gov

jcohen2@ftc.gov

Dated this 21st day of August, 2020.        Respectfully submitted,

Luke Chadwick

*Appearing pro se*