IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

SOUTHERN DIVISION

|  |  |
|---|---|
| *In re Sanctuary Belize Litigation* | Civil Action No.: 18-3309 JPM <br><br> Oral Argument Requested |

## PRO SE DEFENDANT LUKE CHADWICK'S OBJECTIONS TO THE COURT'S PROPOSED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT

Pro Se Defendant Luke Chadwick ("Chadwick"), hereby files his Objections to the Court's Proposed Order for Permanent Injunction and Monetary Judgment.[1] While your Honor stated in the Memorandum "The Court does not intend to hold oral argument with respect to any of the foregoing post-trial matters, unless further along it sees a need to do so," [Dkt. 1019 at Pg 2], given the nature, and potentially lengthy term, as proposed by the FTC in its Proposed Order, Chadwick hereby requests an oral hearing to be given a chance to address the Court before it makes its final decision and before entering any permanent injunction.

---

[1] Defendant Chadwick has had the assistance of Stand-By Counsel, Bruce Searby, (admitted *pro hac vice*) in briefing his Objections to the FTC's Proposed Order for Permanent Injunction.

## I. INTRODUCTION

The Proposed Order for Permanent Injunction and Monetary Judgment against Luke Chadwick and his co-defendants contains a number of provisions that, especially in their particular details, impose a burden that far exceeds what is necessitated by the Court's findings against Chadwick in its Memorandum Opinion of August 28, 2020. In some instances, this excess is simply a matter of the FTC-submitted proposed order treating <u>all</u> individual defendants equally, even though the Court has now, in other respects, recognized Chadwick's distinctly lower risk profile. In other instances, the relief goes beyond the permissible subject matter given what kind of conduct was at issue in the Sanctuary Belize case. In a few instances, the terms are unnecessary, unfair, and/or legally improper for still other reasons. Overall, the proposed order creates an excessive, unwarranted 20-year bone-crusher of a regime that Chadwick argues herein should be dialed back into proportion to what this Court saw and found in this case as to him.[2]

The particulars of injunctive relief obtainable under the FTC Act, including but not limited to compliance monitoring, must be "adequately tailored to address the risk of future violations through deterrence and monitoring," and "not be unduly burdensome" as to the specific defendant in question. *See Federal Trade Commission v. Digital Altitude, LLC,* 2019 WL 1976453 at *2, *11-12 (C.D. Cal. March 6, 2019) (determining that certain relief was unnecessary as to some defendants). The FTC

---

[2] The Court has directed that Chadwick not use this filing as an opportunity to challenge the Court's Memorandum Opinion with Findings of Fact and Conclusions of Law, and so accordingly Chadwick reserves such arguments for later filings contemplated by the Federal Rules of Civil Procedure, or on appeal.

must show that the relief is "reasonably necessary to 'accomplish complete justice,'" and why "adoption is reasonably necessary to fulfill the purposes of the FTC Act." *Id.* (quoting *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009)).

The details of the proposed order that Chadwick contends herein are excessive under this standard, and that he therefore seeks to revise, are as follows: (1) the injunction's 20-year duration (which Chadwick suggests should be no more than a 5-year term); (2) the compliance monitoring and reporting terms that apply to Chadwick as well as to other more culpable defendants, and that, on their face go far beyond the real estate business, and far beyond businesses dealing with U.S. consumers; (3) powers by the Receiver to satisfy the judgment against Chadwick with assets unrelated to the violations of the FTC Act found by the Court; (4) the level set under turnover provisions leaving Chadwick just $5,000 a month from future earnings and assets received; and (5) the seemingly unbridled discretion that any representative of the FTC would have to issue requests for information.

Therefore, especially in recognition of Chadwick's lesser degree of responsibility and risk going forward, of it being Chadwick's first and only time found liable before this Court, as opposed to his co-defendants, and of the limits of law and fairness, this Court should modify its proposed order accordingly.

## II. ARGUMENT

### A. The Twenty-Year Term of the Injunction Proposed For Chadwick -- the Same as For His Co-Defendants -- Is Exceedingly Severe Given the Nature and Long-Ago Timing of the Conduct Found By the Court and His Lack of Any Prior Violations

The proposed injunction would last for 20 years for Chadwick -- a length analogous to a maximum sentence – and, as applied to Chadwick's conduct and personal history, is draconian and excessive under the basic standards applicable to such FTC injunctions.

First, such a lengthy term is totally out of proportion to Chadwick's conduct in the case, as found by the Court -- relatively among defendants, as well as in absolute terms. Leaving aside whether the Court's findings contained *sufficient* evidence of individual deceptive conduct by Chadwick with the requisite scienter, the Court in general did not find *egregious* behavior, such as Chadwick misappropriating millions of dollars in assets for personal uses. The Court relied heavily on what it found to be evidence of Chadwick's recklessness about the conduct of others at Sanctuary Belize, versus employing or promoting intentional deception himself. Indeed, some of the key evidence undergirding the finding of liability included Chadwick *calling out and scolding* others at Sanctuary Belize for what he perceived as inappropriate behavior towards consumers (though not demonstrably related to the claims in this case). There was simply nothing to back up the FTC's oft-repeated claim that Chadwick's "blueprint" for sales was a blueprint for deception. Chadwick's most indisputable and

regrettable conduct while at Sanctuary Belize was his acquiescence to Mr. Pukke's use of the Marc Romeo alias, for which Chadwick is profoundly contrite.

In tailoring the injunction to the individual, the Court must also consider how dated conduct is, discounting conduct deep in the past that does not reliably indicate risk of future violations. The conduct as to Mr. Pukke's identity and role was an aberration for him – born of Chadwick's fateful entanglement with Mr. Pukke in a project that had been released by the Receiver to operate and that otherwise appeared to have great promise -- and was, at this point, many years in the past. The most recent conduct based on which the Court finds his liability under the FTC Act consisted largely of scattered arms-length, business-to-business commercial transactions, not constituting any deception of consumers, between Chadwick's Kanantik resort and Sanctuary Belize-related entities. Add to this Kanantik's placement of the "no debt" language characterizing the riskiness of an investment there deep in its website that had been left up at the time of this lawsuit, which Chadwick is supposed to have known was false based simply on his real estate experience. However, as to Kanantik, there were no other genuine commonalities with Sanctuary Belize as to alleged fraudulent conduct, and there were major factual differences between the two projects that were never explored at trial, primarily because the Amended Complaint had not fairly put Kanantik at issue, and as such Chadwick was not able to rebut the FTC's theory and set the record straight that the only secured debt was tied to the resort and island and ***not*** the actual Kanantik development itself. Overall, this conduct by Chadwick, whether sufficient or not for

5

liability, is not comparable to others' conduct in this case, and certainly is not egregious when set against the broad sweep of consumer fraud cases in this country.

Furthermore, such a long term may befit a repeat offender, but should not be applied to Chadwick, who has no record for prior fraud, FTC enforcement, or criminal conduct. Chadwick has not been to prison only to reoffend. Chadwick has never previously been found liable or guilty of anything before this Court, and unlike his co-defendants, Chadwick had received and flouted no warnings or orders from the FTC. Being given a warning and/or administrative action is the enforcement path that Congress contemplated for typical consumer fraud cases to follow under Section 19 of the FTC Act before ultimately requiring recourse to the federal courts.

Therefore, there is no need for Chadwick to share a 20-year term with the worst of offenders. He submits, assuming arguendo his liability, that a more appropriate term for the injunction would be between 2 and 5 years.

> B. The Various Compliance and Reporting Provisions Should Not Apply To Chadwick, Or At Least Should Have Express Limits to Businesses In Real Estate and Dealing with U.S. Consumers, Versus the Reach of the Proposed Order to Any Kind of Business, Globally

Chadwick does not contest here the power of the Court to include provisions in the injunction requiring compliance reporting and monitoring, but rather contests the need for their application to him individually, and their unwarranted and limitless reach to any business, anywhere. Especially given (as argued immediately

6

above) the relative lack of culpability of Chadwick's acts found by the Court, his contrition, and his lack of a record of misconduct, these provisions should be not applied to him. At a minimum, they must be more narrowly drawn around the real estate business with U.S. consumers so as not to be unduly burdensome and so far beyond the scope of the conduct litigated.

As noted above, compliance monitoring terms must be "adequately tailored to address the risk of future violations through deterrence and monitoring," and "not be unduly burdensome" as to the defendant in question, and are required in justice to fulfill the purposes of the FTC Act. *Digital Altitude, LLC,* 2019 WL 1976453 at *2. This is a *defendant-by-defendant* analysis, not lumping in all defendants regardless of their lack of centrality to misconduct, and to the risk of resuming violations. In *Digital Altitude,* the district court found that certain defendants did not need compliance monitoring provisions, while it was persuaded that Digital Altitude was so central to the scam there that it did need such steps. *Id.* at *2, *11-12. Here, as shown by the Receiver in his trial testimony, among so many other ways, Chadwick was not a central player in the Sanctuary Belize entities. [*See* Trial Transcript 1/23/20 AM, Pg 65, Ln 6 – 11; Trial Transcript 2/12/20 Pg 62, Ln 3 – 6]. Moreover, Chadwick's absence from Sanctuary Belize for several years by the time the FTC filed suit, as acknowledged by the Court in its Memorandum Opinion, underscores his significantly lesser role in the scheme on which the Amended Complaint and the evidence at trial focused.

7

Even assuming that compliance and monitoring provisions were necessary as to Chadwick, however, the scope of compliance monitoring provisions must be "reasonably related to [the defendant's] violation," and not sweep in unrelated types of businesses. *See Fanning v. Federal Trade Com'n,* 821 F.3d 164, 176-77 (1st Cir. 2016). In *Fanning*, the court of appeals invalidated compliance provisions mandating notification and reporting duties for one defendant that were unrestricted to the business activities relevant in the case, and applying to "all business affiliations and employment—regardless of whether or not the affiliate or employer has responsibilities relating to the order" entered by the district court. *Id.* at 176. The First Circuit did not find it proper to require, as the FTC conceded the order would, the defendant operator of a reputation management website "to report [to the FTC] if he was a waiter at a restaurant," where the FTC's sole justification was that it had previously managed to obtain orders from courts that were just as broad. *See id.* at 177.

Here, the proposed injunction requires Chadwick to do the following: (1) notify people at any businesses he owns or controls of the injunction [Section XI.B]' (2) report extensively on any new employment or business in which he is involved [Section XII.A and XII.B]; and (3) keep extensive special records of any business he owns or controls. [Section XIII]. The proposed injunction also permits the FTC to demand additional information from Chadwick as discussed below in Section E. However, on their face, the provisions apply to any business of any kind, whether or not dealing with real estate sales to consumers (the conduct litigated in these

proceedings). Should Chadwick want to be an employee or owner of some business unrelated to real estate, he should not have to carry around to his new associates the FTC's scarlet letter, nor burden himself with reporting such activities in detail, nor have the FTC contacting his new associates, overtly or covertly, under the authority of this Court. Additionally, any monitoring provisions should not be required if Chadwick engages in any type of business-to-business activities, and which do not relate directly to consumers.

Moreover, these onerous provisions, as the FTC proposes, would apply in all the world, regardless of whether there are U.S. consumers involved. There is no cited basis for the Court to have such broad jurisdiction over business transactions with no U.S. consumer nexus, and no such jurisdiction exists. For example, Chadwick should not have potential or future business activities in his home country with his fellow citizens of Australia, or in any other country with non-U.S. consumers for that matter, regulated for any amount of time by the FTC. The FTC is not a "policeman to the world," and should be confined in its enforcement efforts using U.S taxpayer dollars to protecting against future violations at businesses that have U.S. consumers only.

### C. The Receiver Should Not Be Permitted to Satisfy the Judgment With Assets and Future Income Unrelated to the Violations

The Court should modify the proposed order of judgment to lift from Chadwick the turnover provisions employing virtually all of Chadwick's assets and future

income to satisfy the judgment, for reasons both familiar to the Court and some raised here for the first time. [Sections IV.C and IV.D]

The Court's Findings of Facts and Conclusions of Law apply the doctrine of *stare decisis* on the issue of restitution, and the proposed injunction contains provisions to effectuate payment of the judgment against Chadwick (as re-calculated to exclude sales revenue from years when he was gone). Chadwick's objections to these provisions tapping for satisfaction of the judgment, corporate assets unrelated to the violations that the Court found are two-fold. First, in arguments that Chadwick will not revisit here, such a recovery mechanism is beyond the power of the Court under recent Supreme Court case law discussed at length in Chadwick's briefing throughout this litigation, with respect to assets unrelated to the violations of the FTC Act found by the Court, among others. Second, and in the alternative to those arguments, these provisions should not apply to Chadwick individually -- simply as an exercise of this Court's discretion to avoid an unjust result for him, a power that the Court has, even under existing Fourth Circuit authority.

The FTC has been acting throughout this case as though the Court's hands are tied if Chadwick is found liable -- as if the Court must issue an order of judgment for restitution just as the FTC proposes. However, this would now mean taking into the distant future even more from Chadwick than he already stands to lose from having had all his existing business assets taken away from him. It is not the case that the Court is in such a straight-jacket; to the contrary, the Court can go further than it has already towards restoring a sense of proportion to this case by refusing to make

the order of judgment a mechanism for collecting Chadwick's future income – which will be completely unrelated to Sanctuary Belize, (the matter directly at hand here).

As summarized above in Section A, Chadwick's culpability, even as found by this Court, is vastly unequal to others'. His lack of a record sets him apart. His contrition sets him apart. Furthermore, Chadwick did not profit equally from Sanctuary Belize, only taking in modest amounts of commission income over a several-year period rather than many millions in profits or, worse, diverting funds. Even if Chadwick is to have a large judgment entered against him, this Court can, in the interests of justice, decline to use the injunction to force turnover of additional sums and assets (to be acquired into the future) beyond what the Receiver has already seized and what the Court's opinion has already specifically tied to the violations.

### D. In the Alternative, the Court Should Limit Turnover of New Income to 25%, Which Is All that is Allowed Under Federal Law of Garnishment and What Would Be Fair To Chadwick Under the Circumstances

As an alternative to entirely removing the provisions for turnover of new income as to Chadwick, he contends that the Court has the legal obligation under federal statute to *limit* the turnover amount and has the discretionary power to do so, which it should exercise in Chadwick's case. Currently, the turnover provision is set at the draconian level of any amount in excess of $5,000 per month of future income, over the term of 20 years. [Section IV (D)].

Congress has provided, in relevant part, that the maximum part of the aggregate <u>disposable earnings</u> of an individual for any work week which is subjected to garnishment may not exceed (1) 25 per centum of his disposable earnings for that week, or (2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage, whichever is less. 15 U.S.C. § 1673(a). No court of the United States or any State, and no State (or officer or agency thereof), may make, execute, or enforce any order or process in violation of this section. § 1673(c). Here, the FTC proposes that the Court enter an order effectively garnishing Chadwick's future income at an amount that is bound to have the effect of violating Section 1673 if he is fortunate enough to earn only a little more than $5,000/month for his family of six. The Court should accordingly set limits that respect Section 1673's humane limitation, which prevents Chadwick living in virtually a debtor's prison.

The Court could also arrive at this result as a matter of its own discretion, separate and apart from giving effect to Section 1673. The Court has recognized that Chadwick should not be forced to give up his chosen profession in real estate – giving him a hard-won victory on that point. Having given him back the right to engage in his livelihood with one hand, the Court should not take away from Chadwick with its other hand his ability to prosper and build back his business into a productive career, by stripping him of most of his income to satisfy the judgment. Adding force to this argument are the points already made above about Chadwick's relative culpability

among defendants, the lack of true egregiousness of his conduct, his contrition, and his lack of a record of prior violations.

Therefore, in the alternative, Chadwick proposes that the Court limit his turnover of future income to the formula set forth in Section 1673, which the Receiver can calculate.

### E. The Court Should Clarify That the FTC's Monitoring Powers To Request Information, If Applicable At All to Chadwick, Are Subject to Ordinary Requirements of Reasonableness, to Written Objections, and to Oversight By the Court of Disagreements

The proposed injunction contains seemly unbridled power for the FTC to press Chadwick and others for information on top of the reporting requirements already included. [Section XV(A), (B); (C) & (E)] As argued in Section B above, these compliance monitoring requirements should not apply to Chadwick for reasons of his low-to-none risk of re-offending, among others. However, if the Court determines otherwise, then at a minimum, it should clarify the order so that it is clear the FTC's ability to demand information is not unbridled, and that disagreements with the FTC over reasonableness and privilege will not constitute immediate contempts, but instead that Chadwick can lodge written objections and the Court will exercise ordinary oversight over disagreements that may arise.

In a federal court injunction, the law imposes limitations on monitoring powers in order for those to be a permissible exercise of judicial power, and monitoring

powers "must always be conducted subject to 'careful review by the trial judge.'" *United States v. Apple Inc.,* 992 F.Supp.2d 263, 280 (S.D.N.Y. 2014)(citation omitted). Monitoring actions are subject to oversight by the Court and any disputes should be brought to the Court for resolution, after attempting to resolve them with the government. *See id.* In discovery disputes between the parties, there are also clear mechanisms for a party subject to information requests to lodge written objections as to relevance, undue burden, privilege, lack of reasonable time afforded for satisfying requests, and other garden variety matters over which litigants often contend, and then for the parties to be able to follow up with invoking the Court's powers to resolve such disputes.

Here, the proposed injunction does not clearly allow Chadwick to lodge reasonable objections while withholding compliance based on those objections, leaving the parties then to meet and confer before potentially bringing the dispute to the Court's attention. As stated therein:

> Within fourteen (14) days of receipt of a written request from a representative of the FTC, each Defendant shall: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce appropriate documents for inspection and copying.

[Section XV(A)]

As this is written, the FTC may seek to hold these powers over Chadwick without limitation. This should not be permitted. Under the law, there must be clear limits based on traditional criteria for reasonableness and privilege, and there must be a clear dispute resolution mechanism allowing for Court oversight of disputes, as

contemplated both in the court's decision in *Apple* and in the Federal Rules of Civil Procedure. Anything less than this would be to invite a heavy hand of threats by the FTC of contempt against Chadwick, which would do nothing to restrain the exercise of its monitoring powers within the bounds of fairness and justice.

To prevent the FTC from fishing around for misconduct where there is no reason to believe it exists, there should be a further subject matter limitation to any discovery it issues. The FTC's powers of information-gathering should have to be **relevant to the subject matter of the Amended Complaint**, to the enforcement of the injunction's specific terms, or to when a consumer has filed a complaint with the FTC for an alleged (future) violation.

A further point is that the order as written above allows potentially excessive delegation of the authority of the FTC to "any representative" thereof. This would allow the FTC to employ a limitless range of people, whether federal government employees or contractors or someone else, to issue demands. Chadwick requests that the Court give these powers only to attorneys for the FTC appearing in this matter, so as to assure accountability for the reasonableness and legality of the requests made under this injunction.

Therefore, the injunction should not contain these information requests at all, but if it does, the FTC's powers should be qualified, and properly restrained. They should require counsel for the FTC to sign and therefore take responsibility for any requests, clearly allow Chadwick to lodge timely written objections on typical grounds

to any of FTC counsel's information requests, and otherwise require normal operation of court rules and procedures over disagreements.

### III.     CONCLUSION

For the reasons set forth above, this Court should amend the terms of the Proposed Order For Permanent Injunction And Monetary Judgement, specifically as to Chadwick given the Court has now, in other respects, recognized Chadwick's distinctly lower risk profile, and especially in recognition of Chadwick's quantum of responsibility (as determined by the Court), of it being Chadwick's first and only time found liable before this Court, as opposed to his co-defendants, and of the limits of law and fairness, this Court should modify any permanent injunction accordingly, as proposed by Chadwick above.

Dated this 11th day of September, 2020.          Respectfully submitted,

/s/ Luke Chadwick
Appearing Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on the dated this 11th day of September, 2020, I directed the foregoing document, <u>PRO SE DEFENDANT LUKE CHADWICK'S OBJECTIONS TO THE COURT'S PROPOSED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT</u>, to be mailed to the clerk of the Court for the United States District Court for the District of Maryland, and served copy by emails to chambers, counsel of record, and unrepresented defendants, as follows:

dylan_ruffi@mdd.uscourts.gov

jessi_hibbs@mdd.uscourts.gov

bsearby@searby.law

ekkup@msn.com

peterbakerx@gmail.com

gcaris@btlaw.com

btheisman@ftc.gov

jcohen2@ftc.gov

cerickson@ftc.gov

Respectfully submitted,

/s/ Luke Chadwick

Appearing Pro Se