IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| *In re* SANCTUARY BELIZE LITIGATION | Civil No. **PJM 18-3309** |

## MEMORANDUM OPINION #2

On August 28, 2020, the Court issued comprehensive findings of fact and conclusions of law, bringing this case of two years duration for the most part to a close. ECF No. 1020 ("Memorandum Opinion"). However, certain questions were left open for further briefing, which the parties have now provided. The Court addresses the remaining issues in this Memorandum Opinion #2.

### A. Pukke, Baker & Usher Owe $120.2 Million for the TSR Contempt

The Federal Trade Commission ("FTC") requests that the Court impose a $120.20 million compensatory sanction against Defendants Andris Pukke, Peter Baker, and John Usher for their participation in the TSR Contempt. As explained in the Memorandum Opinion, the Court refrained from determining a precise damages figure for the TSR Contempt after finding that any amount would be "duplicative" of the restitution already ordered. ECF No. 1020 at 165. This was because, although the TSR Contempt pertained to "the *AmeriDebt* Stipulated Final Judgment, the injured parties are the lot purchasers in the present litigation who were deceived by Pukke, Baker and Usher's contumacious conduct, such that any compensation would have to be made to them." *Id.*

The Court agrees with the FTC that the harm from Defendants' contumacious conduct is indeed the same as the harm caused by their FTC Act violations, in the present case $120.20

1

million.[1] While the Memorandum Opinion did not initially levy a separate monetary sanction for the TSR Contempt, it unequivocally found Pukke, Baker, and Usher liable for violating the terms of the *AmeriDebt* Stipulated Final Judgment. Among other things, that judgment prohibited Pukke and his "successors, assigns, officers, agents, servants, employees, or affiliates, and those persons in active concert or participation with [him]," from:

> making, or causing or assisting others to make, expressly or by implication, any false or misleading representation [in connection with telemarketing], including but not limited to misrepresenting: . . . any aspect of the performance, efficacy, nature, or central characteristics of the goods or services; and any other matter regarding the goods or services.

*FTC v. AmeriDebt, Inc.*, 03-cv-3317 PJM, ECF No. 473 at 8–9. Pukke and his associates were indisputably prohibited from engaging in the exact wrongdoing that they practiced at SBE. Accordingly, a monetary sanction alternative to the damages caused by their violations of the FTC Act is appropriate for the injuries to purchasers caused by the TSR Contempt—$120.2 million. *See, e.g., In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) ("[The Court] may impose sanctions for civil contempt 'to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy.'" (citation omitted)).

In opposition, Pukke and Baker read too much into the Court's prior statement that a compensatory sanction would be duplicative of restitution. Defendants argue that the Court is now somehow precluded from issuing any contempt sanctions because it has already ordered restitution. That, of course, is not the case. The amounts are not cumulative, they are merely alternative measures of the same damages. The Court therefore imposes a $120.20 million

---

[1] As indicated in the Memorandum Opinion, this figure does not include payments for lot purchaser travel to and from Sanctuary Belize and Belizean sales tax, which, in sum, would increase the total loss to $138.7 million. The FTC has stated that it is willing to pursue the lower figure to expedite resolution of the issue, although it has not conceded that the lower figure is the proper amount. ECF No. 1027 at 5 n.3.

compensatory sanction upon Pukke, Baker, and Usher, jointly and severally, for their participation in the TSR Contempt.[2]

### B. Chadwick is Liable for $91,902,725.91 Million in Restitution

In the Memorandum Opinion, the Court deliberately left open the amount of restitution due from Defendant Chadwick. Unlike other Defendants, Chadwick withdrew from the SBE operation around 2016. Accordingly, the Court determined that the restitution due from him would not include lot sale payments from 2016 through 2018. The FTC was thus directed to provide a statement of restitution owed by Chadwick, which deducted lot sales generated during the period of January 1, 2016 through November 30, 2018 from the total restitution amount, $120.20 million. The FTC calculated Chadwick's restitution to be $91,902,725.91.

In support of this final figure, the FTC submitted the Declaration of Douglas S. Smith, Ph.D. ECF No. 1040-1. To calculate the revised restitution amount, Dr. Smith relied on the same data utilized by the FTC's trial expert, Eric C. Lioy, and the same methodology previously accepted by the Court: lot payments less refunds, less travel and tour payments, less Belizean sales tax, indulging all assumptions made in Defendants' favor. *See, e.g.*, ECF No. 1020 at 159–60. The Court confirms that that methodology is appropriate, and now holds that Chadwick will be ordered to pay restitution in the amount of $91,902,725.91. While Chadwick has not disputed this calculation, to be sure, he continues to argue that he is not in any way liable. But, as addressed *infra*, the issue of his liability has already been decided and will not be reconsidered at this stage.

---

[2] Defendants also imply that they were wrongfully denied a jury trial under the Seventh Amendment. That contention has already been rejected by the Court, a ruling which the Fourth Circuit affirmed. *See In re Pukke*, 790 F. App'x 513, 514 (4th Cir. 2020) ("[W]e conclude that petitioners are not entitled to a jury trial.").

### C. <u>Newport Land Group's ("NLG") Assets Remain in the Receivership</u>

In its Memorandum Opinion, the Court afforded David Heiman and other nonparty investors of NLG an opportunity to be heard as to why their investments in NLG should be excluded from the Receivership. ECF No. 1020 at 139–41. The Court has already found that NLG was part of the SBE "common enterprise" and, as such, is jointly and severally liable for violations of the FTC Act and the TSR. *Id.* at 139. The evidence amply demonstrated that SBE was significantly intertwined with NLG's operations. Millions of dollars were transferred from SBE to NLG for no apparent legitimate business purpose and SBE individuals had interlocking relationships with NLG. *See id.* at 140. Accordingly, the Court concluded in June 2019 that NLG's assets were part of the Receivership. ECF No. 507.

Even so, the Court wished to give the NLG investors an additional opportunity be heard. In response, the Court has received no less than 11 identical submissions, ECF No. 1032, consisting of pro forma letters reiterating what the Court has already acknowledged: that NLG's passive investors likely did not intend for their funds to be tied up in the SBE common enterprise. *See* ECF No. 1020 at 140. The investors also suggest that their lack of intervention in the present case was because, "[o]n advice of counsel, all of the limited investors joined together to file suit [in California] with the hopes of retrieving our investment." ECF No. 1032-1 at 2. But nowhere in their submissions to this Court have the investors provided a persuasive basis to unfreeze NLG's assets and return their investments in full. The investments were all extensively commingled with NLG assets primed with SBE assets; none were shown to be held in trust for the investors. The investors' requests are **DENIED**.

4

### D. Permanent Injunctive Relief

Defendants Pukke, Baker, and Chadwick have raised various objections to the terms of injunctive relief proposed in this case. They largely contend that the injunctions should be limited temporally, geographically, or in scope. To dispel any doubt, the injunctive relief ordered is intended to apply globally, subject only to the temporal and scope limitations set by the Court in the Memorandum Opinion.

### E. Issues Resolved in the Memorandum Opinion

The Court previously advised the parties that, at this juncture, it would not "entertain arguments as to why and how the Memorandum Opinion itself might be modified," and that it "will disregard such arguments" before entering final orders. ECF No. 1019 at 1. Notwithstanding that directive, Defendants Pukke, Baker, and Chadwick have each attempted to revisit multiple issues decided in the Memorandum Opinion, such as: their liability for violations of the FTC Act, whether restitution is available under the FTC Act, and the requirement that any monetary relief be traceable to violations of the FTC Act. The Court declines to revisit those matters in this Memorandum Opinion #2.

### F. Modifications to the Final Orders

Finally, the Court invited the parties to address aspects of the final orders to be entered in this case. The Court discusses those matters in a separate opinion.

Separate Orders implementing these decisions will **ISSUE**.

January 12, 2021

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE