IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

*In re* **SANCTUARY BELIZE**
**LITIGATION**    *    Civil No. **PJM 18-3309**

## MEMORANDUM OPINION #3

When the Court issued its August 28, 2020 Memorandum Opinion in this case, ECF No. 1020 ("Memorandum Opinion"), the parties were directed to comment on three proposed orders: (1) Order for Permanent Injunction and Monetary Judgment Against Defendants Andris Pukke, Peter Baker, and Luke Chadwick ("De Novo Order"); (2) Order for Permanent Injunction and Monetary Judgment Against Defaulting Defendants[1] ("Default Order"); and (3) Order of Contempt Against Andris Pukke, Peter Baker, and John Usher ("Contempt Order). The Federal Trade Commission ("FTC"), Pukke, Baker, and Chadwick have responded with various requests to revise the proposed orders. After considering their submissions and responsive briefs, the Court proceeds with an item-by-item explanation of the changes it has accepted or rejected. As previously advised, the Court has not entertained arguments at this time as to why or how the underlying Memorandum Opinion should be amended. *See* ECF No. 1019 at 1.

---

[1] The Defaulting Defendants are John Usher, Global Property Alliance Inc., Sittee River Wildlife Reserve, Buy Belize LLC, Buy International Inc., Foundation Development Management Inc., Eco Futures Development, Eco-Futures Belize Limited, Newport Land Group LLC, Power Haus Marketing, Prodigy Management Group LLC, Belize Real Estate Affiliates LLC, Exotic Investor LLC, Southern Belize Realty LLC, Sanctuary Belize Property Owners' Association, and The Estate of John Pukke.

A. **Proposed Amendments to the Terms of the Final Orders**

The Court has adopted most of the FTC's proposed amendments, which largely clarify certain terms used in the final orders. Accordingly, the following revisions to the De Novo Order and Default Order are accepted:

(A) The Court revises the defined term "Asset" to include the "Receivership Entities" themselves, in addition to the assets they control;

(B) The Court omits Ecological Fox, LLC, BG Marketing, LLC, and Foundation Partners from the definition of "Receivership Entities," since these parties have settled the claims against them;

(C) Where the Orders refer to the Receiver's duties, the Court adds language specifying that the Receiver holds assets in constructive trust for the benefit of the FTC and lot purchasers at SBE; and

(D) The Court adds language that "the Receiver shall take steps *to attempt to obtain* the full fair market value of any Asset."

As to the Default Order only, the Court accepts the FTC's position that the Defaulting Defendants, with the exception of John Usher, are not entitled to retain assets. The proposed final order originally permitted certain corporate entities to retain assets below $2,500 in value, a provision which should only apply to the individual Defendants. Now, with the exception of John Usher, the Defaulting Defendants shall not be entitled to retain any assets.

These proposed amendments are consistent with the Memorandum Opinion and will be implemented.

B. **Pukke Is Liable for the $172 Million *AmeriDebt* Judgment**

The FTC requests that the Contempt Order explicitly find Pukke liable for the entire *AmeriDebt* judgment. The Court has already found that the "facts conclusively establish . . . Pukke's non-cooperation with the FTC and trigger the $172 million [*AmeriDebt*] judgment." ECF 1020 at 176. Including language to that effect in the Contempt Order is appropriate.

Pukke objects, arguing that he was denied a Due Process right to notice and an opportunity to be heard. He claims that because the Amended Complaint fails to specifically allege his liability for the entire *AmeriDebt* judgment, he cannot be liable for same. This argument is baseless and was firmly rejected when the Court found him liable for the entire *AmeriDebt* judgment in the Memorandum Opinion. The Contempt Order will be revised accordingly.

### C. Procedures Under California Homestead Laws

The FTC proposes that the Court fashion procedures in the event that disputes arise under California's homestead laws. No such issues are presently before the Court. That said, if necessary the Court will revisit the FTC's requested relief. However, until that time, the Court does not intend to preempt issues that may arise and prove relevant to this proceeding.

### D. Turnover of Monthly Income Over $5,000

Pukke, Baker, and Chadwick each challenge the De Novo Order's proposed requirement that they turn over monthly "employment income" exceeding $5,000. They argue that 15 U.S.C. § 1673 bars the FTC from seeking more than 25% of their aggregate disposable earnings,[2] or the amount of income that exceeds 30x the minimum wage per week, whichever is less.

In response, the FTC claims that the Federal Debt Collection Procedures Act provides the "exclusive civil procedures for the United States . . . to recover a judgment on a debt." 28 U.S.C. § 3001(a)(1). While implicitly acknowledging that the FDCPA requires compliance with 15 U.S.C. § 1673, the FTC reasons that the FDCPA also does not "supersede or modify . . . any Federal law authorizing, or any inherent authority of a court to provide, injunctive relief." 28 U.S.C. § 3003(c)(7). Nor does the FDCPA alter "the authority of a court . . . to appoint a receiver to

---

[2] "Earnings" are defined as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program." 15 U.S.C. § 1672(a). "Disposable earnings" are defined as "that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld." *Id.* § 1672(b).

3

effectuate its order; or . . . to exercise the power of contempt under any Federal law." *Id.* § 3003(c)(8). Given these carveouts, the FTC claims that the FDCPA does not limit the relief available to the Court and Defendants may be required to turn over all "employment income" exceeding $5,000 per month.

In effect, the FTC argues that the FDCPA merely *permits* courts to impose more burdensome terms than 15 U.S.C. § 1673 otherwise requires—so long as the relief is "injunctive" or emanates from the Court's contempt powers.[3] But if the FTC is correct, at the same time nothing prevents a court from ordering compliance with the restrictions on garnishment set forth in § 1673. And, as a practical matter, there are good reasons for doing so. Section 1673 aims to "relieve countless honest debtors driven by economic desperation from plunging into bankruptcy in order to preserve their employment and insure a continued means of support for themselves and their families." *Kokoszka v. Belford*, 417 U.S. 642, 651 (1974) (quoting H.R. Rep. No. 1040, 90th Cong., 1st Sess., 21 (1967)). In keeping with that principle, while the actions of Defendants in SBE are hardly praiseworthy, the Court does not wish to discourage any defendant from this point forward obtaining honest and lawful employment. The restriction on garnishment imposed by § 1673, in the Court's view, reflects an acceptable balance between mandating the payment of the monetary judgment Defendants are faced with, while providing, to some extent at least, for their welfare. Accordingly, the Court will require that any turnover of "employment income" comply with the restrictions on garnishment under § 1673.

---

[3] In any event, the FTC's argument is somewhat undercut by the statute's definition of garnishment: "any legal *or equitable procedure* through which the earnings of any individual are required to be withheld for payment of any debt." 15 U.S.C. § 1672(c) (emphasis added).

4

### E. Reporting & Compliance Monitoring

Pukke, Baker, and Chadwick have objected to various aspects of the De Novo Order's provisions concerning reporting and compliance monitoring. In light of their concerns, the Court has included language in the Order emphasizing that all parties must operate in good faith with respect to the FTC's requests for information and Defendants' responses thereto. As should already be clear, the parties must at all times act reasonably and in good faith. Unreasonable requests for information or unreasonable refusal to comply with such requests may result in sanctions, including the payment of attorneys' fees.

Pukke has raised concerns that he may be unable to comply with two provisions requiring him to furnish information concerning customer accounts and payments made to John Vipulis. He represents that he lacks access to critical information that would allow him to assist the FTC, such as company records. To the extent that Pukke lacks information necessary to comply, the FTC, or the Receiver, shall provide documentation or access to documentation that might aid Pukke in providing appropriate responsive information.

Separate Orders will **ISSUE**.

January 12, 2021

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE