IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| *In re* SANCTUARY BELIZE LITIGATION | Civil No. **PJM 18-3309** |

\*
\*
\*
\*
\*
\*
\*
\*
\*

## MEMORANDUM OPINION

Defendants Andris Pukke, Peter Baker, Luke Chadwick, and John Usher ("Defendants") have filed individual Motions to Stay the present proceeding. Defendants and the Federal Trade Commission ("FTC") have separately moved for Post-judgment Relief. For the reasons that follow, all Defendants' motions are **DENIED** and both the FTC's post-judgment motions are **GRANTED**.

### I.

Defendants have moved to stay this case pending the Supreme Court's decision in *AMG Capital Management, LLC v. FTC*, No. 19-508. At issue in *AMG* is whether the FTC may seek monetary relief under Section 13(b) of the Federal Trade Commission Act ("FTC Act"). According to Defendants, because the FTC, at least in part, seeks monetary relief pursuant to that provision in the present case, the Court should stay all or some portion of the case until the Supreme Court speaks.

The Court is aware that the Supreme Court may any day issue an opinion in *AMG* that might have some effect on the case at bar. However, rather than await a decision by the Supreme Court, or speculate as to what it may entail, the Court believes that the better part of wisdom favors bringing as much finality to this action as possible. At a later date, the Court may take up motions

1

as to the effect, if any, *AMG* has on this case—or, indeed, the Court may determine that it may be more prudent to let the effect, if any, of the *AMG* decision be decided by the Fourth Circuit on direct appeal. The Court finds no reason to stay any part of the case at this point.

The Court is mindful of the Supreme Court's pronouncement that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). But this is not one of those extraordinary cases. Clear authority in this Circuit binds this Court with respect to the availability of monetary relief under Section 13(b): "ordering monetary consumer redress is an appropriate 'equitable adjunct' to the district court's injunctive power." *FTC v. Ross*, 743 F.3d 886, 891 (4th Cir. 2014) (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 399 (1946)). That interpretation controls unless and until the higher court says otherwise.

Although the impact of *AMG* remains to be seen, what is clear is that at least a substantial portion of this case will survive the decision. For example, the conduct relief established in the Court's final orders fits entirely within the framework of Section 13(b). Unless and until the Fourth Circuit rules otherwise, the propriety of that remedy is not in doubt, nor is that question in any way before the Supreme Court in the *AMG* case. Moreover, this Court's findings of fact and determinations as to liability—including contempt of court and violations of the Telemarketing Services Rule ("TSR")—would not be affected by a decision in *AMG*. Indeed, even if Defendants' predictions as to *AMG* hold true, all that would be affected is one remedy presently available to the FTC.

After nearly three years of litigation, the overriding concern at this stage is to steer the case "safely into the harbor of judgment." *Colonial Carpets, Inc. v. Carpet Fair, Inc.*, 36 Md. App. 583, 584 (1977). For these reasons, Defendants' Motions to Stay are **DENIED**.

2

## II.

Defendants have also moved for Post-judgment Relief under Federal Rules of Civil Procedure 52(b) and/or 59(e). While the Rules provide for slightly different relief—amended findings of fact and amended judgments, respectively—the Court interprets their requirements as "coextensive." *Redner's Mkts., Inc. v. Joppatowne G.P. Ltd.*, No. 11-cv-1864, 2013 WL 5274356, at *3 n.3 (D. Md. Sept. 17, 2013), *aff'd*, 594 F. App'x 798 (4th Cir. 2014). Generally, "the moving party must demonstrate [1] a clear legal error in the Court's prior ruling, [2] provide newly discovered evidence that warrants reconsideration, or [3] cite some intervening change in controlling law." *Brightview Grp. v. Teeters*, No. 19-cv-2774, 2020 WL 4003168, at *2 (D. Md. July 15, 2020). Defendants not only ignore these grounds altogether, they interpose legal and factual arguments that have been made and rejected at least once if not multiple times before.

### A. Pukke's Motion to Amend Judgment

Pukke asks the Court to amend the $120.2 million judgment against him in the Final Order of Contempt. ECF No. 1113. He believes that the judgment is procedurally defective because the Court in its August 28, 2020 Memorandum Opinion ("August 28 Opinion") found that "any compensatory remedies for the TSR Contempt would be duplicative of the restitution ordered." ECF No. 1020 at 165.[1] And, when the Court invited the parties to propose modifications to the final orders, it did so with instructions that it would not consider arguments contesting the August 28 Opinion's findings. From this, Pukke argues that damages for the TSR Contempt should not have been included in the Final Order of Contempt.

---

[1] It is worth noting that the defined term, "TSR Contempt," needs context. The "TSR Contempt," as defined in the August 28 Opinion, refers to Pukke's, Baker's, and Usher's contempt of the *AmeriDebt* Stipulated Final Judgment, which encompassed not only violations of the TSR, specifically, but also, more broadly, any conduct involving misrepresentations made in connection with telemarketing. ECF No. 1020 at 162.

The Court has rejected Pukke's argument once before and does so again. *See* ECF Nos. 1066 & 1109. As previously explained, although the August 28 Opinion did not set forth a separate monetary amount for the TSR Contempt, it unequivocally found Pukke, Baker, and Usher liable for violating the terms of the *AmeriDebt* Stipulated Final Judgment. *See* ECF No. 1109 at 2. It also made clear that the damages for the TSR Contempt would be "duplicative" of the restitution ordered, i.e. they would be the same. Therefore the $120.2 million contempt judgment was merely clarifying in nature and entirely consistent with the August 28 Opinion. Pukke previously opposed the inclusion of any contempt damages in the Final Order of Contempt, which the Court rejected. Accordingly, his motion is **DENIED**.

## B. Peter Baker's Motion to Amend Findings of Fact

By all measures, Baker seeks to "relitigate old matters" under the guise of a post-judgment motion. *Clapper v. Chesapeake Conf. of Seventh-Day Adventists*, 166 F.3d 1208, at *5 (4th Cir. 1998) (quoting 11 Wright, Miller, and Kane, *Federal Practice and Procedure* § 2810.1, at 127–28 (2d ed. 1995)). He largely contends that the evidence against him was insufficient. For example, he argues that the Court "ignored" evidence that he was not engaged in lot sales at Sanctuary Belize. While this sort of factual re-examination is not within the purview of Rule 52(b), Baker's evidentiary challenges are nonetheless wholly without foundation. In the August 28 Opinion, the Court found as matters of fact that:

- Baker directly participated in lot sales at Sanctuary Belize. ECF No. 1020 at 105 ("The evidence convincingly demonstrates that Baker has been involved with Sanctuary Belize sales and marketing efforts throughout.").
- Baker controlled and directed certain corporate defendants. *Id.* at 100 ("[T]he FTC introduced abundant evidence impeaching Baker's testimony regarding his supposed non-knowledge of and non-involvement as to the referenced entities.").
- Baker had knowledge of the unlawful conduct at Sanctuary Belize. *Id.* at 109 ("There can be no doubt that he knew or should have known [the representations] were false, particularly given his extensive ownership of multiple SBE entities and his involvement in SBE.").

4

Similarly unavailing is Baker's insistence that the Court improperly drew adverse inferences against him by prohibiting Pukke from testifying (after Pukke had repeatedly invoked the Fifth Amendment privilege against self-incrimination during his pre-trial depositions). But the Court drew no adverse inference against Baker as he suggests. Rather, it was the overwhelming weight of the evidence against Baker that ensured his liability. *See* ECF No. 1020 at 112–113. Accordingly, Baker's Motion is **DENIED**.[2]

## C. Luke Chadwick's Motion to Amend Findings of Fact

Chadwick asks the Court to amend its findings of fact concerning the 2015 affidavit he submitted in connection with Pukke's violation of supervised release hearing, which falsely represented that, as far as Chadwick knew, Pukke had not used the Marc Romeo alias from 2012 to 2015. ECF No. 1020 at 75 n.36. In a too clever by half display of revisionist history, Chadwick now argues that the declaration was not in fact false or misleading because he was not aware that Pukke, *himself,* had used the alias during that time.

Three facts confirm that Chadwick's painfully strained reading is untenable. First, he does not deny that he and others used the Marc Romeo alias in referring to Pukke. Second, no matter how much he tries to minimize it, Chadwick cannot explain away a December 2012 email in which a Sanctuary Belize salesperson stated: "Luke Chadwick and Marc Romeo, our two main developers here in California would like to speak with you." ECF No. 1152 at 11 (quoting PX 985). Chadwick and Pukke are both copied—with Pukke using the deceptive email address "ekkup@msn.com." *Id.* at 11; *see also* ECF No. 1020 at 124 (detailing additional

---

[2] Baker's attempt to relitigate the Herskowitz affair is equally futile. The Court's findings in that regard are well chronicled in the August 28 Opinion. *See, e.g.,* ECF No. 1020 at 59 n.31. Baker's contention that adverse inferences should have been drawn *against the FTC* under the missing witness rule is also meritless, an argument previously raised by him and rejected by the Court. *See* ECF No. 946 at 7 ("the 'missing witness rule' has no application in this case").

communications). Any reasonable trier of fact could infer that Pukke authorized the use of his alias at that time and Chadwick knew it. Third, and perhaps most importantly, Chadwick also invoked his Fifth Amendment privilege against self-incrimination when asked on deposition whether his 2015 declaration was false. ECF No. 1152 at 10–11. Months after the fair, he attempts to make a clean breast and deny the apparent falsehood. There is no basis to credit Chadwick's late-conceived theory and his motion is **DENIED**.

## D. John Usher's Motion to Amend Findings of Fact

Long after the litigation has concluded, Usher has appeared for the first time to contest the Court's exercise of personal jurisdiction over him. Although at times he confuses this argument with one of improper venue and lack of subject matter jurisdiction, his essential claim is that the default judgment against him is void for lack of personal jurisdiction. Thus, the Court construes his motion as one pursuant to Rule 60(b)(4) (relief from judgment that is void).[3]

To void the judgment under Rule 60(b)(4), Usher must demonstrate that the Court's exercise of jurisdiction over him is unconstitutional. Because the FTC has statutory authority to effect service of process nationwide, *see* 15 U.S.C. § 53(a), the relevant "minimum contacts" inquiry focuses on his contacts with the United States as a whole, rather than those with a specific state. *In re Sanctuary Belize Litig.*, 409 F. Supp. 3d 380, 395 (D. Md. 2019). As a Belizean citizen, Usher is not a domiciliary of the United States, such that the Court must assure itself that the exercise specific jurisdiction is proper. The Court must consider "(1) the extent to which the defendant has purposefully availed [himself or] itself of the privilege of conducting activities in

---

[3] The Court has already found that Usher was adequately served with process. Not only that, he remained in touch with the proceedings through an attorney in the United States, Joseph Rillota, Esquire. ECF No. 1020 at 135 n.54. Although Mr. Rillota never formally appeared on Usher's behalf, he has consistently confirmed receipt of court filings. Perhaps more importantly, Usher's most recent motion was sent to the Court from the same email address to which relevant papers in this proceeding were consistently forwarded to him as courtesy copies, viz., cotinga63@gmail.com.

the [forum]; (2) whether the [plaintiff's] claims arise out of those activities directed at the [forum]; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id.* at 394 (quoting *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers. Inc.*, 334 F.3d 390, 397 (4th Cir. 2003)).

Under the first prong, Usher quite clearly purposefully availed himself of jurisdiction in the United States. He partnered with Pukke, Baker, and Chadwick to market Sanctuary Belize properties to U.S. consumers, leading to long-term contractual relationships with U.S. citizens. The Court heard testimony that at relevant times Usher directly controlled Sanctuary Belize entities that utilized U.S. banks to facilitate payments from U.S. consumers. *See* ECF No. 1152-1. These were purposeful contacts with the United States and were unquestionably sufficient. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) ("[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950))); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 173 (2d Cir. 2013) ("[R]epeated use of the correspondent account—and hence New York's banking system—as an instrument to achieve the wrong complained of in this suit satisfies the minimum contacts component of the due process inquiry."). Because the case at bar obviously arises from those contacts, the second prong of the analysis is also satisfied.

Finally, the Court's exercise of jurisdiction over Usher is reasonable. When addressing "reasonableness," the Court considers: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution

of disputes; and (5) the interests of the states in furthering substantive social policies." *In re Sanctuary Belize Litig.*, 409 F. Supp. 3d at 395 (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)). It was not burdensome for Usher to repeatedly travel to the United States to further the unlawful ends of Sanctuary Belize, such that litigating here cannot be deemed to have been unduly burdensome. Moreover, all the convenience and efficiency factors weigh strongly in favor of this Court's exercising jurisdiction. *See* ECF Nos. 1152-1 & 1152-2. While Usher may not prefer to have litigated in this forum, his preference does not divest this Court of jurisdiction.

### Usher's Arguments As To Liability

Usher also offers several arguments going to his liability, many of which are re-treads of those raised by his co-defendants which have already been rejected by the Court. For the same reasons his shared arguments were rejected when raised by his co-defendants, his arguments fail for an independent reason. The window for him to participate in this litigation has long since closed and he does not begin to provide any justification for his default. In fact, all indications are that his default was by his willful choice. The Court will not revise the default judgment against Usher and his Motion is **DENIED**.

### III.

The FTC's post-judgment motions consist of two requests: that the Court (A) enter a final order confirming the Receiver's control over the Kanantik resort, and (B) amend the Final Order to ban Chadwick from participating in Kanantik.

### A. Final Order Concerning the Receiver's Control of Kanantik

The Final Orders entered in this case direct Chadwick, Pukke, and Baker to transfer to the Receiver their ownership interests in business entities. ECF No. 1111 at 9 (Chadwick and Pukke);

ECF No. 1112 at 12 (Usher). In light of these Orders, and the Court's approval of the Receiver's

settlement with Violette Mathis, the Receiver now controls 100% of the Kanantik entities.

Nevertheless, Chadwick opposes the motion, claiming that a decision in *AMG* may render the

Receiver's control unlawful. The Court rejects this argument for the same reason it declines to stay

the case. In any event, Chadwick's opposition is entirely academic in light of the Receiver's de

facto control over the Kanantik entities. The Court therefore **GRANTS** the FTC's Motion for a

Final Order Confirming the Receiver's Control of Kanantik.

## B. Final Order of Judgment Banning Chadwick From Kanantik

Although Baker and Usher were permanently enjoined from participating in Kanantik, the

Court deferred ruling on Chadwick's involvement. ECF No. 1111 at 6. The FTC argues that he

must now be enjoined from participating in Kanantik to protect consumers from future harm.

Chadwick opposes any such order, citing familiar well-worn arguments: (a) the asset freeze

prevented him from retaining counsel; (b) he was not on notice of allegations involving Kanantik;

(c) Kanantik was an independent development; and (d) a decision in *AMG* may render the

Receiver's control unlawful. The Court again rejects these arguments as it has before.

Banning Chadwick from Kanantik is appropriate "fencing-in relief" under Section 13(b)

of the FTC Act, which no decision in *AMG* will change. Simply put, the Court is not convinced

that, absent a permanent injunction, Chadwick will be deterred from further misconduct. As stated

in the August 28 Opinion:

> while Chadwick has given some assurances that he will not commit violations
> similar to those he has committed in the past, the Court frankly has doubts about
> the sincerity of these assurances. His past willingness to ignore or bend the truth
> with respect to misrepresentations made by him and SBE operatives argues for the
> issuance of a permanent injunction, with appropriate fencing-in.

9

ECF No. 1020 at 154. These concerns remain undiminished. Accordingly, the FTC's Motion to Amend the Final Order against Chadwick is **GRANTED**.

**CONCLUSION**

For the foregoing reasons, all Defendants' motions are **DENIED** and the FTC's Post-judgment motions are **GRANTED**.

Separate Orders implementing these decisions will **ISSUE**.

March __, 2021

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE