IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

*In re* SANCTUARY BELIZE
LITIGATION

Civil No. **PJM 18-3309**

## MEMORANDUM OPINION

*Pro se* Defendant Luke Chadwick has filed multiple post-judgment motions seeking $300,000 from the Receivership Estate to fund legal expenses for himself and two defaulted corporate Defendants, Exotic Investor, LLC ("Exotic") and Prodigy Management Group, LLC ("Prodigy"). ECF Nos. 1199 & 1228 (collectively, "Motions to Release Funds"). Chadwick is joined in the Motions by his long-time "stand-by" counsel, Bruce Searby, Esq. of Searby LLP—who presumably would represent Chadwick, Exotic, and Prodigy in further litigation. Additionally, Chadwick has also moved to amend his Notice of Appeal to include orders previously omitted from his original Notice, dated April 19, 2021. ECF No. 1232. For the following reasons, Chadwick's Motions to Release Funds are **DENIED** and his Motion to Amend the Notice of Appeal is **GRANTED**.[1]

---

[1] All parties seem to agree that this Court has jurisdiction to consider Chadwick's Motions. Moreover, just recently, the Fourth Circuit stayed the appeals of Defendants Andris Pukke, Peter Baker, and John Usher, pending this Court's consideration of Chadwick's Motions. *See* 20-2215 (4th Cir.), ECF No. 23 at 4 ("The court suspends proceedings of these consolidated appeals pending the district court's disposition of the motion for release of funds.").

1

I.

Based on his allegedly wholly-owned interest in Exotic and Prodigy, Chadwick seeks the immediate release of cash from the Receivership. As he acknowledges, however, the Receivership does not hold funds that were accumulated from any assets directly in his name. Rather, he believes that cash can be released from the general Receivership Estate and "credited" or "charged" against his interests in Exotic and Prodigy. *See* 6/2/21 Tr. 22:4–8, ECF No. 1237 ("[W]e are asking, in the interests of justice, that the amounts be paid out of the receivership general funds . . . and charged against Mr. Chadwick's . . . interests in the receivership estate."); ECF No. 1233 at 7–9 (same). More specifically, Chadwick claims that Prodigy holds "a small amount of real estate . . . in Cape Girardeau, MO," and Exotic indirectly owns "a little less than half of [the Kanantik] resort" in Belize. ECF No. 1199 at 6–7. Given the alleged value of these assets, he claims he is entitled to cash from the Receivership.

In support of his proposed withdrawal of the $300,000, Chadwick advances two principal arguments: (A) that Exotic's and Prodigy's assets are improperly frozen for the purpose of satisfying a monetary judgment under Section 13(b) of the FTC Act—which he believes is now unlawful by reason of *AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341 (2021); and (B) he cannot afford to engage counsel himself. In the Court's view, neither argument is meritorious.

A.

To be sure, this is not Chadwick's first attempt to extract cash from the Receivership Estate based on the supposed value of his interests in Exotic and Prodigy. Even he recognizes that the Court has previously denied an identical request because "Defendants are not individually entitled to assets that are not theirs, particularly in a civil case." ECF No. 696 at 1; *see also* ECF No. 801

at 1 (denying, for the same reason, Chadwick's request to release funds). Notwithstanding the clarity of the Court's prior rulings, here we are again.

According to Chadwick, *AMG Capital* changed the equation because, he contends, all of the assets held by the Receiver should not have been encumbered to begin with. While he is correct that *AMG Capital* found monetary remedies unavailable under Section 13(b) of the FTC Act, it said nothing of what Chadwick proposes here: that cash held by a receiver, for the benefit of aggrieved consumers, should be released to an individual defendant based on that defendant's indirect claim to illiquid corporate assets subject to a valid, final order of default judgment permanently placing those assets in the receivership. Even after *AMG Capital*, that would be extraordinary relief the Court is not inclined to grant.

Importantly, Chadwick has provided no evidence to rebut the Receiver's contention that it does not possess "money . . . [originating] from accounts, funds or other assets directly owned or held by . . . Chadwick." Kane Decl. ¶ 3, ECF No. 1212-1. In fact, Chadwick concedes as much, claiming he primarily "held his now-frozen wealth" in corporate entities, which resulted in him "not possessing funds to pay for an attorney" following the asset freeze in this case. ECF No. 1199 at 2. Accordingly, Chadwick's sole basis for claiming entitlement to Receivership funds is his purported interest in Exotic and Prodigy, not any direct personal right.

Equally problematic is the fact that Exotic's and Prodigy's assets are illiquid. In other words, the Receiver does not hold accounts of either Exotic or Prodigy from which cash could be easily withdrawn. Even if it did, however, there is still no basis to release to Chadwick funds that are not his. *See* ECF Nos. 696 & 801.

In any case, Chadwick is not authorized to represent Exotic and Prodigy before this Court.[2] Federal Rule of Procedure 11(a) requires that every submission have an attorney's signature, or a *pro se* party's "personal" signature. Local Rule 101.1.a further provides that: "Individuals who are parties in civil cases may only represent themselves. . . . All parties other than individuals must be represented by counsel." Together, these Rules—which the Court has no authority to amend—preclude Chadwick's making a request on behalf of corporate entities Exotic and Prodigy. The vast weight of authority confirms this to be so: "It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel. As the courts have recognized, the rationale for that rule applies equally to all artificial entities." *In re Under Seal*, 749 F.3d 276, 290 n.17 (4th Cir. 2014) (quoting *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993)); *see also Flame S.A. v. Freight Bulk Pte. Ltd.*, 762 F.3d 352, 355 (4th Cir. 2014) ("The [district court] entered default judgment in recognition of the well-established rule that 'a corporation may appear in the federal courts only through licensed counsel.' (quoting *In re Under Seal*, 749 F.3d at 290)); *In re Tamojira, Inc.*, 20 F. App'x 133, 133–34 (4th Cir. 2001) ("Although 28 U.S.C. § 1654 permits parties to conduct their own litigation, it is well settled that a corporation must be represented by an attorney in federal court."); *Acme Poultry Corp. v. United States*, 146 F.2d 738, 740 (4th Cir. 1944) ("[a] corporation can appear only by attorney" (quoting 19 C.J.S. Corporations § 1368)).

There is, of course, good reason to bar a corporation from appearing *pro se* through an unlicensed shareholder:

> The distinction between natural persons and corporations has been justified on the basis that a person appearing for a corporation acts in a representative capacity,

---

[2] Although its reference is somewhat unclear, the FTC appears to take the position that: "Nothing prevents Chadwick from using assets legitimately available to him to hire an attorney to attempt to represent the defaulted companies." ECF No. 1238 at 11 n.12.

4

while a person appearing pro se does not represent another. Also, since shareholders are shielded from liability by the corporate entity, representation by an attorney is necessary to insure compliance with rules of conduct and ethical standards by providing an agent who will be fully amenable to disciplinary action.

9A Fletcher Cyc. Corps. § 4463 (Sept. 2020 update). Here, by placing his assets in corporate entities, Chadwick availed himself of the benefits of the corporate form—namely, limited liability as a shareholder. He now comes before the Court asking it to disregard all formalities and permit him to exploit corporate assets for his own benefit, financed (in the interim, at least) with cash that is not his. To do so would allow him to wield the corporate form as both a shield and then as a sword whenever it suits him, an unseemly proposition the Court cannot endorse.[3]

Ultimately, Chadwick has had many opportunities to present arguments in support of his proposed cash withdrawal from the Receivership. To date, he has not offered any reason in law or fact that persuades the Court to modify the status quo.

### B.

In the face of strong legal authority to the contrary, Chadwick retreads familiar ground, arguing that he cannot afford counsel for himself, Exotic, and Prodigy without using Receivership funds. Although Chadwick claims he would be prejudiced absent such financing, at the same time, he apparently refuses to demonstrate his indigency to this Court and the Fourth Circuit by way of sworn affidavit. He pleads impoverishment but maintains that he need not prove it.

Instead, Chadwick offers a somewhat cagey declaration providing (at best) an incomplete assessment of his finances. Chadwick Decl., ECF No. 1228-1. Although he claims to be unemployed—and that he has "not earned a salary" since this case began—he does not deny the availability of other sources of income. *See id.* ¶¶ 2–4 ("had my income level remained at [the

---

[3] The Court presumes that Chadwick would not claim that any liability incurred by Exotic or Prodigy would automatically extend to him personally. Why then should it be any different when he seeks to re-classify corporate assets as his own?

5

level it was before], I would have used a portion of [it] to fund my legal expenses"). He simply declares that the $6,000 per month he receives from renting his former residence in Costa Mesa, California does not count. ECF No. 1238-3 (PXC4). According to the lease agreement produced by the FTC, Chadwick has evidently accumulated roughly $35,000 in rent since January 2021—placing his expected income at $72,000 per year. *Id.* Were he to obtain even an entry-level job (something he seems unwilling to do), he could easily generate total income of over six figures, certainly enough to afford competent counsel.[4]

Simply put, the Court is not convinced that Chadwick's rental income is his only source of capital. He asserts that "[t]he vast majority of my assets and wealth are held in corporate entities," without disclosing more. ECF No. 1228-1 at ¶ 5. This vague assertion leads the Court to wonder what other assets might be available to him. While it may be that Chadwick prefers to use assets that are not his for litigation expenses, that of course does not entitle him to do so. For these reasons, his Motions to Release Funds are **DENIED**.

## II.

Chadwick's Motion to Amend the Notice of Appeal, which seeks to add citations to several orders not referenced in his original Notice, fares better. *See* ECF No. 1232. The critical amendment he wishes to make is to include the Final Orders of Default Judgment against Exotic and Prodigy. As the FTC points out, this supposedly signals his intent to pursue an appeal on their behalf, which would be in violation of Rule 11(a) and Local Rule 101.1.a.

However, while the FTC may be correct in its hypothesis, the Court does not in any way wish to impede the arguments Chadwick may wish to raise with the Fourth Circuit. If the Fourth Circuit is not satisfied that Chadwick may argue on behalf of the corporate entities, so be it. But,

---

[4] On appeal, should Chadwick actually demonstrate his indigency, per the Rules of the Fourth Circuit, the Court understands he may be entitled to appointed counsel.

for now, in order to afford him the ability to present a full airing of his issues on appeal, the Court **GRANTS** Chadwick's Motion to Amend the Notice of Appeal.

## CONCLUSION

For the foregoing reasons, Chadwick's Motions to Release Funds, ECF No. 1199 & 1228, are **DENIED,** and his Motion to Amend the Notice of Appeal, ECF No. 1232, is **GRANTED**.

A separate order will **ISSUE.**

/s/
**PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE**

**June 30, 2021**