# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  | * |  |
|---|---|---|
| *In re* SANCTUARY BELIZE LITIGATION | * * * * * * * * | Civil No. **PJM 18-3309** |

## MEMORANDUM OPINION

A number of interrelated matters are before the Court as a result of the confusion surrounding Defendant Luke Chadwick's legal representation. Apparently, within the last month, Chadwick—previously *pro se*—has come to be represented by John B. Williams, Esq. of Williams Lopatto PLLC and Neil H. Koslowe, Esq. of the Potomac Law Group, PLLC ("Retained Counsel"). However, before it was clear that counsel had been retained, Chadwick continued to have settlement discussions with the FTC *pro se*. On June 30, 2021, Retained Counsel filed a Motion for Relief From Judgment and a Motion for Protective Order on behalf of Defendants Andris Pukke, Peter Baker, John Usher, Luke Chadwick, Global Property Alliance, Inc., Sittee River Wildlife Reserve (Belizean Company), Buy Belize, LLC, Buy International, Inc., Foundation Development Management, Inc., Eco-Futures Development, LLC, Eco-Futures Belize, Ltd. (Belizean Company), Power Haus Marketing, and the Estate of John Pukke (collectively, the "Represented Defendants"). ECF Nos. 1244 & 1245.[1] A Notice of Appearance was subsequently entered by Retained Counsel listing each of the Represented Defendants as clients. ECF No. 1246.

---

[1] The Motion for Relief From Judgment was withdrawn on July 7, 2021. ECF No. 1260.

1

On July 1, 2021, the FTC moved for an order directing Chadwick to disclose the status of his legal representation, given his *pro se* negotiations with the FTC and given his assurances that he remained unrepresented. *See* ECF No. 1255-1 at 6 (PXA2). Accordingly, the Court promptly ordered Chadwick to submit a sworn statement regarding the matter of his legal representation and directed Retained Counsel to provide a copy of their signed retainer agreement, if one existed. ECF No. 1249 ("July 1 Order"). Represented Defendants followed with a Motion for Reconsideration of the July 1 Order. ECF No. 1253.

In relevant part, the Motion for Reconsideration sought relief from the July 1 Order directing counsel to file a copy of the signed retainer agreement. The FTC opposed the Motion. For the reasons that follow, the Motion for Reconsideration has been **DENIED**.

**I.**

The muddle regarding Chadwick's legal representation prompted the Court to convene a telephone conference of counsel on July 7, 2021. During the conference, Retained Counsel maintained that they not only represented Chadwick but also entities he says he controls, viz. Mango Springs Development, Ltd., Mango Springs Development Ltd. (Nevis LLC), G&R Development Ltd., Exotic Investor LLC, Palmaya Development Ltd., and Prodigy Management Group LLC.[2] Because Retained Counsel had not entered an appearance on behalf of those companies, the FTC requested the immediate production of a signed copy of Chadwick's retainer agreement. Retained Counsel objected.

---

[2] Counsel also verbally represented that Defendants would immediately withdraw the Motion for Relief From Judgment in order to proceed before the Fourth Circuit, which recently reasserted jurisdiction over the Chadwick's appeal. Counsel later walked back that representation, disclosing that as of that time not all clients had signed off on the withdrawal of the Motion. In any event, that point is now moot since Represented Defendants have withdrawn their Rule 60(b)(5) Motion. *See* ECF No. 1260.

2

Inquiry into the nature of Retained Counsel's legal representation also brought to light issues raised in the Motion for Protective Order, recently filed by Retained Counsel, seeking the Court's approval, sight unseen, of a previously undisclosed arrangement between a third-party litigation finance firm, Represented Defendants, and/or Retained Counsel. The Motion advised that:

> [Retained Counsel] have now received an offer from a major litigation financing firm to provide capital for the principal purpose of litigating the claims of the [Represented] Defendants in return for an anticipated financial recovery from the litigation. Under the firm's offer, some of the capital may be allotted to the individual [] Defendants for living expenses.

ECF No. 1245 at 2. The Motion disclosed few details, except that "capital . . . provided by the firm to undersigned counsel would not come from [Represented] Defendants and would not be subject to their direct or indirect control." *Id.* For that reason, during the July 7 telephone conference, the FTC and the Receiver indicated that they would be unable to respond to the Motion for Protective Order without first seeing the financial "agreement."[3] In turn, Retained Counsel objected to its release.

To resolve whether the attorney retainer agreement and/or the financial litigation arrangement should be disclosed, the Court agreed to review both documents *in camera* to determine whether they should be submitted to the FTC and the Receiver. The Court has now reviewed both documents.

### A.

As to the litigation financing agreement, Chambers received a single-sheet document entitled "Summary of Terms Re: FTC Litigation." It raises a host of questions.

---

[3] On the July 7 call, Mr. Williams stated that, in fact, no formal agreement had actually been entered—the third-party firm had only made a proposal for an agreement.

The summary one-page document appears to be a "term sheet" between a "commercial litigation finance firm," LexShares, Inc., as the "Purchaser," and an unidentified "Seller." The term sheet contemplates a $2,500,000 "Purchase Price," paid by the "Purchaser" to "Seller," with a fraction of the Purchase Price ($250,000) "deposited into a segregated account controlled by Purchaser for post-Closing Litigation Expenses." Those expenses would presumably be applied to fees and/or costs of an "Attorney of Record."

The ultimate question is whether the term sheet relative to the financial agreement violates one or more of the Court's prior orders. For example, who is the "Seller"? Defendant Chadwick? Defendant Pukke? Other of the Represented Defendants? Who receives the "Purchase Price"? Who is the "Attorney of Record," and what client(s) do they represent?

Moreover, the term sheet explicitly provides that "a binding commitment will result only from the execution and delivery of a definitive agreement mutually acceptable in form and substance to the parties and receipt of all necessary consents or releases from third parties." At present, the Court is obviously in no position to evaluate the arrangement in its inchoate form.

In the Court's view, the FTC and Receiver are entitled to have the opportunity to parse any such litigation financing agreement. Subject to further order of the Court, therefore, within 24 hours, Retained Counsel shall submit any term sheet and any further litigation financing agreement.

**B.**

Yet another problem exists:

The attorney retainer agreement provided to Chambers shows that Chadwick has engaged Retained Counsel on behalf of himself and a number of companies he claims to represent, including Mango Springs Development, Ltd., Mango Springs Development Ltd. (Nevis LLC),

4

G&R Development Ltd., Exotic Investor LLC, Palmaya Development Ltd., and Prodigy Management Group LLC. But the problem is that Chadwick may not be authorized to speak on behalf of some if not all of these entities. At a minimum, the FTC and the Receiver ought to be able to address this concern. Accordingly, subject to further order of the Court, the full attorney retainer agreement shall also be made available to the FTC and the Receiver within 24 hours.

## III.

Finally, the Court is compelled to note that, throughout the post-judgment phase of this litigation, Represented Defendants have assumed that *AMG Capital Management, LLC v. FTC*, 141 S. Ct. 1341 (2021) automatically nullifies this entire case, requiring vacatur of the Final Orders of Judgment and mandating the immediate dissolution of the Receivership and return of all assets to Defendants. However, several matters are clearly unaffected by *AMG Capital* or are left unresolved in its wake, including among others (1) the Court's substantive findings of violations of both the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, and the Telemarketing Sales Rule, 16 C.F.R. § 310.3; (2) the validity of the injunctive relief ordered by the Court; (3) the validity of damages assessed pursuant to the Telemarketing Sales Rule; (4) the validity of the contempt damages assessed against Defendants Pukke, Baker, and Usher; (5) whether duly defaulted corporate defendants may at this juncture seek to vacate judgments entered against them; and (6) whether the record of fraud and violations of the FTC Act found in this case would justify an asset freeze pending further administrative proceedings at the FTC. While *AMG Capital* may have left vulnerable monetary judgments entered strictly pursuant to Section 13(b) of the FTC Act, it is likely that at least some of the monetary judgments as well as Court-ordered equitable relief in this case will remain viable.

## CONCLUSION

For the foregoing reasons, the Motion for Reconsideration, ECF No. 1253, is **DENIED**.

A separate order will **ISSUE**.

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

July 8, 2021