UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
SOUTHERN DIVISION

*In re* SANCTUARY BELIZE LITIGATION

No: 18-cv-3309-PJM

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT OF RECEIVER'S AND PROFESSIONALS' FEES AND COSTS FROM JANUARY 1, 2022 THROUGH MARCH 31, 2022 AND FOR NON-MATERIAL MODIFICATION OF ORDER GOVERNING INTERIM RECEIVERSHIP MANAGEMENT (DOC. 559)**

I.      **INTRODUCTION**

This memorandum of points and authorities is filed by Marc-Philip Ferzan of Ankura Consulting Group, LLC ("Receiver") as successor Receiver to Robb Evans & Associates LLC ("Robb Evans") in support of the Motion for Order Approving and Authorizing Payment of Receiver's and Professionals' Fees and Costs from January 1, 2022 Through March 31, 2022 and for Non-Material Modification of Order Governing Interim Receivership Management (Doc. 559) ("Motion"). (Ankura Consulting Group, LLC is referred to herein as "Ankura.")

This lawsuit was commenced on October 31, 2018 by the Federal Trade Commission ("FTC") with its filing of a Complaint for Permanent Injunction and Other Equitable Relief (Doc. 1) ("Complaint"). The lawsuit named 17 entity defendants and seven individual defendants, in addition to five relief defendants. On November 5, 2018, the Court issued an Ex Parte Temporary Restraining Order With Asset Freeze, Writs *Ne Exeat*, Appointment of a Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("TRO"). Under the TRO, Robb Evans & Associates LLC ("Robb

Evans") became temporary receiver over all entity defendants except for Atlantic International

Bank Limited ("AIBL") and over the assets of Andris Pukke ("Pukke") and Peter Baker

("Baker") valued at $1,000 or more.

In January 2019, the Court granted the FTC's motion to amend the Complaint, which

added Michael Santos and Newport Land Group, LLC ("NLG") as defendants.  On February 13,

2019, the Court entered a Stipulated Preliminary Injunction as to Defendants Rod Kazazi,

Foundation Partners, Brandi Greenfield, BG Marketing LLC, Frank Costanzo, Deborah

Connelly, Ecological Fox LLC, Michael Santos, Angela Chittenden, and Beach Bunny Holdings

LLC (Doc. 195) ("Stipulated Preliminary Injunction").  On October 3, 2019, the Court issued the

Preliminary Injunction as to Defendants Andris Pukke, Peter Baker, Luke Chadwick, John

Usher, Certain Corporate Defendants, and the Estate of John Pukke (Doc. 615) ("Pukke

Preliminary Injunction").  Under the Stipulated Preliminary Injunction and Pukke Preliminary

Injunction, Robb Evans remained as receiver over numerous Receivership Entities and over

Pukke's, Baker's and Luke Chadwick's ("Chadwick") assets valued at $1,000 or more.

Between  November 2019 and January 2020 five stipulated judgments were entered into

between the FTC and various Defendants, each of which vested certain duties, powers and

authority in Robb Evans as permanent receiver (Docs. 668, 788, 789, 819 and 820) (collectively,

the "Stipulated Judgments").

On January 13, 2021, the Court entered its Order for Permanent Injunction and Monetary

Judgment Against Defaulting Defendants John Usher et al. (Doc. 1112) ("Default Judgment").

Pursuant to the Default Judgment, Robb Evans remained as permanent receiver over the

Defaulting Corporate Defendants, as defined therein, and John Usher was ordered to transfer his

assets to Robb Evans, which would become assets of the receivership estate, with limited

exceptions as set forth in the Default Judgment.  On March 24, 2021, the Court entered its

Amended Final Order for Permanent Injunction and Monetary Judgment Against Defendants

Andris Pukke, Peter Baker and Luke Chadwick (Doc. 1194) ("Pukke Final Judgment").  Robb

Evans remained as permanent receiver over the assets of Pukke, Baker and Chadwick, with

limited exceptions as set forth in the Pukke Final Judgment.  On March 23, 2022, the Court

entered its Stipulated Order Partially Modifying the Court's Orders at Docket Entries 1112 and

1194 as to Defendants Luke Chadwick, Prodigy Management Group LLC, Belize Real Estate

Affiliates LLC, Exotic Investor LLC, and Southern Belize Realty LLC (Doc. 1341) ("Chadwick

Stipulated Order").  The Chadwick Stipulated Order modified the Default Judgment and Pukke

Final Judgment as it pertained to Chadwick and four of his wholly owned entities, as more

particularly described in the Successor Receiver Report of Activities for the Period January 1,

2022 to March 31, 2022 ("Successor Receiver Second Report") which is filed concurrently with

this Motion and is also attached as Exhibit 1 to the declaration of Marc-Philip Ferzan ("Ferzan

Declaration") in support of this Motion.

On October 7, 2021 Robb Evans filed its Statement by Receiver, Robb Evans &

Associates LLC, Regarding Receiver's Status (Doc. 1293), advising the Court that as a result of

various circumstances, including the fact that Brick Kane passed away on October 2, 2021, it

determined that it could no longer serve as receiver beyond the short term.  The same day, the

FTC filed the FTC's Motion to Appoint Marc-Philip Ferzan of Ankura Consulting Group, LLC

as Receiver (Doc. 1294) ("Successor Receiver Motion").  The Court granted the Successor

Receiver Motion, and issued its Order Appointing Marc-Philip Ferzan as Receiver on October

26, 2021 (Doc. 1305) ("Successor Receiver Order"), pursuant to which Marc-Philip Ferzan of

Ankura Consulting Group, LLC was appointed as successor receiver.

Pursuant to the TRO, Stipulated Preliminary Injunction, Pukke Preliminary Injunction, Stipulated Judgments, Default Judgment and Pukke Final Judgment, the Receiver is directed to file and serve on the parties periodic requests for the payment of reasonable compensation for the performance of his duties and for the cost of its out-of-pocket expenses from the assets of the receivership estate.  This Motion is the second request for payment of fees and costs incurred by the Receiver and his counsel since his appointment pursuant to the Successor Receiver Order.[1] This Motion covers the period from January 1, 2022, the date through March 31, 2022 ("Second Reporting Period").  It includes a request for payment of the fees and costs incurred by Barnes & Thornburg LLP ("Barnes & Thornburg") as counsel for Robb Evans and the successor Receiver, and for payment of the fees and costs incurred by real estate counsel Arnold & Porter Kaye Scholer LLP ("Arnold & Porter") during the Second Reporting Period.  It also includes a request for payment of the fees incurred by Robb Evans during the Second Reporting Period in continuing to support the transition from Robb Evans as receiver to Marc-Philip Ferzan of Ankura Consulting Group, LLC as the successor Receiver, as expressly provided in the Successor Receiver Order.

## II.   SUMMARY OF THE FEES AND COSTS SOUGHT BY THE RECEIVER DURING THE SECOND REPORTING PERIOD

Concurrently with the filing of this Motion, the Receiver is filing his Successor Receiver Second Report.  A copy of the Successor Receiver Second Report is also attached as Exhibit 1 to the Ferzan Declaration which accompanies this Motion.  The Successor Receiver Second Report provides a summary report of the work undertaken by the Receiver during the Second Reporting Period and provides financial statements, including a Statement of Net Assets and a Statement of

---

[1] The first motion for fees brought by the successor Receiver was filed on February 2, 2022 (Doc. 1335) and covered the period from October 26, 2021 through December 31, 2021.  There was no objection to the first fee motion.  The Court has not yet issued a ruling on that motion.

Net Recoveries (the "Financial Statements"), at pages 17 and 18.  The Financial Statements reflect the fees and costs incurred during the Second Reporting Period by the Receiver, including his team at Ankura, as well as Barnes & Thornburg, Arnold & Porter and Robb Evans.  These fees and costs are more particularly detailed in the billing records of Ankura, Barnes & Thornburg, Arnold & Porter, and Robb Evans attached as Exhibits 2, 3, 4 and 5 respectively, to the Ferzan Declaration.[2]

During the Second Reporting Period, the Receiver incurred fees and costs as follows: (a) fees of $699,806.25 and costs of $1,380.23, for a total of $701,186.48, for the Receiver and the Receiver's team at Ankura; (b) fees of $123,586.00 and costs of $3,518.80, for a total of $127,104.80, to Barnes & Thornburg; (c) fees of $49,424.90 and costs of $342.70, for a total of $49,767.60, to Arnold & Porter; and (d) fees of $16,538.40 to Robb Evans.

## III. THE FEES AND COSTS OF THE RECEIVER, ITS COUNSEL AND ROBB EVANS ARE REASONABLE AND SHOULD BE PAID AS REQUESTED

It is a fundamental tenet of receivership law that expenses of administration incurred by the receiver, including those of the receiver, his counsel and others employed by him, constitute priority expenses for which compensation should be paid from the assets of the receivership. As explained in the leading treatise *Clark on Receivers*:

> The obligations and expenses, which the court creates in its
> administration of the property, are necessarily burdens on the
> property taken possession of, and this, irrespective of the question
> who may be the ultimate owner, or who may have the preferred
> lien, or who may invoke the receivership. The appointing court

---

[2] As explained in the Ferzan Declaration, the bills have been redacted where appropriate to preserve confidential, sensitive, tactical, strategic, attorney-client privileged and/or attorney work-product information.

> pledges its good faith that all duly authorized obligations incurred
>
> during the receivership shall be paid.

2 Clark, Ralph Ewing, *A Treatise on the Law and Practice of Receivers* § 637, p. 1052 (3rd ed. Rev. 1992).

A receiver is an officer of the Court charged with a myriad of duties under the Court's orders, many of which have no relationship to recovery of assets or increasing the funds available for distribution to creditors. Because of the nature of the administrative and other services required in receiverships, the benefit a receiver confers on receivership property cannot be determined based solely on the increase or decrease in the value of property in the receiver's possession. As the Court explained in *Securities and Exchange Commission v. Elliott*, 953 F. 2d 1560, 1577 (11th Cir. 1992):

> [I]t is sometimes difficult to ascertain what type of benefits a
>
> receiver has bestowed on receivership property . . . . . [A] benefit
>
> to a secured party may take more subtle forms than a bare increase
>
> in monetary value. Even though a receiver may not have increased,
>
> or prevented a decrease in, the value of the collateral, if a receiver
>
> reasonably and diligently discharges his duties, he is entitled to
>
> compensation. [Citations omitted.]

*Securities and Exchange Commission v. Elliott*, 953 F. 2d at 1577.

The Court has broad discretion in determining the reasonableness of fees to be awarded a receiver. *See In re San Vicente Medical Partners Ltd.*, 962 F. 2d 1402, 1409-1410 (9th Cir. 1992). The Court may evaluate the time and effort expended by the receiver with respect to specific projects and aspects of the administration of the estate, and may look to a number of

different factors under the case law in approving receiver's and counsel's fees. *In re San Vicente Medical Partners Ltd.*, 962 F. 2d at 1409-1410.

The Receiver and the Ankura team, along with Barnes & Thornburg, Arnold & Porter, and Robb Evans, have performed extensive and wide-ranging tasks during the Second Reporting Period in this complex and multi-faceted receivership proceeding. The Receiver and his team at Ankura, along with his counsel and the predecessor receiver personnel, rendered important and necessary services for the receivership estate during the Second Reporting Period that were highly beneficial to the estate. Much of the work during the Second Reporting Period was, of necessity, not focused on the monetization of receivership assets, but instead was focused on completing a smooth transition between Robb Evans and the successor Receiver, preserving asset value for the properties in receivership in Belize, preparing for implementation of a redress plan, and continuing to refine and put into place effective strategies for the development of the Belize properties. This work is described with particularity in the Successor Receiver Second Report and the detailed billing statements, Exhibits 2, 3, 4 and 5, attached to the Ferzan Declaration. The Receiver submits the fees are reasonable in light of the services rendered, and that the fees and expenses requested should be awarded in their entirety. *See Federal Trade Commission v. Capital Acquisitions & Management Corp.*, 2005 U.S. Dist. LEXIS 18504 (N.D. Ill. August 26, 2005).

IV.    **THE ORDER GOVERNING INTERIM RECEIVERSHIP MANAGEMENT SHOULD BE MODIFIED TO PERMIT ALL CONSUMER COMMITTEE MEETINGS TO BE HELD REMOTELY**

Pursuant to the Order Governing Interim Receivership Management (Doc. 559), the Court created a Consumer Committee. Under that Order, the Consumer Committee is to meet monthly with the Receiver, and with the FTC if it chooses to participate. These monthly

meetings are to be held via teleconference or videoconference, except that the meetings are to be held in person once per quarter (Sections IV.A and IV.B of the Order Governing Interim Receivership Management).  As described in the Successor Receiver Second Report, at the start of the COVID-19 pandemic, Robb Evans instituted the practice of convening exclusively virtual Consumer Committee meetings to accommodate the health and safety interests of participants. In recognition of ongoing concerns, the successor Receiver has continued the practice of videoconference meetings for the Consumer Committee meetings held during the Second Reporting Period.

The Receiver requests that the Court formally modify the Order Governing Interim Receivership Management providing that all future Consumer Committee meetings may be conducted via teleconference or videoconference, and that the requirement of quarterly in-person meetings be eliminated.  This is a reasonable, non-substantive revision to the Order Governing Interim Receivership Management promoting not only health and safety concerns, but efficiency and economy for the Receiver and the receivership estate.

## V.    CONCLUSION

Based on the Motion, this Memorandum of Points and Authorities, the supporting declaration of Marc-Philip Ferzan, along with the exhibits attached thereto, it is respectfully requested that the Court grant the Motion in its entirety.

Dated:  May 2, 2022

By:  /s/ Gary Owen Caris
Gary Owen Caris (CA Bar No. 088918)
Admitted Pro Hac Vice 11/30/18
Barnes & Thornburg LLP
2029 Century Park East, Suite 300
Los Angeles, CA  90067
Telephone:       (310) 284-3880
Facsimile:        (310) 284-3894
Email:            gcaris@btlaw.com

By:  /s/ James E. Van Horn
     James E. Van Horn (Bar No. 29210)
     Barnes & Thornburg LLP
     1717 Pennsylvania Avenue, NW,
     Suite 500
     Washington, DC 20006
     Telephone:     (202) 289-1313
     Facsimile:     (202) 289-1330
     Email:     jvanhorn@btlaw.com

Attorneys for Receiver, Marc-Philip Ferzan of
Ankura Consulting Group, LLC

22546006v1