IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| *In re* **SANCTUARY BELIZE LITIGATION** | * * * * * * * * * * | Civil No. **PJM 18-3309** |

# MEMORANDUM OPINION

The Court has received a Motion to Intervene by Right under Fed. R. Civ. P. 24(a)(2) from a group of "fourteen individuals (plus one of those individuals' family-owned corporations) who collectively invested $1.95 million in Newport Land Group (NLG), an entity whose assets have been placed into the Receivership" in the present litigation. ECF No. 1316, ¶ 1. Movants[1] here have contemporaneously filed a Motion for Relief from Judgment under Rules 55(c) and 60(b), ECF No. 1317, to set aside, in part, the Court's earlier judgment against NLG, ECF Nos. 1020 and 1109, as well as the Court's order permitting the Receiver to take over NLG's assets, ECF No. 507. The Federal Trade Commission (FTC) opposes both Motions. For the reasons that follow, the Motions are **DENIED**.

## I.   BACKGROUND

As explained in the Court's prior Opinions, this case is an enforcement action brought by the FTC under Section 13(b) of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 53(b) and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarking Act"), 15

---

[1] Movants are Yu Lin, Quan Lin, Jamie Teng, Juliana Tengociang, Alfonso Kolb Jr., Jasmin Tengociang, Roel Pahl, Clarissa Tengonciang, Allan Prijoles, Mary Jane Prijoles, Darren Christian, Chan Martin, Julie Santos, David Heiman, and the Heartland Property Group, Inc.

1

U.S.C. §§ 6101-6108. *See* ECF Nos. 1020, 1109. The FTC alleged that Defendants engaged in a years-long scheme to defraud American consumers by selling investment property at "Sanctuary Belize," a supposed top-tier resort in Belize, Central America, that did not exist as advertised. The scheme was carried out through numerous shell companies and affiliated organizations, several of which operated out of the same office at 3333 Michelson Drive in Irvine, California. One of these companies was NLG.

NLG's purpose, say Movants, was to develop a real estate project in Costa Rica called Rancho del Mar. It is this Costa Rica project in which Movants say they sought to invest in when they gave their money to NLG. But in fact, NLG was part of the common enterprise of Sanctuary Belize (which the Court will refer to as "SBE"). NLG not only conducted business out of the Irvine, California office; when the premises was searched the Receiver found that SBE funds had been transferred to NLG for no apparent legitimate business purpose and that, moreover, SBE and NLG funds had been commingled.[2] At hearings in this case, the Receiver presented evidence of the interlocking relationships among NLG and SBE principals, including among others, Defendant Andris Pukke (who also claimed to be an NLG owner), and Defendants Rod Kazazi, Michael Santos, and Brandi Greenfield, as well as evidence of NLG's active involvement in SBE operations, including marketing Sanctuary Belize properties on NLG's website. Indeed, the prospectus of NLG submitted by Movants in connection with its present filing notes NLG's relationship with an entity described as "Buy International," which appears to be "Buy International, LLC," another Defendant in the present case.

---

[2] The Receiver also found that certain Defendants in this case diverted NLG funds intended for the Costa Rica project to yet another of those Defendants' projects, this one in the Bahamas. As of August 2020, neither of these projects had been completed.

Shortly after the FTC filed the instant case in October 2018, the same individuals who are Movants here filed suit in California against NLG and ten "Doe" defendants, seeking declaratory judgment and return of their funds based on theories of constructive trust, breach of contract, and unjust enrichment. *See* Complaint, *Santos et al. v. Newport Land Group, LLC et al.*, Case No. 30-2018-01031882-CV-BC-CJC (Cal. Sup. Ct. Nov. 13, 2018) (available at ECF No. 1323-1, Exhibit 6).

In the case before this Court, on May 14, 2019, the Receiver filed a Motion seeking approval to use NLG funds for general receivership purposes. ECF No. 435. Present Movants were served through their counsel in the California lawsuit, ECF No. 453-5, and Movant Darren Christian in fact responded to the Receiver to object. ECF No. 485.

On June 24, 2019, the Court approved the Receiver's takeover of NLG assets—approximately $3.8 million. *See* ECF No. 507. No objection or Motion to Intervene was filed in response to the Receiver's Motion or the Court's Order at that time. This Court's Order, it should be noted, was filed by Bank of America in the California action; thereafter, the Orange County Superior Court dismissed the California case with prejudice. *See* ECF No. 1323-1, Attachment 8. Movants here—who were Plaintiffs there—did not appeal.

Beginning January 21, 2020, the Court held a seventeen-day bench trial. In its August 28, 2020 Memorandum Opinion, which Movants (who were in no way involved in the trial) seek to challenge now, the Court found that SBE had violated the Section 5(a) of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45(a)[3] and the Telemarketing Sales Rules (TSR), 16 C.F.R. Part 310[4] in connection with the marketing and sale of real estate investments and related

---

[3] Section 5(a) of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce."

[4] The TSR prohibits sellers and telemarketers from misrepresenting in the sale of goods or services any material aspect of the goods or services or any material aspect of an investment opportunity, as well as prohibits any person from

services, and granted default judgment as to all individual Defendants and Corporate Defendants who were served with process but had not appeared, with the exception of NLG. *See* ECF No. 1020 at 178. The Court imposed a restitution award of $120.2 million against Defendants for violation of the FTC Act as well as a concurrent contempt sanction of $120.2 million against certain Defendants for violations of the TSR. ECF No. 1020 at 161; ECF No. 1109 at 2-3.

After trial concluded, present Movant David Heiman sought to challenge the Receiver's seizure of NLG's assets. Although the Court had found NLG to be part of SBE and therefore jointly and severally liable for violations of the FTC Act and the TSR, it nevertheless granted Heiman and the other NLG investors an additional opportunity to be heard regarding the inclusion of their investments in the Receivership. *See* Memorandum Opinion, ECF No. 1020 at 139-141. In response, the Court received eleven virtually identical submissions from other NLG investors. ECF No. 1032 (Court Order collecting investor submissions). These submissions argued that the NLG investors had sought to become limited investors in the Costa Rica project, had no control over NLG's funds, and did not intend for the funds to be tied up in the SBE enterprise – a possibility which the Court had already acknowledged. *See* ECF No. 1020 at 140. In its Second Memorandum Opinion, dated January 13, 2021, ECF No. 1109, which Movants also seek to challenge, the Court concluded that the NLG investors had failed to provide a persuasive reason to unfreeze NLG's assets, none of which had been held in trust, and declined to return Movants' investments, which in effect, would have provided the investors relief ahead of any Sanctuary Belize victims. ECF No. 1109 at 4. No NLG investor sought to intervene in this litigation or took any steps to challenge the

---

providing substantial assistance or support to any seller or telemarketer when the person knows or consciously avoids knowing that the seller or telemarketer is engaging in an act or practice that violates those prohibitions. *See* 16 C.F.R. § 310.3(a)-(d); 310.4. A violation of the TSR constitutes an unfair or deceptive practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). *See* 15 U.S.C. § 6102(c) and 15 U.S.C. § 57a(d)(3).

Court's ruling at that time. On the other hand, Defendants Usher, Baker, and Pukke filed notices of appeal to the Fourth Circuit. *See* ECF Nos. 1200, 1208, 1210.

Shortly thereafter, the FTC submitted a Proposed Redress Plan. ECF No. 1117. All interested parties, the NLG investors (Movants) included, had the opportunity to oppose or object to the FTC's proposed plan. While several consumers did object to the plan, *see, e.g.*, ECF Nos. 1141-48, the NLG investors did not. The Redress Plan remains under consideration by the Court.

On July 22, 2021, a group of Defendants, NLG included, did file a motion to vacate the Court's judgment. ECF No. 1267. The Court denied the Motion. ECF Nos. 1278, 1279. Certain SBE Defendants have appealed this denial as well. *See* ECF No. 1280.

Then, on November 12, 2021, Movants filed the present Motion to Intervene (ECF No. 1316), alongside their Motion for Relief from Judgment (ECF No. 1317). Movants allege that it was SBE Defendant Michael Santos, who has since settled with the FTC in this case, who sold them the purported investment property in Costa Rica and argue that they should be permitted to intervene in this case to challenge this Court's rulings that impacted NLG's assets and their investments. Movants argue, *inter alia*, that *AMG Cap. Mgmt., LLC v. Fed. Trade Comm'n*, 141 S. Ct. 1341 (2021), in which the Supreme Court held that the FTC may not seek monetary relief under its § 13(b) "permanent injunction" power, invalidates the Court's prior rulings in this case. Accordingly, they ask the Court to vacate its order permitting the Receiver to hold or to use NLG assets, ECF No. 507, its judgment against NLG in its August 28, 2020 Memorandum Opinion, ECF No. 1020, and Second Opinion, ECF No. 1109, and order that the Receiver to return to

Movants the $1.95 million they claim they invested in NLG. Movants also assert claims for constructive trust;[5] breach of contract;[6] and equitable relief against the Receiver.

The FTC opposes both Movants' Motions. It contends that the Court lacks jurisdiction to grant the motion to intervene and that, even if the Court had jurisdiction, Movants would fail to meet intervention requirements: their claims are unrelated to the facts at issue in this case and the motion is untimely. As for Movants' claims for relief from judgment under Rule 60(b), the FTC contends that the *AMG* case provides no basis for such relief. As for Movants' constructive trust and breach of contract claims, even if viable, the FTC argues that they have already had two opportunities to raise them and should not be given another. Movants, the FTC argues, "are a mix of insiders and consumers who had special access to Pukke and his cohorts before nonetheless choosing to invest in a Pukke-run development." They should not be permitted to "leap-frog" the victims of the Sanctuary Belize fraud.

The Court addresses the FTC arguments.

## II. ANALYSIS

### A. Jurisdiction

The Court begins with the FTC's contention that it lacks jurisdiction to entertain the present motions. Movants have not addressed this issue, but the Court agrees with the FTC.

The Fourth Circuit has made clear that ordinarily an appeal "divests a district court of jurisdiction to entertain an intervention motion." *Doe v. Public Citizen*, 749 F.3d 246, 258 (4th

---

[5] Movants' claim for constructive trust appears to proceed thus: It may be that NLG was part of the SBE, in which case NLG acquired the Movant's funds by fraud; the transfer of funds to NLG formed a constructive trust; SBE's fraudulent activity does not affect their constructive trust; Movants should be able to obtain their funds back from any third party—here, the Receiver. *See* ECF No. 1317-2 at 6-7.

[6] Movants argue that NLG anticipatorily breached its obligations to them when Defendant Kazazi failed to respond to Movants in 2018 when they began to inquire about the present suit; they then demanded a return of their funds; and then learned the Rancho del Mar project had been "called off." Therefore, say Movants, they are entitled to a return of their funds on the basis of contract. ECF No. 1317 at 8-9

Cir. 2014). *See also Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58, 103 S. Ct. 400, 74 L. Ed. 2d 225 (1982) (notice of appeal generally divests district court of jurisdiction). Here, the very judgments Movants seek to challenge are presently before the Fourth Circuit on appeal. NLG itself appears to be one of the appellants. *See* "Amended Notice of Appeal," ECF No. 1280. In this case, this Court continues to entertain motions related to the activities of the Receiver and to oversee the implementation of its judgments, including settlements with certain Defendants. But the Court does not retain jurisdiction to consider a Motion to Intervene with respect to a final judgment that is currently on appeal. *See, e.g.*, *Cawthorn v. Amalfi*, 35 F.4th 245 (4th Cir. 2022) (during period between notice of appeal of decision on motion to intervene, which is considered a final judgment for the purposes of appeal, and remand for reconsideration of that motion, district court lacked jurisdiction to consider any new motion to intervene). Lacking jurisdiction, the Court could end its inquiry here. But just so there is no question about how the Court views the Motion to Intervene, the Court is prepared to share its thinking as to the Motions.

### B. Motion to Intervene

Under Federal Rule of Civil Procedure 24(a)(2), dealing with intervention as a matter of right, a district court must permit intervention if the proposed intervenor can demonstrate: (1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that no existing party adequately represents the proposed intervenor's interest. *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013). "Under Rule 24(a)(2), once an intervenor has satisfied the three criteria for mandatory intervention, the burden of persuasion shifts such that intervention is mandatory, 'unless the court is persuaded that the representation is in fact adequate.'" *Maryland Restorative Just. Initiative v. Hogan*, 316 F.R.D. 106, 111 (D. Md. 2016) (quoting § 1909 Intervention under the 1966 Amended Rule—Adequacy of Representation, 7C

Fed. Prac. & Proc. Civ. § 1909 (3d ed.)). Additionally, "[a] party seeking to intervene under either [Rule] 24(a) or 24(b) may do so only upon the filing of a 'timely motion.'" *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014); *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999) ("timeliness is a 'cardinal consideration' of whether to permit intervention").

### a. Timeliness

Movants recognize that timeliness is a threshold issue when it comes to a motion to intervene. *See, e.g., Houston General Ins. Co.*, 193 F.3d at 839 (beginning 24(a) analysis with consideration of timeliness). To determine whether a motion to intervene is timely, a trial court assesses three factors: "first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt*, 758 F.3d at 591 (citing *Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989)). "District courts are accorded broad discretion in deciding the timeliness of a motion to intervene after assessing all the relevant circumstances." *Scott v. Bond*, 734 F. App'x 188, 191 (4th Cir. 2018), citing *Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 365–66, 93 S. Ct. 2591, 37 L. Ed. 2d 648 (1973); *Gould*, 883 F.2d at 286.

Movants argue that they have met the timeliness requirement, considering "all the circumstances," *National Ass'n for Advancement of Colored People*, 413 U.S. at 366. They concede that in an "ordinary case," the progress of the case—here, past final judgment—may weigh against a would-be intervenor, but they believe this case is different because the Court's Second Memorandum Opinion of August 28, 2020 "expressly left open the possibility of reconsidering [the] judgment in the event that that the Supreme Court" overturned *F.T.C. v. Ross*, 743 F.3d 886 (4th Cir. 2014). ECF No. 1316 at 4. In *AMG*, Movants say, the Supreme Court did just that when it held that § 13(b) of the FTC Act does not provide an avenue for the FTC to obtain

8

equitable monetary relief. In Movant's view, this ruling "g[ave] rise to the opportunity for reconsideration that the Court contemplated." Mot. 4. Under these unusual circumstances, say Movants, the timeliness factor cuts in their favor. As to the second factor, prejudice from potential delay, Movants contend no prejudice would occur because, in their view, an order that the FTC return their funds would not prejudice the FTC now any more than it would have earlier. Finally, as to the reason for their tardiness, Movants contend that they acted "as quickly as practicable" following the *AMG* decision to secure counsel and file their motion also explaining their tardiness because until recently they lacked counsel—in other words, they did not, having no counsel, know they could file a motion to intervene.

      The FTC suggests that Movants fail the timeliness factor in multiple ways. First, says the FTC, the suit has clearly progressed to a point where intervention is not timely. Trial occurred over two years ago, final judgment has been entered and has been appealed to the Fourth Circuit. The Supreme Court's decision in *AMG*, moreover, does not necessarily impact the Court's judgment, and should not, therefore, enable Movants to restart the clock in measuring progress of the case for timeliness purposes. Second, the prejudice to the FTC would be substantial: Permitting intervention would require the FTC to gin up an untold number of pleadings, leading potentially to further discovery. It would also prejudice the victims of SBE, who await a conclusion of this case and redress. Third, the FTC suggests that Movant's excuses for their tardiness are meritless: even if *AMG* did justify a challenge to the Court's judgment, the Motion to Intervene was not filed for over half a year after that decision was rendered. Moreover, Movants' supposed lack of counsel[7] cannot does not excuse their failure to seek to intervene sooner.

---

[7] The FTC points out that Movants did have counsel in the California suit.

The Court agrees with the FTC. The case has progressed about as far as any case could. Trial occurred two years ago. Final judgment has been entered. "Although entry of final judgment is not an absolute bar to filing a motion to intervene, the authorities note that: 'There is considerable reluctance on the part of the courts to allow intervention after the action has gone to judgment and a strong showing will be required of the applicant.'" *Houston General Ins. Co.*, 193 F.3d at 840, citing 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1916, at 444-45 (West 1986) (footnotes omitted). It is clear, based on the filing of the California lawsuit and the submissions to this Court, that the NLG investors were well aware of the present action and could have sought to intervene at various points earlier in the litigation. *See United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004) ("A party must intervene when he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation") (quotation omitted). *Compare Scott*, 734 F. App'x at 191 (affirming district court denial of motion to intervene as untimely where proposed intervenor knew of case since November 2015, chose to pursue separate state court case, and then sought to intervene to block settlement in August 2017). Movants had every chance to seek to intervene up to trial, and did not seek to do so; indeed, when Movants sought to participate after trial, the Court granted them leave. And at that time, the Court considered the claims of these individuals and rejected the proposition that their investments in NLG should not be subject to the Receivership. Still, Movants did not seek to intervene.

To put it another way: the ship has sailed.[8] *See, e.g., Gould*, 883 F.2d at 286 (motion to intervene filed two years after the initial complaint and over three months after the filing of proposed settlement support denial of intervention for lack of timeliness); *Scott*, 734 Fed. Appx.

---

[8] Indeed, the FTC says that the funds Movants seek to recoup have already been spent by the Receiver. *See* Resp. at 16.

at 191-192 (two year delay between learning of suit and seeking to intervene only after proposed settlement filed supplied strong reasons for district court to question timeliness of motion); *Boothe v. Northstar Realty Fin. Corp.*, No. CV JKB-16-3742, 2019 WL 587419, at *3 (D. Md. Feb. 13, 2019), *aff'd sub nom. Bumgardner v. Boothe*, 798 F. App'x 770 (4th Cir. 2020) (intervention not timely where intervenors filed motion after preliminary settlement, judgment, and termination of case). *Compare United Airlines, Inc. v. McDonald*, 432 U.S. 385, 97 S. Ct. 2464, 53 L. Ed. 2d 423 (1977) (putative class member's post-judgment motion to intervene to appeal denial of class certification timely where filed within time permitted for appeal; intervention prior to entry of final judgment would have served no purpose). The Court's judgment is now before the Fourth Circuit, edging closer to final disposition of this case. *See Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001), *rev'd sub nom. Devlin v. Scardelletti*, 536 U.S. 1, 122 S. Ct. 2005, 153 L. Ed. 2d 27 (2002); *Alt*, 758 F.3d at 591 (affirming trial court denial of motion to intervene due to lack of timeliness where proceedings had progressed through motion to dismiss and were in the midst of summary judgment briefing; "court was reasonably reluctant to arrest the momentum of the lawsuit so near to its final resolution"). It is very late in the day. Indeed, "filing motions to intervene during the pendency of an appeal of the same issue would result in the very 'multiplicity of activity which Rule 23 was designed to avoid.'" *Boothe*, 2019 WL 587419, at *4, citing *Parker v. Crown, Cork & Seal Co.*, 677 F.2d 391, 394 n.4 (4th Cir. 1982), *aff'd,* 462 U.S. 345, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983).

Moreover, Movants misapprehend the Court's acknowledgment that Supreme Court's decision in *AMG* could impact Defendants' liability for restitution, an observation contained in a footnote in its August 28, 2020 Opinion. ECF No. 1020 at 28, n. 20. The Court stated that it might have to "determine the amount Defendants are liable for on remand," Memorandum Opinion, ECF

11

No. 1020 at 28 n.20. The Court was simply contemplating the possibility of a limited re-evaluation of liability for restitution purposes <u>on remand</u>, depending on how *AMG*, and any appeal of the present case might turn out. This acknowledgement in no way, as Movants seem to argue, invites Movants to "invoke the reconsideration of the Court's judgment" and essentially restart the clock post-judgment for timeliness purposes as part of their motion to intervene. Moreover, Movants' argument further demonstrates exactly why intervention must be denied. They ask the Court to consider some of the very issues that are under consideration on appeal at this very moment. How the Fourth Circuit will consider the effect of *AMG* on this case remains to be seen. As the FTC points out, the Fourth Circuit has made clear that a "decisional change in the law subsequent to the issuance of a final judgment, especially, as here, where the earlier judgment is neither res judicata nor provides collateral estoppel, does not provide a sufficient basis for vacating the judgment under Rule 60(b)(5)." *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46 (4th Cir. 1993). Finally, the Court notes that Movants filed their Motion over <u>six months</u> after *AMG* came out, another nail in the coffin for their timeliness argument. *Compare Boothe*, 2019 WL 587419, at *4 (assuming arguendo press release constituted change in circumstances, intervenors did not act for four more months).

As for prejudice, Movants' argument that there would be no prejudice to the FTC should they be allowed to intervene now, as opposed to earlier, because the FTC can simply return the funds, misunderstands the inquiry. The prejudice inquiry does not ask whether there is more prejudice intervening now compared to intervening earlier, but asks what the prejudice would be, full stop. Here, the FTC clearly has the better argument that the prejudice would be substantial. As the FTC points out, Movants misapprehend intervention as a tool to simply challenge a judgment under Fed. R. Civ. P. 60(b)(5), a motion that is available only after a final judgment.

Movants, should they be permitted to intervene, would be entitled to file pleadings. It is possible discovery would need to be reopened. *See, e.g., Scott*, 734 Fed. Appx. at 192 (noting that were intervention granted, intervenor could have pursued additional discovery and opposed any open motions, thereby delaying the litigation substantially). Such an undertaking, years after trial, would surely prejudice the FTC. *See Gould*, 883 F.2d at 287 (prejudice weighs against intervention where it would cause "substantial additional litigation"). *Compare Gottlieb v. Lincoln Nat'l. Life Ins. Co.*, 388 F. Supp. 2d 574, 578 (D. Md. 2005) (granting intervention of right because "delay in seeking to intervene is minor and has not prejudiced [existing parties] as this matter is in its early stages"). Intervention would also prejudice the victims of SBE, for whom the length of this litigation, should the FTC ultimately prevail, delays the redress they may obtain, and even eats away at the victims' potential share of the Receivership funds. *See Gould*, 883 F.2d at 286.

Finally, as to the proffered reasons for delay in seeking intervention, Movants' serve up wholly inadequate excuses. A "delay in filing might be justified if a person never received notice of a class action implicating his interests… or if there had been a substantial 'change of circumstances' of the case.'" *Scott*, 734 Fed. Appx. at 192 (citations omitted). But that is hardly the case here. As indicated, Movants had every opportunity to intervene sooner and understood that NLG, in which they had invested, was impacted by this case. *See Sewell v. Int'l Longshoremen's Ass'n, Loc. No. 333*, No. CIV. SKG-12-00044, 2013 WL 6992150, at *2 (D. Md. Oct. 29, 2013), *aff'd sub nom. Warch v. Int'l Longshoremen's Ass'n, Loc. 333*, 570 F. App'x 314 (4th Cir. 2014) ("A post-judgment motion to intervene 'will usually be denied where a clear opportunity for pre-judgment intervention was not taken'"), *citing Associated Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248, 1257 (D.C. Cir. 1999). Their supposed lack of counsel cannot excuse the delay. Were that the case, all would-be intervenors lacking counsel would be

13

excused from failing to intervene sooner, obliterating the timeliness requirement. The *AMG* decision, which may or may not impact one element of this case, namely, restitution (*e.g.*, as opposed to injunctive relief), also does not excuse Movants' lack of action for years prior.[9] *Compare Alt*, 758 F.3d at 591 (affirming trial court denial of intervention; proposed intervenors aware of suit, acknowledged monitored progress and did not intervene until Court's decision on motion to dismiss did not go as expected). Movants' claims ultimately come back to their belief that NLG's assets, in the amount they say they invested, should not be subject to the Receivership—a claim which will not seem to be affected by *AMG*. *See Gould*, 883 F.2d at 286 (intervenors did not contend intervention at earlier point would have served no purpose). Indeed, Movants admit that they did not seek to intervene in this case because they believed it was more strategic to pursue the California litigation. This explanation is also unavailing. *See Alt*, 758 F.3d at 591 (proposed intervenor "admits that it gambled and lost in the execution of its litigation strategy. Such deliberate forbearance understandably engenders little sympathy."). *Accord Scott*, 734 Fed. Appx. at 192.

Limiting opportunities to intervene is essential to ensuring that cases—particularly complex cases such this—proceed in reasonable manner, that judgments remain final, and that the time of all parties involved is respected. *See Alt*, 758 F.3d at 591. Indeed, "a movant's failure to seek intervention in a timely manner is sufficient to justify denial of such a motion." *Scott*, 734

---

[9] As the Court has already explained *AMG* does not *ipso facto* render the judgments in this case void. *In re Sanctuary Belize Litig.*, 528 F. Supp. 3d 390 (D. Md. 2021); ECF No. 1191. In *AMG*, the Supreme Court held that the FTC may no longer seek monetary judgments under Section 13 of the FTCA. In an Opinion addressing numerous post judgment motions that argued *AMG* nullified the entire case, this Court clarified that "several matters are clearly unaffected by *AMG Capital* or are left unresolved in its wake, including among others (1) the Court's substantive findings of violations of both the [FTC Act] and the [TSR]; (2) the validity of the injunctive relief ordered by the Court; (3) the contempt damages assessed against Defendants Pukke, Baker, and Usher; (5) whether duly defaulted corporate defendants may at this juncture seek to vacate judgments entered against them; and (6) whether the record of fraud and violations of the FTC Act found in this case would justify an asset freeze pending further administrative proceedings at the FTC. While AMG Capital may have left vulnerable monetary judgments entered strictly pursuant to Section 13(b) of the FTC Act, it is likely that at least some of the monetary judgments as well as Court-ordered equitable relief in this case will remain viable." ECF No. 1262 at 5.

Fed. Appx. at 191, *citing Gould*, 883 F.2d at 286. *See also id*. at 193 n. 7 (not reaching other prongs of Rule 24 analysis because untimely request sufficient basis for district court to deny intervention); *Alt Am. Farm Bureau v. United States Riverkeeper*, No. 2:12-CV-42, 2013 WL 12133923, at *2–3 (N.D.W. Va. July 30, 2013), *aff'd sub nom. Alt v. U.S. E.P.A.*, 758 F.3d 588 (4th Cir. 2014)

The present Motion is, clearly, not timely.[10] On this basis alone, the Motion to Intervene (ECF No. 1316) is DENIED.

### b. Interest in the Subject of the Action

If there were any doubt as to the lack of timeliness of this Motion, its denial is doubly justified when the Court looks to the first substantive prong for intervention: that Movants must "claim[] an interest relating to the property or transaction that is subject to the action." Fed. R. Civ. P. 24(a)(2).

Movants' claimed interest is their stated $1.95 million investment in NLG, which they say was held in a specific account at Bank of America, which became part of the Receivership. That account had a balance of some $3.7 million before the funds were transferred to the Receiver. In Movants' view, because they invested the $1.95 million in NLG, which is now in the hands of the Receiver, they have satisfied the requirement for a direct and substantial interest in the property subject to the action. As Movants suggest in their Motion to Set Aside Judgment, ECF No. 1317, they "seek a seat at the table when this Court determines the extent—if any—of NLG's liability post-*AMG*, and thus the extent to which NLG's liability impairs Movants' right to return of their funds." ECF No. 1317 at 14.

---

[10] The FTC also argues that Movants would fail to meet the requirements for permissive intervention under Fed. R. Civ. P. 24(b)(3). Movants do not argue they would meet the requirements for permissive intervention. Even if they did, since timeliness is also required for permissive intervention as well, that argument would also fail. *See National Ass'n for Advancement of Colored People*, 413 U.S. at 365–66.

The FTC argues that Movant's claims are unrelated to the subject of the action. They are, "at best," potential creditors with some claim against NLG related to a purported development in Costa Rica that is not within the scope of this case. An interest in assets as a potential creditor, the FTC argues, is not a sufficient basis to intervene. *See Gould*, 883 F.2d at 285. The Court agrees.

As the Court explained during trial when Movant Heiman testified, the investments in the Costa Rica project are "irrelevant, frankly, to this lawsuit." ECF No. 153-1 at 100. In *Gould*, 883 F.2d 281, the Fourth Circuit analyzed a similar line of thinking. There, the Fourth Circuit considered the district court's denial of a motion to intervene in a securities fraud class action by bondholders of the defendant company. *Gould*, 883 F.2d at 283. The would-be intervenors argued, in essence, that as bondholders they had an interest in the defendant's assets superior to that of the stockholder plaintiffs and that they had potential judgment claims against defendant, payment of which would be impaired if the defendant settled with plaintiffs. *Id.* at 285. The court found the intervenors lacked an interest in the suit under Federal Rule of Civil Procedure 24(a) because, for one, the settlement fund represented damages (not stock distribution), meaning that the would-be intervenors did not have the superior rights they asserted. That the settlement there would deplete the defendant's assets and threaten eventual recovery by the would-be intervenors was deemed insufficient to create an interest under Rule 24. An interest in a party's assets "based on a speculative recovery in an unrelated civil action does not… satisfy Rule 24's" first prong. *Gould*, 883 F.2d at 285. If it did, "every proposed settlement would be subject to derailment as long as a potential judgment creditor decided to intervene." *Id.* at 285, citation omitted. The court explained: "In a sense, every company's stockholders, bondholders, directors and employees have a stake in the outcome of any litigation involving the company, but this alone is insufficient to imbue them with the degree of 'interest' required for Rule 24(a) intervention." *Id.* at 285.

The same reasoning applies here. Movants are potential creditors of NLG. The Receiver's seizure of NLG's assets only implicates Movants to the extent that it affect their ability to recover from NLG themselves. In other words, Movants' beef is really with NLG, not the FTC in its case against SBE. That Movants may or may not have been wronged by NLG does not give them the right to cut in line ahead of the victims of SBE. *See Alisal Water Corp.*, 370 F.3d at 920; *Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998). Accordingly, the first prong for intervention—interest— is not met.

In sum, although the Court denies Movants' intervention of right as untimely, it does not do so on that ground alone. Turning to the substantive elements, the Court concludes that Movants fail to establish interest too.  As all prongs must be met for intervention as of right, the result is already clear: The Motion to Intervene, ECF No. 1316, is DENIED.

### C.  Motion for Relief from Judgment

Having found that Movants have not satisfied the grounds for intervention of right means they are not parties to this case and cannot challenge the Court's judgments. Their Motion for Relief for Judgment[11] pursuant to Rule 60(b) (ECF No. 1317), therefore, must also be DENIED. *See Gould*, 883 F.2d at 284 (resolution of motion to intervene completely dispositive, declining to reach would-be intervenor's challenge to settlement); *Boothe*, 2019 WL 587419, at *10 ("Because the Court denies intervention, it must deny relief from the judgment as well").

---

[11] Movants premise their Motion on Rule 60(b), which permits relief from judgment where there is a subsequent change of law. They argue that the *AMG* case is such a change of law. They also argue, repeating their argument from their Motion to Intervene, that the Court expressly indicated it would reconsider its judgment if the *AMG* decision came out as it eventually did. They contend that they are "innocent investors who amply show good cause both for their failure to litigate their right to return of their funds previously and for their entitlement to return of their funds now." Mot. to Set Aside Judgment, ECF No. 1317. For all these reasons, Movants believe the Court should set aside its earlier judgments as to the NLG assets, and further, order the Receiver to return $1.95 million to Movants. The Court is unpersuaded.

### III. CONCLUSION

For the foregoing reasons, Motion to Intervene, ECF No. 1316, and Motion for Relief from Judgment, ECF No. 1317, are **DENIED**.

A separate order, ECF No. 1350, has already **ISSUED**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

July 7, 2022