IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| *In re* SANCTUARY BELIZE LITIGATION | No: 18-cv-3309-PJM |

**FEDERAL TRADE COMMISSION'S CONSOLIDATED RESPONSE IN OPPOSITION TO THE PUKKE DEFENDANTS' (1) OPPOSITION TO RECEIVER'S PROPOSED ORDER IMPLEMENTING NEXT PHASE OF CONSUMER REDRESS (DE 1434); AND (2) MOTION FOR RETURN OF ASSETS (DE 1435)**

The Federal Trade Commission ("FTC") urges the Court to (1) implement the next phase of the consumer redress process as soon as possible and (2) deny the Pukke Defendants'[1] motion demanding return of receivership assets. The Pukke Defendants are just wrong when claiming *AMG*[2] or the Fourth Circuit's ruling (DE 1377-1) require assets be returned to them. Instead, the injunctions against the Pukke Defendants require the Receiver to control the assets. The Court's contempt authority supports maintaining the Receivership and using it to liquidate the Belizean land for the benefit of consumers.

Importantly, the Court does not need to address all these issues before implementing the next phase of the redress process. As the Court stated at the April 19, 2023, status conference, it could enter the Receiver's order and then address the merits (or lack thereof) of the Pukke Defendants' positions later.

---

[1] Andris Pukke, Peter Baker, John Usher, Global Property Alliance Inc., Sittee River Wildlife Reserve, Buy Belize LLC, Buy International Inc., Foundation Development Management Inc., Eco Futures Development, Eco-Futures Belize Limited, Power Haus Marketing, Sanctuary Belize Property Owners' Association, and the Estate of John Pukke. *See* DE 1391 (these Defendants adopting the "Pukke Defendants" moniker).

[2] *AMG Capital Mgmt. LLC v. FTC*, 141 S. Ct. 1341 (2021).

The FTC has also already responded to each of the Pukke Defendants' arguments in previous filings, including DE 1390, 1394, 1404, 1408, 1422, and 1425-1. To the extent not directly addressed below, the FTC incorporates its previous arguments.

**I.      BACKGROUND:  The Pukke Defendants do not dispute key issues.**

    **A.      The Pukke Defendants agree they cannot lawfully operate Sanctuary Belize or Kanantik.**

The Court has prohibited each of the Pukke Defendants from having any further involvement with Sanctuary Belize or Kanantik and has further prohibited all the Pukke Defendants other than Baker and Usher from marketing or selling any real estate goods or services, which would include Sanctuary Belize and Kanantik. *See* Default Order (DE 1112), Section I; De Novo Order (DE 1194), Section I.  The Pukke Defendants have agreed, twice, using "Sanctuary Belize" as a catchall for all the Belizean land at issue:

    (1)    "Those injunctions prohibit the Representative Entities[3] from involvement in Sanctuary Belize." DE 1434 at 3.

    (2)    "The third [principal purpose of the Pukke Defendants' proposed order] is to implement the Court's injunctions prohibiting the [Pukke Defendants] from having any further involvement with Sanctuary Belize[.]" DE 1417 at 2.

    **B.      The Pukke Defendants agree the Belizean land should be sold to satisfy the monetary contempt relief.**

They have agreed at least twice:

    (1)    "That means the Represented Entities have no choice but to market and sell their Sanctuary Belize properties. The Receiver, whose role as an aide

---

[3] By this phrase the Pukke Defendants mean all the defaulters other than John Usher.

        to the Court in enforcing its injunctions was affirmed by the Fourth Circuit (*Pukke*. 53 F.4th at 107-108), may review those sales to ensure that the proceeds go to the FTC for distribution to consumers. Those proceeds would be credited toward the $120.2 million owed by the Represented Individuals under the Contempt Order." DE 1434 at 3.

    (2)    Requesting that the Court "order[] them to sell all Sanctuary Belize properties returned to them and apply[] the proceeds to the net amounts they owe." DE 1417 at 2.

## II.    ARGUMENT

As a result, there are only three disputes: (1) whether assets should be returned to the Pukke Defendants; (2) who should market and liquidate assets for the benefit of consumers; and (3) whether Pukke's and Baker's passports should be returned before they have taken steps to satisfy their obligations. The answers are easy. The Receiver should maintain possession of the assets. The Receiver should liquidate those assets to benefit consumers. Pukke and Baker should not be given their passports unless and until they have satisfied their financial obligations or all assets have been transferred and liquidated, as originally ordered by the Court (DE 1194, Section V.E.).

###     A.    The Receiver must retain possession of the Belizean land.

The assets, which do not consist of anything of substance beyond the Belizean land,[4] must remain with the Receiver. As the Pukke Defendants have recognized, they are legally prohibited from managing these assets. Likewise, the Fourth Circuit affirmed the receivership, stating:

---

[4] There is some cash in the receivership, but the Pukke Defendants agree they are not entitled to it. *See* DE 1434 at 1.

> [T]he appointment of the receiver was ancillary to **effectuating the permanent injunctions imposed under the Sanctuary Belize judgment**. The receiver was the district court's means of ensuring that further FTC Act and TSR violations would not occur and that Pukke would not continue to profit from these deceptions.

DE 1377-1 at 40 (emphasis added). Furthermore, the Court has the contempt authority to freeze and create receiverships over assets controlled, directly or directly, by contemnors. It does not matter if the assets are not legally held by the contemnors so long as they control them. *See, e.g.*, *See, e.g.*, *SEC v. Hickey*, 322 F.3d 1123, 1131 (9th Cir. 2003) (rejecting arguments that the contemnor could shield a company from a disgorgement and contempt order by putting a "nominal owner" in place: "The district court in this case was authorized to freeze the assets of the Brokerage, so long as doing so was necessary to protect and give life to the disgorgement and contempt orders already entered against Hickey."); *FTC v. Gill*, 183 F. Supp. 2d 1171, 1186 & 1190 (C.D. Cal. 2001) (appointing receiver to "wind down and terminate the corporation" that contemnor used to violate the order and ordering contemnor to turnover assets to the FTC). *See also* DE 1404 at 12-16 (detailing the Court's contempt authority and collecting additional cases and examples, such as the filings and unpublished rulings in *FTC v. Trudeau* where just such a receivership was created to marshal assets controlled by a contemnor).

The Pukke Defendants continue to miscite *FTC v. On Point Capital Partners*, 17 F.4th 1066 (11th Cir. 2021), even though this case actually supports the FTC's position. While the *On Point* court dissolved the asset freeze and receivership to the extent it was based on Section 13(b) of the FTC Act, it explicitly carved out the district court's ability to impose the same relief based on its contempt authority, which the district court had already done. *See On Point*, 17 F.4th at 1078; *FTC v. Acquinity Interactive LLC*, 2021 WL 3603594, *6-9 (S.D. Fla. Aug. 13, 2021). *See also* DE 1408 at 5 (addressing this same argument from defendants); DE 1372 at 1-2 (same).

4

### B. The Receiver should liquidate assets for the benefit of consumers.

The Pukke Defendants should not be involved in liquidating assets for the benefit of consumers—people they unapologetically defrauded and victimized. Because there is no dispute that the assets are to be liquidated and then turned over to consumers, it only makes sense for the Receiver—a court-appointed fiduciary—to accomplish this task. The Pukke Defendants, on the other hand, have a history of fraudulent behavior and cannot be trusted. DE 1020 at 148 (Pukke first convicted of fraud in 1996); *id.* at 22 (Pukke pled guilty to obstruction of justice for concealing assets); *id.* at 166-67 (detailing Pukke's and Baker's prior history of concealing the Belizean land); *id.* at 95 (Pukke diverted $18 million from the development); *id.* at 104 (Baker likewise diverted assets).[5] This Court found they ran a massive fraud, taking $120.2 million from consumers, a scheme the Fourth Circuit characterized as "dishonest to the core." DE 1377-1 at 35. The Pukke Defendants should not be given another opportunity to siphon funds away from consumers, particularly because that appears to their goal. *See* DE 1404-1 at 8 (Pukke's counsel explaining that if the assets are returned they can be used to pay their fees: "But, Peter, in response to your question, the company should now have money to hire lawyers."). The injunctions also prohibit them from selling Sanctuary Belize or Kanantik. DE 1112, Section I; DE 1194 Section I.

The FTC, therefore, urges the Court to enter the Receiver's proposed order empowering it to begin the process of selling the Belizean land assets (with the FTC's proposed revisions, DE 1433). In doing so, the Court does not need to engage with the Pukke Defendants' arguments about how and when they will receive credits against their monetary obligations. As the FTC has previously detailed, the Pukke Defendants are nowhere near satisfying either their contempt

---

[5] More recently, Pukke has been indicted for diverting Sanctuary Belize assets for his personal benefit. The indictment is Attachment 1.

sanctions or, in the case of Pukke, his *AmeriDebt* judgment. *See* DE 1422 at 4-5 (the contemnors owe $120 million and Pukke owes an additional $340 million). The Receiver's expenses do not reduce their monetary obligations. The Contempt Order specifies that they only get credit for money "transfer[red] to the FTC" or "distributed to consumers[.]" DE 1113 ¶ 4. It also logically makes no sense to give them credit for Receivership expenses—if the Pukke Defendants controlled the land, they would not get credit for maintenance or sales costs. They would only get credit for the amounts ultimately paid to the FTC. Nonetheless, the Court does not need to decide this issue now. Even if Defendants were to receive credit for the full $44.5 million marshalled or otherwise placed in the Receivership, which they decidedly should not, this sum does not come close to satisfying their obligations. *See* DE 1412 at 21 (ECF pagination) (detailing Receiver's recoveries).

   **C. The Receiver should retain Pukke's and Baker's passports.**

The Court should not return Pukke's and Baker's passports. The issue is not ripe for Pukke because he is prohibited from possessing a passport while his criminal case is pending. DE 1425-1 at 3. For Baker, because he is still contesting the Receiver's authority over the Belizean land and has previously stated he would return to Belize given the opportunity,[6] returning the passport will eliminate the Court's ability to compel Baker's compliance and would give Baker the opportunity to interfere with the land while in Belize. *See* DE 1377-1 at 42-43 (writs *ne exeat* appropriate because Pukke and Baker "evinced their ability to leave the country"). Because the Court has broad authority to enforce contempt sanctions,[7] there is no

---

[6] DE 967 at 192, ¶ 841 (FTC's Proposed Findings of Fact, collecting citations).
[7] DE 1404 at 12 (collecting cases regarding court's authority to issue equitable orders to enforce contempt sanctions). A district court has broad discretion in using its contempt powers to assure compliance with its orders. *See Shillitani v. United States*, 384 U.S. 364, 370 (1966).

reason to return Pukke's and Baker's passports.  DE 1377-1 at 423-43 (Fourth Circuit affirming the Court's writs *ne exeat*).

### III.    CONCLUSION

So that consumers can begin to receive redress, the Court should enter the Receiver's proposed order with the FTC's minor revisions, *see* DE 1433, and deny the Pukke Defendant's motion to return assets.

Dated: May 11, 2023

Respectfully Submitted,

/s/ Benjamin J. Theisman
Jonathan Cohen (jcohen2@ftc.gov)
Benjamin J. Theisman (btheisman@ftc.gov)
Christopher J. Erickson (cerickson@ftc.gov)
Federal Trade Commission
600 Pennsylvania Ave., N.W., CC-9528
Washington, DC 20580
202-326-2551 (Cohen); -2223 (Theisman); -3167 (Erickson)

*Counsel for the Federal Trade Commission*

**Certificate of Service**

I hereby certify that on May 11, 2023, I caused to be served the foregoing, and all related documents, through the Court's electronic filing system ("ECF") and otherwise on the following people and entities by email at the email addresses provided:

Gary Caris and James E. Van Horn, counsel for the Receiver, by ECF or at gcaris@btlaw.com and jvanhorn@btlaw.com;

John B. Williams, by ECF or at jbwilliams@williamslopatto.com, counsel for Defendants;

Neil H. Koslowe, by ECF or at nkoslowe@potomaclaw.com, counsel for Defendants;

Shon Hopwood and Kyle Singhal, by ECF or at shon@hopwoodsinghal.com and kyle@hopwoodsinghal.com, counsel for proposed intervenors

/s/ *Benjamin J. Theisman*

# Attachment 1

(Indictment from *United States v. Pukke*, 23-cr-168 (S.D.N.Y. 2023), unsealed on April 5, 2023)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    v.

ANDRIS PUKKE,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SEALED INDICTMENT

23 Cr. \_\_\_\_\_ ( )

23 CRIM 168

## COUNT ONE

### (Wire Fraud)

The Grand Jury charges:

**Overview**

1. At all times relevant to this Indictment, ANDRIS PUKKE, the defendant, a resident of Newport Beach, California, directed and controlled Sanctuary Belize, a real estate project for a vacation and retirement community under development in Belize that marketed and sold residential lots primarily to U.S. residents, including residents of the Southern District of New York. According to promotional materials, Belize was "undergoing an unprecedented land rush" and that "[t]here has never been a better time to invest in Belizean property." These promotional materials also represented, in substance and in part, that Sanctuary Belize, when finished, would be minutes away from a proposed international airport and hospital, and would include a marina, a wildlife reserve, a beach club, and an equestrian center, among other amenities. Investors could purchase or finance lots in Sanctuary Belize on which they could construct homes once the infrastructure, such as roads and electricity, was built out by Sanctuary Belize.

2. ANDRIS PUKKE, the defendant, and others developed and sold residential lots in

Sanctuary Belize through several entities, including Buy Belize; Buy International; Global Property Alliance; Eco-Futures Development; and Foundation Development Management (together, the "Sanctuary Belize Entities").

3. ANDRIS PUKKE, the defendant, and Sanctuary Belize's salespeople acting at PUKKE's direction falsely represented to potential lot buyers that: (i) Sanctuary Belize and the Sanctuary Belize Entities were free of debt; (ii) the development of Sanctuary Belize's infrastructure would be financed with the proceeds of lot sales; and (iii) all income from lot sales would go to development of the infrastructure for Sanctuary Belize. The salespeople further represented to potential lot buyers that investments in residential lots in Sanctuary Belize carried less risk than investments in other real estate developments that were funded, at least in part, by debt. In fact, as PUKKE knew, Sanctuary Belize had more than $12 million in debt. Further, PUKKE misappropriated millions of dollars of lot sale income as described herein.

### The Scheme to Misappropriate Funds from Sanctuary Belize

4. From in or about 2011 through in or about 2018, ANDRIS PUKKE, the defendant, misappropriated more than $13 million of the approximately $124 million of proceeds of residential lot sales received by the Sanctuary Belize Entities. Rather than such funds being used to finance the development of Sanctuary Belize's infrastructure, as had been represented to lot buyers by Sanctuary Belize's salespeople, PUKKE used these funds for his personal benefit, including, but not limited to, the renovation of a home in Newport Beach, California; investments in various entities unrelated to Sanctuary Belize that PUKKE made in his wife's name; investments in other, unrelated real estate developments and other entities; repayment of personal debt; transfers to his father's estate, which PUKKE controlled; and payments to family members.

Attachment 1

5. ANDRIS PUKKE, the defendant, misappropriated funds from the Sanctuary Belize Entities by, among other methods, directing Sanctuary Belize employees to send funds by wire transfer to recipients designated by PUKKE. These payments for PUKKE's personal benefit were falsely concealed on the books and records of the Sanctuary Belize Entities as business expenses, including but not limited to professional fees, legal fees, consulting fees, loans receivable, and online advertising expenses.

## STATUTORY ALLEGATIONS

6. From in or about 2011 through in or about November 2018, in the Southern District of New York and elsewhere, ANDRIS PUKKE, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, PUKKE engaged in a scheme to obtain money from lot purchasers in Sanctuary Belize through false statements and misrepresentations regarding Sanctuary Belize's lack of debt and the use of the income from lot sales, and to misappropriate money from the Sanctuary Belize Entities, which scheme involved interstate communications in and out of the Southern District of New York.

(Title 18, United States Code, Sections 1343 and 2.)

Attachment 1

## COUNT TWO

### (Unlawful Monetary Transactions)

The Grand Jury further charges:

7. The allegations set forth in paragraphs 1 through 5 are repeated and realleged as if set forth fully herein.

8. From in or about March 2018 through in or about October 2018, in the Southern District of New York and elsewhere, ANDRIS PUKKE, the defendant, knowingly engaged and attempted to engage in monetary transactions in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, PUKKE made multiple transfers of $10,000 or more derived from the wire fraud offense charged in Count One of this Indictment.

(Title 18, United States Code, Sections 1957 and 2.)

### FORFEITURE ALLEGATIONS

9. As the result of committing the offense alleged in Count One of this Indictment, ANDRIS PUKKE, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

10. As a result of committing the offense alleged in Count Two of this Indictment, ANDRIS PUKKE, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense.

## Attachment 1

## Substitute Assets Provision

11. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

(Title 18, United States Code, Sections 981 and 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

DAMIAN WILLIAMS
United States Attorney

Attachment 1