IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| *In re* **SANCTUARY BELIZE LITIGATION** | * * * * * * * * | Civil No. **PJM 18-3309** |

## MEMORANDUM ORDER

The FTC has filed a Motion to Reform and Reaffirm the Fourth Circuit's Final Orders (ECF No. 1404) relative to a recent decision of the Fourth Circuit affirming in substantial part this Court's prior rulings in the case. The FTC accompanied its Motion with a Proposed Order. Defendants[1] oppose the Motion and the FTC has replied. The Court subsequently asked Defendants to file an order setting forth the relief that they request, which they have done, which the FTC opposes and as to which Defendants have replied. Defendants have also filed a Motion for Return of Property, ECF No. 1435, which both the Receiver and the FTC oppose. Having considered the FTC's Motion and proposed order, Defendants' proposed Order, Defendants' Motion for Return Property, and the Parties' comments at the Status Conference held April 20, 2023, the FTC's Motion is **GRANTED IN PART** and **DENIED IN PART**. Defendants' Motion to Return Property is **DENIED**.

I.   **Contempt**

---

[1] "Defendants" refers to the Represented Defendants as opposed to the Defaulting Defendants.

1

The FTC argues that this Court's Contempt Order still requires Pukke, Baker, and Usher to transfer $120.2 million to the FTC. *See Federal Trade Commission v Pukke*, 53 F.4th 80, 101-107 (4th Cir. 2022), ECF 1377 ("Pukke and Baker—as Usher has since defaulted—insist that the Court cannot impose the $120.2 million judgment against them as part of a telemarketing contempt order because the district court failed to make findings as to how it calculated that amount. We disagree with this argument")

Defendants concede that the Fourth Circuit affirmed the Contempt Order and that it affirmed the injunctive provisions of the De Novo Order and the Default Order. ECF No.1405. However, Defendants claim that the FTC's argument that the Contempt Order requires the seizure and liquidation of the assets of Pukke, Baker, and Usher lacks merit. They assert that the Fourth Circuit vacated the provisions in the Default Order imposing a monetary judgment of $120.2 million, requiring an asset freeze, and mandating the surrender of assets to the Receiver's custody and control. Therefore they conclude that there is no basis for "reforming" the Contempt Order to require the seizure and liquidation of the assets of the Represented Entities, as proposed by the FTC.

The Court rejects Defendants' contention.

The Contempt Order stands in full force and effect. The Fourth Circuit clearly upheld the $120.2 million judgment against Baker, Pukke, and Usher as set forth in the Contempt Order and separately confirmed the validity of the Receivership and the injunctive relief ordered pursuant to Section 13(b) of the Federal Trade Commission Act. 15 U.S.C. § 53(b). As the Court explains below, this relief plainly includes freezing Defendants assets and requiring that they be turned over to the Receiver.

The FTC argues that this Court's Contempt Order still requires Pukke, Baker, and Usher to transfer $120.2 million to the FTC. *See Federal Trade Commission v Pukke*, 53 F.4th 80, 101-107 (4th Cir. 2022), ECF 1377 ("Pukke and Baker—as Usher has since defaulted—insist that the Court cannot impose the $120.2 million judgment against them as part of a telemarketing contempt order because the district court failed to make findings as to how it calculated that amount. We disagree with this argument")

Defendants concede that the Fourth Circuit affirmed the Contempt Order and that it affirmed the injunctive provisions of the De Novo Order and the Default Order. ECF No.1405. However, Defendants claim that the FTC's argument that the Contempt Order requires the seizure and liquidation of the assets of Pukke, Baker, and Usher lacks merit. They assert that the Fourth Circuit vacated the provisions in the Default Order imposing a monetary judgment of $120.2 million, requiring an asset freeze, and mandating the surrender of assets to the Receiver's custody and control. Therefore they conclude that there is no basis for "reforming" the Contempt Order to require the seizure and liquidation of the assets of the Represented Entities, as proposed by the FTC.

The Court rejects Defendants' contention.

The Contempt Order stands in full force and effect. The Fourth Circuit clearly upheld the $120.2 million judgment against Baker, Pukke, and Usher as set forth in the Contempt Order and separately confirmed the validity of the Receivership and the injunctive relief ordered pursuant to Section 13(b) of the Federal Trade Commission Act. 15 U.S.C. § 53(b). As the Court explains below, this relief plainly includes freezing Defendants assets and requiring that they be turned over to the Receiver.

## II. Monetary Judgement Against Represented Defendants

The FTC argues that to satisfy the $120.2 million judgment levied against Defendants Pukke, Baker, and Usher their assets must continue to be frozen, then turned over to the Receiver. The monetary relief section of this Court's De Novo Order includes injunctive provisions facilitating the monetary relief against Pukke, Baker, and Usher, including the requirement that they turn over all assets they own or control, such as land in Belize, to either the FTC or the Receiver. ECF No. 1194, Section IV.B (ordering Pukke and Baker to "transfer to the FTC within thirty (30) days all Assets (other than personal use real estate) subject to the direct or indirect control of Pukke [or] Baker") (emphasis added); Section IV.C (specifying that Pukke and Baker forfeit all rights to any assets previously provided to the Receiver); Section IV.D (ordering Pukke and Baker to "take all steps possible or necessary to transfer to the Receiver all Assets that Pukke [or] Baker . . . own or control, directly or indirectly, or which are held for their benefit") (emphasis added). The De Novo order also maintains the freeze on Pukke's and Baker's assets that predate the filing of this case or are derived from actions or assets that predate the filing of this case. *Id*, Section V.E

Further, the FTC points out that Pukke, Baker, Usher, and the Defaulting Defendants all remain subject to a full ban on real estate activity and, more specifically, bans preventing any further involvement with, or presence in, Sanctuary Belize or Kanantik. ECF No. 1404.

Defendants base their argument on the fact that the Fourth Circuit vacated this Court's $120.2 million equitable monetary judgments granted under Section 13(b) of the FTC Act in keeping with *AMG Capital Management v. FTC*, 141 S.Ct. 1341 (2021). As a result, Defendants claim that the equitable monetary judgment underpinned all other relief granted in the De Novo

3

Order and the Default Order against the Represented Individuals and Entities, with the result that there is no longer any legal basis for the Receiver to exercise custody and control of the Represented Defendants' assets and passports. Baker submits in his declaration that Sanctuary Belize lot purchasers have already saved or stand to be credited with or receive more money than the $120.2 million sanction imposed against the Represented Individuals. ECF No. 1405-1. As a result of this, he claims the entire sanction against him in the Contempt Order has been satisfied and the Represented Entities are entitled to a return of their property.

As to the asset freeze, Defendants suggest that, under Fed. R. Civ. P. 64(b), a post-judgment asset freeze to secure payment of a judgment equates to a post-judgment attachment or garnishment which must comport with state law. In Maryland, as elsewhere, that would mean such a freeze may be imposed only if it satisfies the minimum requirements of due process, namely, notice to the judgment debtor and a meaningful opportunity to be heard. *See Reigh v. Sleigh*, 784 F.2d 1191, 1193 (4th Cir. 1986); *Jordan v. Berman*, 758 F. Supp. 269, 278-280 (E.D. Pa. 1991). The FTC, says Defendants, has not fulfilled these requirements.

The FTC replies that Defendants' contention that consumers have already in effect received more than $120.2 million, is in effect pure blather. Pukke, Baker, and Usher are only entitled to credit for money *transferred to the FTC or actually distributed to consumers*. See Contempt Order (ECF No. 1113)(emphasis added) ¶ 4.[2] The FTC also argues that Defendants must not be permitted to take an active role regarding any assets given their histories of deceptive conduct.

---

[2] The FTC claims that, if it turns out that the value of assets Defendants turn over exceeds Defendants' obligations—including the $172 million Pukke owes from AmeriDebt, Contempt Order (ECF No. 1113) ¶ 1— Defendants would be entitled to receive the excess, as would be the case in any collections matter.

4

The Court agrees that Defendants are not entitled to any return of assets. In the course of these proceedings many of these assets were in fact long hidden by Defendants; they will not be rewarded now for running away from them as the litigation unfolded. The Receiver clearly has the authority to manage and liquidate these assets as it sees fit, pursuant to the provisions of Section 13(b) of the FTC Act. The Fourth Circuit made this point loudly and clearly. Moreover, this Court has ordered the turnover of assets as part of an overall conspiratorial scam response. There is no need for the Receiver to go through a state garnishment proceeding to accomplish its taking.

### III. Monetary Judgments against Defaulting Defendants

The FTC claims that, because Fourth Circuit did not address the question of the Defaulting Defendants' liability or monetary responsibility, the judgments -- including the monetary portion of same -- still apply as to them. The Defaulting Defendants respond that the judgments against the Defaulting Defendants are based entirely on Section 13(b) which was vacated, voiding the judgments.

The FTC replies, highlighting the fact that the Represented Defendants do not dispute that they (Pukke, Baker, and Usher) control each of the Defaulting Defendants as well as The Estate of John Pukke. Having so conceded, the FTC argues that the legal consequence is tantamount to the enforcement of the monetary provisions against them, given that the Contempt Order applies to any and all entities controlled by the Represented Defendants.

The Court finds that the FTC wins this argument. The Defaulting Defendants did not challenge the arguments made against them at trial. They cannot come in the day after the fair to challenge the validity of these decisions now. Moreover, it is clear that the Defaulting

Defendants were and are part of a common enterprise of fraud spearheaded by Pukke, Baker, and Usher. As such, the Court's Contempt Order supports the Default Order's provisions requiring that these entities and their assets be relinquished or transferred to the Receiver.

### IV. Section 19

The FTC argues that because the Fourth Circuit left open the question of whether Section 19 of the FTC Act separately supports all the FTC Act judgments, this Court can and should now hold that it in fact does so.

Defendants oppose this request because the FTC did not plead Section 19 in its Complaint, did not satisfy Section 19's procedural requirements, and this Court did not grant the FTC's post-judgments motion to amend its Complaint to assert Section 19 claims. Defendants also note that during oral argument, the Fourth Circuit cast doubt on the argument that the monetary judgment could be upheld under Section 19 of the FTC Act and did not mention it in the final opinion. In view of this, Defendants say Section 19 is not a proper basis to support the vacated monetary judgment.

The Court does not believe it needs to address the propriety vel non of substituting Section 19 for the vacated money portion of the Section 13(b) judgment to uphold the monetary judgments against the Defaulting Defendants. The Fourth Circuit confirmed the viability of the injunctive relief and Contempt Order against the Represented Defendants. The Court received an ocean of evidence that Pukke, Baker, and Usher were and are personally in control of the Defaulting Defendant entities. The Court therefore finds no basis to separate the Defaulting Defendants from Pukke, Usher, and Baker and the monetary judgments against them. They are as one.

Further, while the Court denies the FTC's request to simply substitute Section 19 for Section 13(b), it wishes to state that it would be inclined consider a separate action against the Defaulting Defendants based on Section 19 if the FTC were disposed to file one. In 2021, the United States District Court for the Eastern District of Illinois allowed the FTC to amend a judgment in similar fashion, substituting Section 19 of the FTC Act for Section 13(b) after the Seventh Circuit found that Section 13(b) did not authorize restitution. *FTC v. Credit Bureau Center, LLC*, 2021 WL 4146884, *5-6, 9-10, & 12 (N.D. Ill. Sept. 13, 2021). In the instant case, there is more than enough record evidence of a common enterprise involving the Defaulting Defendants and Represented Defendants such that the Court would at the very least entertain the FTC's request for an asset freeze until a Section 19 proceeding might go forward (during which, presumably, all common enterprise evidence regarding the Defaulting Defendants in this case could be brought to bear.)

## V. CONCLUSION

For the foregoing reasons, the FTC's Motion to Reform and Reaffirm Judgment is **GRANTED IN PART** and **DENIED IN PART**. The FTC shall, within ten (10) days, re-submit a more specific proposed order, consistent with this Memorandum Order. Defendant's Order is **DENIED**. Defendants' Motion for Return of Property is **DENIED**. A separate Order will **ISSUE**.

Date: May 31, 2023

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE